**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

VICTOR KARL DANIEL STIEGMAN,

                                        Plaintiff,

        v.                                                      1:19-CV-18
                                                                (GTS/CFH)
NEW YORK STATE OFFICE OF INFORMATION
TECHNOLOGY SERVICES,

                                        Defendant.

_____

**APPEARANCES:**

Victor Karl Daniel Stiegman
P.O. Box 133
Clifton Park, New York 12065
Plaintiff pro se

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**


## REPORT-RECOMMENDATION & ORDER

### I.  In Forma Pauperis

   On January 4, 2019, plaintiff pro se Victor Karl Daniel Stiegman filed a complaint,

purportedly pursuant to the Americans with Disabilities Act ("ADA") of 1990, § 2, 42

U.S.C.A. § 12101 et seq."; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the

Age Discrimination in Employment Act ("ADEA") of 1975, 29 U.S.C. §§ 6101-6107; the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-209; Constitutional Amendments

I, V, and XIV; and the Civil Rights Act of 1971, 42 U.S.C. § 1985(3).  Dkt. No.

("Compl.").  Dkt. No. 1 ("Compl.").  Plaintiff has not paid the filing fee and instead seeks

permission to proceed with this matter in forma pauperis ("IFP").  Dkt. No. 2.  Plaintiff

also files a motion for appointment of counsel.  Dkt. No. 3.  After review of plaintiff's IFP

application, dkt. no. 2, it is determined that plaintiff financially qualifies to proceed IFP.[1]

Review of plaintiff's complaint and motion for counsel follows.

## II.  **Initial Review**[2]

### A.  **Legal Standard**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff

seeks to proceed IFP, "the court shall dismiss the case at any time if the court

determines that  . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a

claim on which relief may be granted; or (iii) seeks monetary relief against a defendant

who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Thus, it is a court's

responsibility to determine that a plaintiff may properly maintain his complaint before

permitting him to proceed with his action.

Pleading guidelines are set forth in the Federal Rules of Civil Procedure.

Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall

contain, inter alia, "a short and plain statement of the claim showing that the pleader is

entitled to relief."  See FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of

the claim being asserted so as to permit the adverse party the opportunity to file a

responsive answer, prepare an adequate defense and determine whether the doctrine

---

[1]  Plaintiff is advised that, despite his IFP status, which excuses him from paying this Court's filing fee, he is still required to pay in full any costs or fees that he may incur in this action, including, but not limited to, any copying fees or witness fees.

[2]  Any unpublished decisions cited to within this Report-Recommendation and Order are attached.

2

of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999)

(internal quotation marks and citations omitted).  Rule 8 also requires the pleading to

include:

> (1) a short and plain statement of the grounds for the court's
> jurisdiction . . .;
> (2) a short and plain statement of the claim showing that the
> pleader is entitled to relief; and
> (3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make

clear that each allegation contained in the pleading "must be simple, concise, and

direct."  Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part

that:

> [a] party must state its claims or defenses in numbered paragraphs,
> each limited as far as practicable to a single set of circumstances.  A
> later pleading may refer by number to a paragraph in an earlier pleading.
> If doing so would promote clarity, each claim founded on a separate
> transaction or occurrence – and each defense other than a denial –
> must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of

identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189

F.R.D. at 54 (internal quotation marks and citations omitted).  A complaint that fails to

comply with the pleading requirements "presents far too a heavy burden in terms of

defendants' duty to shape a comprehensive defense and provides no meaningful basis

for the Court to assess the sufficiency of their claims."  Gonzales v. Wing, 167 F.R.D.

352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does

not comply with the requirement that it be short and plain, the court has the power, on

3

its own initiative . . . to dismiss the complaint." <u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).   However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." <u>Id.</u> (citations omitted).  In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint. <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86-87 (2d Cir. 1995).  A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation omitted).

### B. **Initial Review of Complaint**

In a sixty-six page complaint, plaintiff essentially contends that defendant New York State Office of Information Technology Services ("NYSOITS"), with which he was employed from February 9, 2017, until November 1, 2017, provided or allowed for unequal terms and conditions of employment, failed to accommodate his disability, and subjected him to "termination, harassment, failure to promote, termination of employment, and failure to hire."  Compl. at 5.  Plaintiff contends that the discriminatory

acts "started against him in March 2017 and continue into the present day."[3]  Id.


Plaintiff essentially argues that he was passed over for promotions for which he was qualified, was not provided the proper level of supervision or training, and was not timely given evaluations necessary for him to succeed during his probationary period. See generally Compl.  Plaintiff further provides that, on multiple occasions, defendant failed to provide reasonable accommodation for his disability, including adequate parking, a compressed working schedule to accommodate medical appointments, as well as a "work from home" schedule. Id. at 10-13.  For at least some of these requests that were denied, plaintiff states that he "was under the impression that these stipulations were not applied similarly to younger colleagues or disabled colleagues." Id. at 22.  Further, when plaintiff was working an alternative schedule, Ms. Webster, a supervisor, would cancel her meetings with plaintiff, despite having access to the phone and internet, although "these options were routinely provided to other colleagues for flexibility, including younger colleagues, and non-disabled colleagues."  Id.

Plaintiff's complaint contends that Ms. Webster subjected him to work-related threats in retaliation for his request for modified working schedules, which he requested, in part, due to his disability.  Compl. at 13.  Plaintiff contends further that Ms. Webster also discriminated against him by stating that he was not qualified to apply for a

───────────────────

[3]  Plaintiff also states that, "[o]n behalf of a Class of others, Mr. Stiegman, proposed class representative, alleges discrimination and retaliatory acts start upon inception of the agency in 2012 and continue into the present day." Compl. at 6.  It appears that plaintiff is alleging that the alleged discriminatory acts began against him in March 2017, but for purposes of his purported class action, he intends to allege that discrimination began against the proposed class at the time the New York State Office of Information Technology Services began – in 2012.  Id.

leadership training program, but that when he contacted the head of the program, he was told that he was qualified and was encouraged to apply.  Id. at 14.

Plaintiff contends that he applied for a promotion, and was on a prequalified list for such a promotion, but was not offered an interview for the position.  Compl. at 19. Plaintiff contends that the position was offered to a younger colleague who was not on the prequalified list.  Id. at 19.  Plaintiff also provides that at or around the time of a probation evaluation on April 7, 2017, "another older colleague of Mr. Steigman, also on probation, confided to him in the lack of work and responsibilities that were provided to him."  Id. at 14.

Plaintiff provides that his disabilities or "perceived disabilities," "includ[e], but [are] not limited to history of cancer, thyroid gland disorder, chronic pain, and central sensitization."  Compl. at 6.  Plaintiff states that he was born in 1977, making him approximately 42 years old at the time of this review, and approximately 40 years old at the time of the alleged misconduct.  Id.  Plaintiff demands injunctive relief and compensatory and punitive damages.  Id. at 64-65.

### 1.  Sovereign Immunity

Several of plaintiff's claims appear barred by the State of New York's sovereign immunity.  "As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." Jackson v. Battaglia, 63 F. Supp. 2d 214, 219-20 (N.D.N.Y. 2014) (citation omitted).  "'[T]he immunity recognized

6

by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.'" Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)).

There does not appear to be a case directly contending that NYSOITS is an "agency" for purposes of sovereign immunity. However, "'where an agency is so structured that, as a practical matter, if the agency is to survive, a judgment must expend itself against state treasuries, common sense and the rationale of the eleventh amendment require that sovereign immunity attach to the agency.'" John's Insulation, Inc. v. Facilities Dev. Corp., No. 96-CV-672 (LEK/DRH), 1996 WL 679723, at *4 (N.D.N.Y. Oct. 17, 1996). "'There is no such requirement where the agency is structured . . . to be self-sustaining.'" (quoting Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30 (1994) (internal citation omitted)). Application of this test demonstrates that NYSOITS is a state agency or "arm of the state" and, thus, is protected by sovereign immunity. Within the law that created it, NYSOITS is referred to as part of the "executive department," and is "to have and exercise the functions, powers and duties provided by the provisions of this article and any other provision of law." NY State Tech. § 102 (McKinney 2019). Further, the law provides that NYSOITS is to "act as the official state planning and coordinating office for the advancement of technology to improve government efficiency and effectiveness, and perform all necessary and appropriate services required to fulfill these duties," "review and coordinate the purchase of technology by state agencies," "establish, oversee, manage,

7

coordinate, and facilitate the planning, design, and implementation of the state's common technology networks," "undertake technology projects with a statewide or multi-agency impact and, where appropriate, designate agencies to act as a lead agency for the project," "establish state-wide technology policies," "adopt, amend, or rescind rules and regulations necessary or convenient to the performance of functions, powers and duties of the office pursuant to the state administrative procedure act." Id. § 103.

As NYSOITS has been designated as part of the executive branch, with its director subject to the Civil Service Law and the state finance law, with a legislatively-defined intent to consolidate the technology services provided to all state agencies, it is clear that the state exercises significant control over its activities and funding, rendering it an arm of the state. See NY State Tech. §§ 102, 103, 103-a ; Cf. Mancuso v. N.Y. State Thruway Auth., 86 F.3d 289, 296 (2d Cir. 1996) (declining to conclude that Thruway Authority was a state agency for purposes of sovereign immunity because it is a public entity that is generally self-funded and not under significant state control, noting that the entity "may be identified closely with the state" but that the state "has given the Thruway Authority an existence quite independent from the state and exercises the most minimal control over the Thruway Authority.").

### a. Americans with Disabilities Act

The complaint demonstrates that plaintiff seeks to proceed against his former employer, NYSOITS, under the ADA for failure to reasonably accommodate his

8

disabilities and for related retaliation.  See generally Compl.  Title I of the ADA applies

to employment, and thus, would appear to be the applicable portion of the statute that

applies to plaintiff's employment discrimination claims.  However, as an agency of the

State of New York, ADA claims against NYSOITS are barred by sovereign immunity.

As the Southern District of New York set forth in Martin v. Baruch Coll., No. 10 CIV.

3915 (DAB), 2011 WL 723565, at *2 (S.D.N.Y. Feb. 18, 2011), where the plaintiff

sought to sue defendants the State of New York and the City University of New York,

> Congress did not abrogate state sovereign immunity with respect to Title
> I of the Americans with Disabilities Act . . . . See Garrett, 531 U.S. at 374
> (Americans with Disabilities Act); Quern v. Jordan, 440 U.S. 332, 341-45
> (1979) (Section 1983). Nor has the State of New York waived its
> immunity to such claims. See, e.g., Nicolae v. VESID, 04 Civ. 3512,
> 2005 WL 1311730, at *1 (E.D.N.Y. May 26, 2005) (Americans with
> Disabilities Act); Jones v. Nat'l Comm. & Surveillance Networks, 409 F.
> Supp.2d 456, 467 (S.D.N.Y.2006), aff'd 266 Fed. App'x 31 (2d Cir.
> 2008) (Section 1983). Nor has the State of New York waived its
> immunity to state law claims brought in federal court. See, e.g., Lamere
> v. New York State Office for the Aging, 03 Civ. 356, 2005 WL 1174068,
> at *14 (N.D.N.Y. Apr. 27, 2005). Plaintiff's claims under New York state
> law, Title I of the Americans with Disabilities Act, and Section 1983 must
> therefore be dismissed with respect to the State of New York and
> CUNY.

Similarly, the Second Circuit confirmed that a district court properly concluded that

sovereign immunity barred ADA discrimination and retaliation claims against the State

of New York and the plaintiff's former employer, New York State Office of Temporary

and Disability Assistance, because Congress had not abrogated the state's sovereign

immunity from suit under Title I of the ADA." Báez v. State of New York, et al., 629 F.

App'x 116 (2d Cir. 2015) (summary order) (quoting Americans with Disabilities Act of

1990, § 2, 42 U.S.C.A. § 12101 et seq.).  The state's sovereign immunity bar also

applies to claims brought under Title V of the ADA, which prohibits against retaliation for complaints about employment discrimination.  Emmons v. City Univ. of New York, 715 F. Supp. 2d 394, 410 (E.D.N.Y. 2010); see also Frantti v. New York, 1:16-CV-810 (DNH), 2017 WL 922062, at *5 (N.D.N.Y. Mar. 8, 2017) (finding sovereign immunity bars Title I and Title V ADA claims against the state and its agencies); see also Hamzik v. Office for People with Developmental Disabilities, 859 F. Supp.2d 265, 275 (N.D.N.Y.2012) (noting that the Eleventh Amendment precludes a plaintiff from seeking any relief against state agencies, including injunctive relief).

In some cases, a plaintiff may be able proceed on ADA claims against individual officials employed by the state where they are sued in their official capacities for injunctive relief – not for money damages – and where the plaintiff alleges a prospective harm and contends that a fundamental right was implicated.  See, e.g., D.K. by L.K v. Teams, 260 F. Supp. 3d 334, 352 (S.D.N.Y. 2017); Ali v. Hogan, 12-CV-104 (DNH/RFT), 2013 WL 5503321, at *9 (N.D.N.Y.  Sept. 12, 2013) ("Nonetheless, under the doctrine of Ex Parte Young, 209 U.S. 123 (1908), a suit may proceed against a state official in his or her official capacity—notwithstanding the Eleventh Amendment—when a plaintiff '(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.'") (quoting In re Deposit Ins. Agency, 482 F.3d at 618))[4]; see also In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007) ("A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against

---

[4]  "[T]he Eleventh Amendment bars *retrospective* declaratory relief against state officials."  New York State Court Clerks Ass'n, 25 F. Supp. 3d 459, 468 (S.D.N.Y. 2014) (citing Green v. Mansour, 474 U.S. 64, 74 (1985)) (emphasis added).

individual state offers, as opposed to the state, in their official capacities, provided that

his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief

properly characterized as prospective.'" (quoting Verizon Md., Inc. v. Pub. Serv.

Comm'n of Md., 535 U.S. 635, 645 (2002))).

    However, plaintiff has not named as defendants any individual officers sued in their

official capacities for prospective injunctive relief; he names only the agency with which

he was employed, NYSOITS.  See Compl.  Further, based on plaintiff's current

complaint, it is not clear that there is ongoing harm to plaintiff.  Although plaintiff

suggests that he is having difficulty securing employment because potential employers

have been told or have learned of allegations made by NYSOITS regarding his

performance, it is not entirely clear if he is contending that NYSOITS is committing an

ongoing violation of federal law because plaintiff seeks back pay and "restoring the

plaintiff . . . to [his] rightful position[] at the defendant, or in lieu of reinstatements, an

order for front pay benefits . . . . ."[5]  Compl. at 64-65; see also State Emps. Bargaining

Agent Coal. v. Rowland, 494 F.3d 71, 98 (2d Cir. 2007) (holding that the plaintiff's ADA

injunctive claims permitted where the plaintiff's claims did "not seek compensation for

past wrongs" or "require the state to pay lost wages, backpay, or retrospective

benefits").  However, in light of special solicitude, it is recommended that plaintiff be

---

[5]  Although plaintiff arguably may suggest that, because he seeks to proceed as a class action, there could be prospective harm to individuals who are still employed by NYSOITS, as plaintiff himself does not appear to be making an allegation that there is still ongoing harm to him, it would not appear that his intent to proceed as a class action suffices to meet this requirement.  Regardless, as discussed within, out of special solicitude, it is recommended that leave to amend be given should plaintiff wish to proceed against individual defendants in their official capacities for prospective harm, seeking solely injunctive relief.

permitted an opportunity to amend his complaint, should he be able to and wish to, in order to have the opportunity to set forth a claim against an individual officer in his/her official capacity for ongoing, prospective injunctive relief only.

Accordingly, as plaintiff's ADA claim against NYSOITS is barred by sovereign immunity,[6] see, e.g., Marsh-Godreau v. SUNY Coll. at Potsdam, No. 8:15-CV-0437 (LEK/CFH), 2016 WL 1049004, at *4 (N.D.N.Y. Mar. 11, 2016) (citing Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 32 (2d Cir. 1991) ("Ex parte Young requires that 'a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly.'")), it is recommended that this claim be dismissed with prejudice. However, it is recommended that plaintiff be permitted leave to amend his complaint should plaintiff wish to name any individual officers in their official capacities for prospective injunctive relief relating to an ongoing violation of federal law.

### b. Section 504, Rehabilitation Act

Section 504 of the Rehabilitation Act of 1973 prohibits a "program or activity" that receives federal funds from discriminating against an individual on the basis of his disability, 29 U.S.C. § 794(a), and applies to "all of the operations" of any "department, agency, . . . or other instrumentality of a State." Id. § 794(b)(1)(A). Courts in this Circuit have held that Rehabilitation Act claims against the state are not barred by sovereign immunity. Marino v. City Univ. of N.Y., 18 F. Supp. 3d 320, 332 (E.D.N.Y. 2014)

---

[6] It is also noted Insofar as plaintiff's potential ADA claim against NYSOITS also sought money damages; however, "[p]rivate individuals cannot claim monetary damages against a state for violations of the ADA under Title I of the ADA." Chiesa v. New York State Dept. of Labor, 638 F. Supp.2d 316, 321 (N.D.N.Y. 2009) (citing Bd. of Trustees of the Univ. of Ala. v. Garett, 531 U.S. 356, 374 (2001)).

(permitting Rehabilitation Act claim for "injunctive relief and money damages" to proceed directly against state entity); Degrafinreid v. Ricks, 417 F. Supp. 2d 403, 414 (S.D.N.Y. 2006) (quoting Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 113 n.4 (2d Cir. 2001) (stating that the Garcia court "acknowledged New York's acceptance of federal funds at a later date 'might properly reveal a knowing relinquishment of sovereign immunity.'").

Plaintiff's complaint appears to request, in part, punitive damages. Compl. at 65. However, it is well settled that punitive damages are not recoverable under the Rehabilitation Act. Accordingly, insofar as plaintiff requests punitive damages under his § 504 claim, it is recommended that this request be dismissed with prejudice insofar as it relates to his claim under §504. See Barnes v. Gorman, 536 U.S. 181, 189-90 (2002). Accordingly, it is recommended that plaintiff be permitted to proceed on his Section 504 claim, absent his request for punitive damages.[7]

### c. ADEA

Plaintiff's ADEA claims are also barred by sovereign immunity as the state's "[s]overeign immunity under the Eleventh Amendment has not been abrogated for purposes of the . . . . ADEA . . . Nor has New York state waived it." Nicolae v. Office of Vocational & Educational Services for Individuals with Disabilities, 257 F. App'x 455, 456-57 (2d Cir. 2007) (summary order). As NYSOITS is a state agency such that any

---

[7] It is also noted that section 504 only allows for recovery of compensatory damages where the plaintiff alleges intentional discrimination. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009). It is at least arguable that the complaint infers that the alleged discrimination was intentional.

award against it would be, "in essence one for the recovery of money from the state, [so that] the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit[,]" Regents of the Univ. of Calif., 519 U.S. 425, 429 (1997) (internal citation and quotation marks omitted), plaintiff's ADEA claim against NYSOITS is be barred by Eleventh Amendment sovereign immunity. Accordingly, it is recommended that plaintiff's ADEA claim be dismissed with prejudice.

### d. FLSA

In the "jurisdiction" section of his complaint, plaintiff contends that defendant NYSOITS violated the FLSA. Compl. at 1. However, it is not clear to the undersigned how plaintiff contends defendant violated the FLSA as the Court cannot discern from plaintiff's complaint any allegation that he was improperly denied overtime or minimum wage that he was entitled to under the FLSA nor provide any other facts to support his inclusion of the FLSA as a cause of action in the complaint. See generally Compl.

Regardless, as this Court has recently held, "Congress did not, in enacting the FLSA, abrogate state sovereign immunity. The State of New York has not consented to be subject to the FLSA or otherwise waived its immunity from suits under that statute in the federal courts." Bell v. New York State Dept. of Corr. and Cmty. Supervision, 1:17-CV-937 (DNH), 2019 WL 1305809, at *5 (N.D.N.Y. Mar. 22, 2019) (dismissing FLSA claim against state agency and its employees "insofar as plaintiff seeks money damages against them in their official capacities") (citing N.Y.S. Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y., 25 F. Supp. 3d 459, 465 (S.D.N.Y. 2014)).

Accordingly, it is recommended that, insofar as plaintiff seeks money damages against defendant pursuant to the FLSA, such claim be dismissed with prejudice and without leave to amend.

It is also recommended that, insofar as plaintiff seeks injunctive relief under the FLSA, that this claim be dismissed with prejudice. "[O]nly the United States Secretary of Labor is authorized to seek injunctive relief for alleged violations of the FLSA minimum wage and overtime compensation provisions. Employees themselves have no right to seek injunctive relief under these provisions." N.Y.S. Court Clerks Ass'n, 25 F. Supp. 3d at 468. It is specifically recommended that leave to amend *not* be provided on the FLSA claim because any attempt to amend to set forth an FLSA claim against individual officers could be only for injunctive relief and would necessarily fail as "it is recognized that 'the FLSA contains a broad remedial scheme such that the application of the Ex Parte Young doctrine is inappropriate.'" Id. at 468 (quoting Mulverhill v. New York, No. 87-CV-853, 1997 WL 3494817 (N.D.N.Y. July 10, 1997)). Accordingly, it is recommended that plaintiff's FLSA claims be dismissed with prejudice and without opportunity to amend.

### e. Constitutional Claims

In the "jurisdiction" section of the complaint, plaintiff contends that defendants violated the First, Fifth, Ninth, and Fourteenth Amendments. Compl. at 2. Plaintiff's complaint does not provide details or elucidate for the Court as to how he believes

defendant violated these constitutional provisions[8]; instead, it "incorporates by reference" the entirety of the factual allegations in the complaint. Compl. at 63. Although plaintiff's complaint does not cite as such, it would appear that plaintiff seeks to proceed on his constitutional claims pursuant to § 1983.

Read liberally, it is arguable that plaintiff is attempting to contend that defendants violated the First Amendment insofar as he was retaliated against when he requested reasonable accommodation for his disability or for filing EEOC claims. However, it is not clear from the complaint; and, although the Court, applying special solicitude, is required to read pro se complaints liberally and apply all reasonable inferences that it may suggest, there is not enough in the complaint for the undersigned to assess any potential First Amendment claim. To set forth a claim for First Amendment retaliation, plaintiff must demonstrate "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009). Although plaintiff's complaint, read liberally, arguably suffices to set forth the first two elements, the complaint does not allege, in a nonconclusory way, a causal connection between his protected speech or conduct and the adverse action. See generally Compl. Accordingly, it is recommended that, insofar as plaintiff intends to raise a First Amendment claim, such claim be dismissed without prejudice and with leave to amend.

Next, in referencing the Fifth Amendment, it is arguable that plaintiff is attempting to

---

[8] The complaint does the same for each cause of action alleged. See Compl. at 59-65.

raise a due process claim, contending that he was denied equal protection of the laws. As plaintiff does not seek to proceed against the federal government, the Fifth Amendment would not appear to apply to an equal protection claim against his state employer. See Schweiker v. Wilson, 450 U.S. 221, 226 n.6 (1981) (noting that the Fifth Amendment imposes the same standard on the federal government as does the Fourteenth Amendment on state governments). Accordingly, it is recommended that plaintiff's Fifth Amendment claim be dismissed with prejudice.

In referencing the Fourteenth Amendment, is arguable that plaintiff is contending that he was treated differently from other, similarly-situated employees because of his age or disability. "The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all persons similarly situated should be treated alike." Brown v. City of Syracuse, 673 F.3d 141, 151 (2d Cir. 2012) (internal quotation marks omitted). In the context of a § 1983 suit where the "color of state law is established, [an] equal protection claim parallels [a] Title VII [employment discrimination] claim." Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004). "To establish a prima facie Title VII case, a plaintiff must demonstrate (1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009) (internal quotation marks omitted). "A showing of disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference

17

of discrimination for the purposes of making out a prima facie case." <u>Ruiz v. Cnty. of Rockland</u>, 609 F.3d 486, 493 (2d Cir.2010) (internal quotation marks omitted).

Arguably, plaintiff's complaint contends, at parts, that he was treated differently from similarly situated employees due to his age insofar as he was given less work or advancement opportunities than younger employees, but his complaint does not sufficiently explain how defendants violated the Fourteenth Amendment and to attempt to speculate as to plaintiff's intention in raising this claim, without explanation, in the "jurisdiction" section of his complaint would be too heavy of a burden for the Court. <u>Gonzales</u>, 167 F.R.D. at 355. Accordingly, it is recommended that plaintiff's Fourteenth Amendment claim be dismissed without prejudice and with opportunity to amend to specify how defendant violated the Fourteenth Amendment.

Plaintiff also contends that defendant violated the Ninth Amendment to the United States Constitution. Compl. at 63. The Ninth Amendment provides "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. As the Court has insufficient facts or argument before it to explain to any degree how defendant violated the Ninth Amendment, it fails to meet the pleading standard under the Rules 8 and 10, and to attempt to speculate as to plaintiff's intention in raising this claim in the "jurisdiction" section of his complaint would be too heavy of a burden for the Court. <u>Gonzales</u>, 167 F.R.D. at 355. Thus, it is recommended that any claim that defendant violated the Ninth Amendment be dismissed without prejudice and with leave to amend to provide plaintiff an opportunity to specify how defendant violated the Ninth Amendment and why

such statute is applicable to any of his claims.

## f. Section 1985(3)

In his ninth cause of action, plaintiff contends that he seeks to proceed under "Section 2 of Civil Rights Act of 1871, as codified 42 U.S.C. 1985(3)." Compl. at 63. Plaintiff's complaint is silent as to how he believes section 1985 applies. Section 1985 applies to conspiracy. To state a cause of action under section 1985(3) for conspiracy to interfere with civil rights, a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy: (4) whereby a person is either injured or deprived of any right of a citizen of the United States.

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087-88 (2d Cir.1993) (citing United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)). The conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Griffin v. Breckenridge, 403 U.S. 88 (1971). "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." Martin v. New York State Dep't. of Corr. Servs., 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000) (citations omitted).

The undersigned cannot discern from plaintiff's complaint any allegation of conspiracy. As the Court has insufficient facts or argument before it to explain to any degree how defendant committed a conspiracy in violation of § 1985, it fails to meet the

pleading standard under the Rules 8 and 10, and to attempt to speculate as to plaintiff's intention in raising this claim in the "jurisdiction" section of his complaint would be too heavy of a burden for the Court. Gonzales, 167 F.R.D. at 355. Further, it is noted that, where a plaintiff seeks to bring a claim under §1985(3) for conspiracy, and the plaintiff also seeks to recover under another statute – such as the ADA for disability discrimination or ADEA for employment discrimination – the plaintiff cannot also seek such relief under §1985. See, e.g., Hills v. Praxair, Inc., No. 11-CV-678S, 2012 WL 1935207, at *8 (W.D.N.Y. May 29, 2012). Although the undersigned concludes that plaintiff cannot proceed against NYSOITS under the ADA or ADEA due to sovereign immunity, the undersigned is recommending that plaintiff's section 504 claim proceed. Thus, it is possible that even if plaintiff attempted to amend his complaint to set forth sufficient facts to allege a §1985 conspiracy claim, such a claim would be barred should he seek the same relief allowed for by section 504. However, at this early stage and due to plaintiff's pro se status, it is recommended that any claim that defendant violated § 1985(3) be dismissed without prejudice and with leave to amend to provide plaintiff an opportunity to specify how defendant violated § 1985(3) and why such statute is applicable to this action.

### III. Class Certification

Plaintiff seeks to bring his complaint as a class action pursuant to Fed. R. Civ. P. 23. Compl. at 2-3. Plaintiff defines his proposed class as "individuals with a disability or perceived to have a disability and individuals 40 years of age and older." Id. at 2.

Plaintiff contends that the proposed class has sufficient numerosity and that "[g]iven the size of the agency, the prospective plaintiff class will be so numerous that joinder of all members is impracticable." Id. at 3.  As to commonality, plaintiff contends that there are

> questions of law and fact common to each of the referenced plaintiff classes for disability and age.  For example, (1) whether the defendant's policies or practices discriminate against persons in a protected class; (2) whether the defendant's policies and practices violate the employment discrimination, labor, and retaliation statutes at issue; and (3) whether monetary damages, injunctive relief, and other equitable remedies for the class are warranted.

Id. at 3.

Although plaintiff has designated this matter as a class action in the complaint's caption, he has not met the requirements of N.D.N.Y. Local Rule 23.2  which requires "as soon as practicable after the commencement of an action designated as a 'Class Action,' the plaintiff shall file a motion, with the assigned district judge, seeking an order of the Court determining that the plaintiff may maintain the action as a class action." N.D.N.Y. L.R. 23.2; see also FED. R. CIV. P. 23(c).  Accordingly, the question of class certification is, at this time, premature for the Court to address.


### IV.  Motion for Counsel

Also pending before the Court is plaintiff's motion for appointment of counsel.  Dkt. No. 3.  Plaintiff indicates that he requires the appointment of pro bono counsel because (1) he has "[s]ufficient evidence to successfully prosecute a class action case for protected classes of disability and age," (2) the "[c]omplexity of case with potential for

additional defendants in discovery," (3) "[e]xtremely limited financial resources of plaintiff," and (4) "[s]trong probability of awarding class remedies to impacted state workers." Id.

It is well settled that "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." Leftridge v. Connecticut State Trooper Officer No. 1283, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted). In Terminate Control Corp. v. Horowitz, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. 28 F.3d at 1341 (quoting Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986)); see also Leftridge, 640 F.3d at 69 (noting that a motion for appointment of counsel may be properly denied if the court "concludes that [the party's] chances of success are highly dubious" (citations omitted)). The factors to be considered in deciding whether or not to assign counsel include the following:

> 1. Whether the plaintiff's claims seem likely to be of substance;
> 2. Whether the plaintiff is able to investigate the crucial facts concerning his claim;
> 3. Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder;
> 4. Whether the legal issues involved are complex; and
> 5. Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination.

Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir.1997); see also Hodge, 802 F.2d at 61. "Counsel *may* be appointed in cases where it appears that such counsel will

provide substantial assistance in developing petitioner's arguments, the appointment will otherwise serve the interests of justice, and where the litigant has made 'a threshold showing of some likelihood of merit.'" Campbell v. Corr. Med. Care, Inc., No. 14-CV-6136T, 2014 WL 2608334, at *5[9] (W.D.N.Y. June 11, 2014) (quoting Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 174 (2d Cir. 1989) (emphasis added)). Further, prior to evaluating a request for appointment of counsel, the plaintiff must make a threshold showing – that he is unable to obtain counsel through the private sector or low cost/pro bono legal aid organizations. Cooper, 877 F.2d at 173-74 (quoting Hodge, 802 F.2d at 61).

Plaintiff contends that he has contacted Edward Joseph Aluck, Esq. and Rita J. Strauss, Esq. Dkt. No. 3 at 1. Plaintiff attaches to his motion an e-mail communication dated November 29, 2018, in which plaintiff contacted Ed Aluck, who appears to be a PEF employee, seeking legal representation in his case before this Court, along with Mr. Aluck's December 6, 2018, response indicating that PEF could not provide legal assistance as "the PEF Legal Department does not represent individual PEF members on individual discrimination litigation, which includes Human Rights/EEOC matters." Id. at 2-3. However, plaintiff does not provide evidence of any efforts he may have made to retain counsel, either with Rita J. Straus, Esq., other private attorneys, legal aid organizations, other pro bono or low-cost legal entities, to represent him in this instant federal action. See generally dkt. no. 3. As plaintiff has not submitted communication from Rita J. Straus, Esq., he has not fully met his burden set forth in the motion paper

_____

[9] Unpublished decisions cited within this Report-Recommendation & Order have been provided to plaintiff pro se.

23

he submitted – that he has "attached to this motion the correspondence I have received from the attorneys listed above."  Dkt. No. 3 ("C").

Regardless, the undersigned concludes that plaintiff has not otherwise demonstrated that appointment of counsel is warranted at this time.  The fact that plaintiff is pro se and inexperienced in legal matters, and that defendant is likely to be represented by counsel, does not require this Court to appoint plaintiff pro bono counsel.  Were that the case, counsel would need to be appointed to nearly every pro se plaintiff in civil actions.  Appointment of counsel in civil cases is a privilege which is justified only by exceptional circumstances; it is not a right accorded to any plaintiff who would be better equipped or would feel more comfortable with legal representation. Although plaintiff may prefer the assistance of counsel, it does appear, based on plaintiff's submissions – including his very detailed complaint – that he is an intelligent person who is capable of representing his positions before this Court.  See, e.g., Brown v. Enzyme Dev. Div. of Biddle Sawyer Corp., 780 F. Supp. 1025, 1026 (S.D.N.Y. 1992). Although counsel may be warranted in the future for more complex issues – such as performing cross-examination should this matter reach trial – plaintiff has not demonstrated the existence of extraordinary circumstances warranting appointment of counsel at this time.  Lack of knowledge of the law does not suffice to demonstrate that appointment of counsel would increase the likelihood of a just determination in this case.  See Ballard v. United States, 11 Civ. 7162 (JSR)(RLE), 2012 WL 3765022, at *1 (S.D.N.Y. Aug. 30, 2012) (denying appointment of counsel and stating that, "other than his general comment that he is 'completely unfamiliar with law,' the plaintiff "has not

24

demonstrated any marked difficulties in presenting his case and fails to state why appointment of counsel would increase the likelihood of a just determination in this case.").

Further, this case is presently at the earliest stages – defendant has not yet been served with the summons and complaint. Although, should this case survive dispositive motions, the Court may consider assigning counsel for purposes of trial, the case is not yet at that point. Moreover, as noted, financial need alone does not serve as a consideration to appoint counsel in a civil case, as the decision is based on the merits of the case and the ability of the individual to represent himself. See Hendricks, 114 F.3d at 392. Plaintiff is granted leave to renew his motion for counsel at some future point in the litigation should he demonstrate a change in his circumstances.

## V. Conclusion

**WHEREFORE**, it is hereby

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED**, that the following of plaintiff's claims be **DISMISSED with prejudice and without leave to amend**: (1) ADA claim against defendant NYSOIT, (2) ADEA claim, (3) Fair Labor Standards Act claim, (4) Fifth Amendment claim; and \(5) demand for punitive damages under Rehabilitation Act § 504, it is further

**RECOMMENDED**, that the following of plaintiff's claims be **DISMISSED without**

**prejudice and with leave to amend**[10]: (1) ADA claim insofar as plaintiff wishes to amend to name individual officers in their official capacities for prospective injunctive relief only; (2) First Amendment; (3) Ninth Amendment; (4) Fourteenth Amendment; and (5) conspiracy pursuant to § 1985; and it is further

**RECOMMENDED**, that plaintiff's claim pursuant to Section 504 of the Rehabilitation Act be permitted to **proceed**, excepting his demand for punitive damages, but that no summons be issued or served until after the District Judge has reviewed this Report-Recommendation & Order and after any time the District Judge may grant to plaintiff to amend his complaint has expired; and it is further

**ORDERED**, that, if the District Judge permits plaintiff to amend his complaint, any amended complaint must be filed within **thirty (30)** days from the date of the District Judge's order adopting this Report-Recommendation and Order, and that should plaintiff file such amended complaint within that time frame, the Clerk of the Court return this case to the Magistrate Judge for further review, and if plaintiff should not file an amended complaint within that time period, the Clerk of the Court should return this case to the Magistrate Judge for issue of summons and original complaint on defendant as to any remaining causes of action; and it is

---

[10] Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), cert. denied sub nom., Vesco & Co., Inc. v. International Controls Corp., 434 U.S. 1014 (1978); see also Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994).  Therefore, if plaintiff amends his complaint, the amended complaint must include all of the factual allegations and legal claims against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in this action which the defendant(s) must answer.  Additionally, plaintiff may not attempt to reallege any legal claims or add defendants that have been dismissed by this Court with prejudice.

**ORDERED**, that plaintiff's Motion for Appointment of Counsel (Dkt. No. 3) is **DENIED without prejudice**; and it is further

**ORDERED**, that the Clerk serve a copy of this Decision on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have FOURTEEN (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[11]

Dated: April 22, 2019
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[11]   If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).