# UNITED STATES DISTRICT COURT

### for the
### Northern District of New York

DISTRICT COURT - N.D. OF N.Y.
**FILED**
JAN 0 2 2020
AT_____ O'CLOCK_____
John M. Domurad, Clerk - Albany

Victor Karl Daniel Stiegman, individually, and on behalf of a Class of all others similarly situated

*Plaintiff(s)*

-v-

New York State Office of Information Technology Services, **Shoshanah Bewlay**, *in her official capacity as General Counsel*, **Beth Bloodgood**, *in her official capacity as Director and Deputy Cluster Chief Information Officer*, **Robert Valla**, *in his official capacity as Director of Human Resources*, **Chris Lloyd**, *in his official capacity as Chief Portfolio Officer and Director*, **Matthew Millea**, *in his official capacity as Chief of Staff and Special Assistant*, **David Mahoney**, *in his official capacity as Director of Labor Relations and Associate Director of Human Resources Labor Relations*, **Veronica Webster**, *in her official capacity as Project Manager and Project Coordinator*, **Shinu Shilesh**, *in her official capacity as Director of Affirmative Action Programs*, **Edward Page**, *in his official capacity as Human Resources Specialist Labor Relations*, **Marcy Spratt Stevens**, *in her official capacity as Records Access Officer*, **Jon Haverly**, *in his official capacity as Contractor*,  **Eric Huntington**, *his official capacity as Manager of Information Technology Services*, **Mary Ann Pelletier**, *in her official capacity as Project Manager III;* Public Employee Federation, **Wayne Spence**, *in his Official Capacity as President*, **Edward Aluck**, *in his Official Capacity as General Counsel*, **Rita Strauss**, *in her Official Capacity as Deputy General Counsel*, **Deirdre Maria Salsich**, *in her Official Capacity as Associate Counsel*; New York State Office of the Attorney General, **Denise Dreany**, *in her official capacity as Manager, Information Technology Services*, **Mark Jackson**, *in his official capacity as Manager of Information Technology Services*, **William Harrison**, *in his official capacity as Assistant Director of Personnel;* New York State Insurance Fund; New York State Homes and Community Renewal, **Ilan Halfi**, *in his official capacity as Human Resources Specialist;* New York State Division of the Budget, **Laurence Moats**, *in his official capacity as Project Assistant*;  New York State Workers Compensation Board, **Tashana Hanif**, *in her official capacity as Program Aide*; New York State Thruway Authority, **Dan Cantwell**, *in his official capacity as Assistant Director of Personnel*; Empire State Development Corporation; **Ruth Parris**, *in her official capacity as Human Resources Manager;* **Shawn Bryant**, *in his official capacity as Human Resources Manager*; New York State Department of State, **Robert Freeman**, *in his official capacity as Executive Director for the Committee on Open Government*; Garnet River, LLC; RTE Consulting LLC; John Doe 1-25; Jane Doe 1-25.

*Defendant(s)*

**AMENDED COMPLAINT**

**PURSUANT TO FRCP 15(a)**

**1:19-CV-18 (GTS/CFH)**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## TABLE OF CONTENTS

INTRODUCTION …………………………………… 5

NATURE OF ACTION…………………………….. 7

PARTIES ……………………………………… 7

JURISDICTION AND VENUE …………………... 15

INTERSTATE COMMERECE …………………… 15

FACTUAL ALLEGATIONS ………………….......16

PROCEDURAL REQUIREMENTS………………. 59

THE PLAINTIFF CLASS ………………………… 60

CAUSES OF ACTION …………………………... 61

PRAYER FOR RELIEF ……………………….. 149

CERTIFICATION AND CLOSING ……………… 150

DEMAND FOR JURY TRIAL………………….. 151

EXHIBITS ……………………………………… 152

# LIST OF EXHIBITS

## WITHIN AMENDED COMPLAINT,

## DATED DECEMBER 31, 2019

Exhibit 1. NYS ITS Credential Verification ............... 152

Exhibit 2. NYS ITS Employee Handbook ................. 157

Exhibit 3. NYS ITS/DOS FOIL Correspondence ....... 192

Exhibit 4. NYS OAG Employment Correspondence .... 459

Exhibit 5. NYSIF Employment Correspondence ........ 484

Exhibit 6. NYS HCR Employment Correspondence .... 576

Exhibit 7. NYS DOB Employment Correspondence ... 580

Exhibit 8. NYS WCB Employment Correspondence ... 588

Exhibit 9. NYS TA Employment Correspondence ...... 593

Exhibit 10. NYS ESD Employment Correspondence ... 597

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## LIST OF EXHIBITS INCORPORATED INTO AMENDED COMPLAINT BY REFERENCE CONTAINED WITHIN <u>MOTION FOR CLASS CERTIFICATION</u>, DATED NOVEMBER 25, 2019. DOCKET NO. 19.

**Exhibit 1.** NYS ITS Policy: Probationary Periods ..........10

**Exhibit 2.** NYS ITS Orientation Email...................... 20

**Exhibit 3.** Compressed Work Schedule Request .......... 22

**Exhibit 4.** Disability Accommodation Request ........... 25

**Exhibit 5.** Leadership Development Program Request ... 37

**Exhibit 6.** Correspondence to Supervisor ................... 55

**Exhibit 7.** Application for Internal Promotion ............. 58

**Exhibit 8.** Correspondence to Supervisors ...................62

**Exhibit 9.** Disability Accommodation Request ........... 67

**Exhibit 10.** Medical Note for Accommodation Request... 69

**Exhibit 11.** NYS ITS Canvass Submission ...................71

**Exhibit 12.** Disability Accommodation Correspondence 74

**Exhibit 13.** Disability Accommodation Correspondence 83

**Exhibit 14.** Correspondence to NYS ITS Counsel......... 93

**Exhibit 15.** Termination Notice Sent to Private Email...105

**Exhibit 15.** Request to PEF for Complaint Form ........ 109

**Exhibit 16.** Correspondence to NYS ITS CIO ............ 111

**Exhibit 17.** Request for Personal File & Timesheets ... 120

**Exhibit 18.** NYS ITS Accommodation Denial Letter .... 136

**Exhibit 19.** NYS ITS Accommodation Denial Letter .... 138

**Exhibit 20.** Removal from NYS Project Manager List ... 141

**Exhibit 21.** FOIL Correspondence ........................ 146

**Exhibit 22.** NYS ITS Discrimination Complaint ......... 152

**Exhibit 23.** Correspondence to PEF Counsel ............ 158

**Exhibit 24.** FOIL Correspondence ........................ 167

**Exhibit 25.** NYS ITS Canvass Submission ................ 173

**Exhibit 26.** FOIL Correspondence ........................ 177

**Exhibit 27.** Correspondence to PEF Counsel ............ 181

**Exhibit 28.** NYS CS Project Manager List ................ 185

**Exhibit 29.** FOIL Correspondence ........................ 191

**INTRODUCTION**

1.     This federal complaint is about the abuse of power by New York State agencies, authorities, officials, and contractors against a discrete and insular minority, a class of older individuals with a disability. The abuse of power was perpetrated upon this discrete and insular class through the State acting in concert with the Public Employees Federation to unlawfully and unjustly deprive a class of individuals of protected rights in violation of the United States Constitution and Federal Laws.

2.     The named Plaintiff, Mr. Victor Stiegman, the proposed class representative, is a former New York State employee who was discriminated and retaliated against due to being an older individual with a disability, which included a personal history of cancer. Mr. Stiegman qualified for his position with the State through his score in a competitive civil service examination. Mr. Stiegman qualified for the exam based upon his experience, and education, a source of great pride for him and his family. For example, despite only three of the Plaintiff's grandparents completing formal education at eight grade, Mr. Stiegman was the first in his family line to not only attend college, but graduated *magna cum laude* with undergraduate degrees in History & Social Science, and Psychology. These degrees were earned while running a small business dedicated to empowering disabled and aging individuals, including veterans, to remain their home, and near their families. A few years later, Mr. Stiegman continued his education at the graduate level while working on military medicine projects for military service personnel and their beneficiaries, on behalf of the Department of Defense. Despite his graduate studies being interrupted with a diagnosis of cancer, and three major surgeries, Mr. Stiegman graduated with a Master of Science in Global Leadership, as well as a Graduate Certificate in Project Management.

3.     In 2017, the Plaintiff, Mr. Stiegman, was hired by New York State Office of Information Technology Services, off of the competitive civil service list into the position of

Project Manager 1, a Public Employees Federation represented position. Despite being a probationary employee attached to the Chief Portfolio Office with the agency, Mr. Stiegman was assigned to two Project Management Office clusters, the Revenue and Transportation cluster, and the Health cluster, which comprised portfolio and project governance activities for several New York State agencies and state systems, including Department of Taxation and Finance, Department of Transportation, Department of Health, Office of Mental Health, and Office of Alcoholism and Substance Abuse Services.

4.    Throughout his tenure with the state agency, the Plaintiff, Mr. Stiegman, was unlawfully and unjustly deprived of sacred and protected rights in violation of the Constitution and Federal Law. Soon after invoking his rights to multiple individuals in the agency, Mr. Stiegman was terminated under the guise of false evaluative information, which was served to his private email address and an unpublished physical address while he was at Mayo Clinic's Saint Mary's Hospital in Rochester, Minnesota, the hospital performing his cancer surgery years prior. Docket 19 at 105.

5.    Around the same this time, Mr. Stiegman also lost access to electronic credentials, timekeeping systems, professional files, and personal files. As the agency also did not respond to Mr. Stiegman's previous request for medical parking, the Plaintiff was also prevented from accessing his tangible and intangible private property. Despite numerous attempts to seek resolution through other avenues, including the Public Employees Federation, as well as pursue employment with state agencies and authorities, Mr. Stiegman has been perpetually obstructed through each door. This unjust situation has born extremely deep irreparable fissures into his health, relationships, finances, reputation, and dignity.

6.    This class action by Mr. Stiegman serves to bring justice to a class of older individuals with a disability, a discrete and insular minority.

1

## NATURE OF THE ACTION

2   7.   This class action is brought by the Plaintiff, Mr. Victor Karl Daniel Stiegman, a

3   former New York State employee, on behalf of proposed Classes, for violations of United States

4   Constitution, Amendments I, IV, V, VIII, IX, XIV; Section 2 of Civil Rights Act of 1871, as

5   codified 42 U.S.C. 1985(3); Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C.

6   §§ 621 to 634; Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117;

7   Section 504 of the Rehabilitation Act, as codified, 29 U.S.C. § 794; and, Section 301 of the Labor

8   Management Relations Act, as codified, 29 U.S.C. § 185.

9   8.   This class action seeks an end to unlawful and unjust practices by New York State

10   agencies, authorities, unions, and contractors, especially against a discrete and insular minority, a

11   class of older individuals who have a disability, as well as an award to make the Plaintiff, and the

12   Class, whole, including damages, and all other appropriate relief.

13

14

## PARTIES

15   9.   Plaintiff, Mr. Victor Karl Daniel Stiegman, was employed by New York State Office

16   of Information Technology Services from February 9, 2017 to November 1, 2017. Mr. Stiegman

17   served as Project Manager 1 when he was removed from his employment duties by the agency.

18   Plaintiff's postal mailing address is PO Box 133, Clifton Park, New York 12065. The phone number

19   for Mr. Stiegman is 518 302 1322. Mr. Stiegman, asserts this action individually, and on behalf of

20   a class of all others similarly situated.

21   10.   Defendant, New York State Office of Information Technology Services, is a New

22   York State agency providing information technology services to agencies, businesses, and citizens.

23   In 2018, the agency employed approximately 4020 individuals with a total payroll of $301M.

24   Defendant's mailing address is Post Office Box 2062, Albany, New York 12220. The physical

1  location of executive offices are Swan Street Building, Core 4, and Floor Five. Defendant's phone
2  number is 518 408 2140.

3       11.     Defendant, Ms. Shoshanah Bewlay, worked in her official capacity as General
4  Counsel for New York State Office of Information Technology Services. Official capacity contact
5  information is same as agency.

6       12.     Defendant, Ms. Beth Bloodgood, worked in her official capacity as Director and
7  Deputy Cluster Chief Information Officer Coordinator for New York State Office of Information
8  Technology Services. Ms. Bloodgood was the Plaintiff's second level supervisor at the agency.
9  Official capacity contact information is same as agency.

10       13.     Defendant, Mr. Robert Valla, worked in his official capacity as Director of Human
11  Resources for New York State Office of Information Technology Services. Mr. Valla appears to
12  have retired from his work with the agency. Official capacity contact information is same as agency.

13       14.     Defendant, Mr. Christopher Lloyd, worked in his official capacity as Chief Portfolio
14  Officer and Director for New York State Office of Information Technology Services. Mr. Lloyd
15  was the Plaintiff's third level supervisor at the agency. Mr. Lloyd resigned his position in February
16  2018. Official capacity contact information is same as agency.

17       15.     Defendant, Mr. Matthew Millea, worked in his official capacity as Chief of Staff
18  and Special Assistant for New York State Chief Information Officer, Mr. Robert Samson, at New
19  York State Office of Information Technology Services. Mr. Millea resigned in December 2017. Mr.
20  Samson ended his tenure in August 2019. Official capacity contact information is same as agency.

21       16.     Defendant, Mr. David Mahoney, worked in his official capacity as Director of
22  Labor Relations and Associate Director of Human Resources Labor Relations for New York State
23  Office of Information Technology Services. Mr. Mahoney appears to taken another position in the
24  agency. Official capacity contact information is same as agency.

17. Defendant, Ms. Veronica Webster, worked in her official capacity as Project Manager and Project Coordinator for New York State Office of Information Technology Services. Ms. Webster was the Plaintiff's first level supervisor at the agency. Official capacity contact information is same as agency.

18. Defendant, Ms. Shinu Shilesh, worked in her official capacity as Director of Affirmative Action Programs for New York State Office of Information Technology Services. Official capacity contact information is same as agency.

19. Defendant, Mr. Edward Page, worked in his official capacity as Human Resources Specialist Labor Relations for New York State Office of Information Technology Services. Official capacity contact information is same as agency.

20. Defendant, Ms. Marcy Spratt Stevens, worked in her official capacity as Records Access Officer for New York State Office of Information Technology Services. Official capacity contact information is same as agency.

21. Defendant, Mr. Jon Haverly, worked in his official capacity as Contractor for New York State Office of Information Technology Services. Official capacity contact information is same as agency.

22. Defendant, Mr. Eric Huntington, worked in his official capacity as Manager of Information Technology Services for New York State Office of Information Technology Services. Official capacity contact information is same as agency.

23. Defendant, Ms. Mary Ann Pelltier, worked in her official capacity as Project Manager III for New York State Office of Information Technology Services. Official capacity contact information is same as agency.

24. Defendant, Public Employees Federation, is a professional, scientific, and technical public employee union in the State of New York. Members of the union total over 50,000

1  individuals. Defendant's address is 1168-70 Troy-Schenectady Road PO Box 12414, Albany, NY

2  12212-2414. Defendant's phone number is 518 785 1900.

3      25.    Defendant, Mr. Wayne Spence, worked in his official capacity as President for

4  Public Employees Federation. Official capacity contact information is same as union.

5      26.    Defendant, Mr. Edward Aluck, worked in his official capacity as General Counsel

6  for Public Employees Federation. Mr. Aluck appears to no longer be working for Public Employees

7  Federation. Official capacity contact information is same as union.

8      27.    Defendant, Ms. Rita Strauss, worked in her official capacity as Deputy General

9  Counsel for Public Employees Federation. Ms. Strauss appears to no longer be working for Public

10  Employees Federation. Official capacity contact information is same as union.

11      28.    Defendant, Ms. Deirdre Maria Salsich, worked in her official capacity as Associate

12  Counsel for Public Employees Federation. In a former position with the New York State Assembly,

13  Ms. Salsich, represented budgetary interests for New York State Office of Information Technology

14  Services. Ms. Salsich worked with Public Employees Federation for seven months, and left the

15  union soon after her Memo on Plaintiff. Docket 19 at 158. Contact information is same as union.

16      29.    Defendant, New York State Office of the Attorney General, is a New York State

17  agency. According to the agency website, the agency is "charged with statutory and common law

18  powers to protect consumers and investors, charitable donors, the public health and environment,

19  civil rights, and the rights of wage-earners and businesses across the State." In 2018, the agency

20  employed approximately 2071 individuals with a total payroll of $167M. The Plaintiff interviewed

21  with the agency in 2018. Exhibit 4. Defendant's address is New York State Office of the Attorney

22  General, The Capitol, Albany, New York 12224. Defendant's phone number is 518 776 2000.

23      30.    Defendant, Ms. Denise Dreany, worked in her official capacity as Manager,

24  Information Technology Services for New York State Office of the Attorney General. The Plaintiff

interviewed with the Defendant in 2018. Exhibit 4. Official capacity contact information is same as agency.

31.    Defendant, Mr. Mark Jackson, worked in his official capacity as Manager, Information Technology Services for New York State Office of the Attorney General. The Plaintiff interviewed with the Defendant in 2018. Exhibit 4. Official capacity contact information is same as agency.

32.    Defendant, Mr. William Harrison, worked in his official capacity as Assistant Director of Personnel for New York State Office of the Attorney General. The Plaintiff communicated with the Defendant in 2018. Exhibit 4. Official capacity contact information is same as agency.

33.    Defendant, New York State Insurance Fund, is a self-supporting government insurance carrier, provides workers' compensation and disability benefits for employers in New York State. In 2018, the carrier earned $2.2 billion in earned premium from over 150,000 policyholders. In 2018, the carrier employed approximately 2395 individuals with a total payroll of $166M. The Plaintiff interviewed with the agency in 2018. In 2018-19, the Plaintiff received multiple canvass letters from the agency for positions for which he was well qualified. Exhibit 5. Defendant's address is 199 Church Street New York, New York 10007. Defendant's phone number is 212 587 5435.

34.    Defendant, New York State Homes and Community Renewal, is a state agency. According to agency website, the agency "builds, preserves and protects affordable housing and increases home ownership while spurring related economic development activity to create business opportunity and strengthen communities across the state." In 2018, the agency employed approximately 688 individuals with a total payroll of $47M. In 2018, the Plaintiff received a canvass

letter from the agency for a position for which he was well qualified. Exhibit 6. Defendant's address is Lexington Avenue, New York, NY 10022. Defendant's phone number is 518 473 2526.

35.      Defendant, Mr. Ilan Halfi, worked in his official capacity as Human Resources Specialist for New York State Homes and Community Renewal. The Plaintiff communicated with the Defendant multiple times in 2018. Exhibit 6. Official capacity contact information is same as agency.

36.      Defendant, New York State Division of the Budget, is a state agency. According to the agency website, the agency "assists the governor in preparing his Executive Budget proposal, offers fiscal policy advice to the governor's office, and also administers and monitors expenditures authorized by the final Enacted Budget." In 2018, the agency employed approximately 311 individuals with a total payroll of $22.7M. The Plaintiff interviewed with the agency in 2018. In 2018-19, the Plaintiff received multiple canvass letters from the agency for positions for which he was well qualified. Exhibit 7. Defendant's address is the State Capitol Building Albany, NY 12210. Defendant's phone number is 518 473 3885.

37.      Defendant, Mr. Laurence Moats, worked in his official capacity as Project Assistant for New York State Division of the Budget. The Plaintiff interviewed with the Defendant in 2018. Exhibit 7. Official capacity contact information is same as agency.

38.      Defendant, New York State Workers Compensation Board, is a state agency. According to the agency website, the agency assembles and adjudicates workers' compensation claims and carrier compliance. In 2018, the agency employed approximately 1195 individuals with a total payroll of $79.5M. In 2019, the Plaintiff received multiple canvass letters from the agency for positions, which he was well qualified. Exhibit 8. Defendant's address is 328 State Street Schenectady, NY 12305. Defendant's phone number is 518 402 6070.

39. Defendant, Ms. Tashana Hanif, worked in her official capacity as Program Aide for New York State Workers Compensation Board. Exhibit 8. Official capacity contact information is same as agency.

40. Defendant, New York State Thruway Authority, is public benefit corporation charged with responsibility of constructing, maintaining, and operating the New York State Thruway, a system of limited-access highways within the state. In 2018, the authority employed approximately 3952 individuals with a total payroll of $164M. In 2019, the Plaintiff received a canvass letter from the agency for a position, which he was well qualified. Exhibit 9. Defendant's address is 200 Southern Blvd. P.O. Box 189 Albany, New York 12201. Defendant's phone number is 518 436 2700.

41. Defendant, Mr. Dan Cantwell, worked in his official capacity as Assistant Director of Personnel for New York State Thruway Authority. Official capacity contact information is same as agency.

42. Defendant, Empire State Development Corporation, is public benefit corporation. According to the corporation's website, the mission of the corporation is to "promote a vigorous and growing state economy, encourage business investment and job creation, and support diverse, prosperous local economies across New York State through the efficient use of loans, grants, tax credits, real estate development, marketing and other forms of assistance." In 2018, the corporation employed approximately 905 individuals with a total payroll of $71M. In 2017-19, the Plaintiff applied to multiple positions for which he was qualified. Defendant's address is 633 Third Avenue, Floor 37, New York, New York 10017. Defendant's phone number is 212 803 3100.

43. Defendant, Ms. Ruth Parris, worked in her official capacity as Human Resources Manager for Empire State Development Corporation. Official capacity contact information is same as agency.

44.     Defendant, Mr. Shawn Bryant, worked in his official capacity as Human Resources Manager for Empire State Development Corporation. Official capacity contact information is same as agency.

45.     Defendant, New York State Department of State, is a state agency. According to the agency website, the agency is the "official compiler of state agency rules and regulation, publisher of information on official state documents," and most recently, through the Cuomo Administration, a vehicle for "strategic investments." In 2018, the agency employed approximately 686 individuals with a total payroll of $33.7M. Defendant's address is One Commerce Plaza, 99 Washington Ave, Albany, NY 12231. Defendant's phone number is 518 473 2293.

46.     Defendant, Mr. Robert Freeman, worked in his official capacity as Executive Director for the Committee on Open Government for New York State Department of State. Official capacity contact information is same as agency.

47.     Defendant, Garnet River, LLC, is an information technology business on contract with New York State, who through individual contractors, provided consulting services to Defendant, New York State Office of Information Technology Services, through state contracting channels. Defendant address is 60 Railroad Place, Suite 501 Saratoga Springs, New York 12866. Defendant phone number is 518 275 4800.

48.     Defendant, RTE Consulting LLC, is a business owned by Defendant, Mr. Jon Haverly, a contractor with Defendant, New York State Office of Information Technology Services, who appears to be on contract through Defendant, Garnet River, LLC. Defendant's address is 527 Terrace Mountain Road, Box 780 Schoharie, New York 12157. Defendant phone number is 518 231 3231.

49.     Defendant, John Doe 1-25, are currently unnamed officials, contractors, or agencies, which will be incorporated, if necessary, as named defendant.

50.    Defendant, Jane Doe, 1-25, are currently unnamed officials, contractors, or agencies, which be incorporated, if necessary, as named defendant.

## JURISDICTION AND VENUE

51.    This Court has jurisdiction over subject matter of this action pursuant to 28 U.S.C. § 1331, since a case arising under the Constitution or federal laws is a federal question case.

52.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) as many of the Defendants conduct business in and throughout this District.

## INTERSTATE COMMERECE

53.    In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendant New York State Office of Information Technology Services, directly and indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, US mail services, telephone and internet services, including Voice over IP, as well as implementing specific written approvals of employees to work outside New York State.

54.    Defendant New York State Office of Information Technology Services maintains contractual, and state-operated obligations, with New York State Department of Taxation and Finance located at 1011 E Touhy Ave, Suite 475, Des Plaines, IL 60018.

55.    Defendant New York State Office of Information Technology Services approved Plaintiff's request for a reasonable accommodation for disability to work outside of the State of New York, including and in-transit through the State of Illinois to the State of Minnesota to work while being treated for a history of cancer.  This accommodation, an instrumentality of interstate commerce, subject to Congress through the Commerce Clause, was only approved after Plaintiff provided written documented from his State of Minnesota licensed medical doctor.

## FACTUAL ALLEGATIONS

56.     On December 12, 2017, Mr. Stiegman interviewed with Ms. Veronica Webster, the hiring manager, and Ms. Mary Ann Pelletier for the position of Project Manager 1 with New York State Office of Information Technology Services. This agency, established in 2012 to consolidate information technology services from numerous state agencies.

57.     Mr. Stiegman was qualified for the Project Manger 1 position based upon successfully completing the New York State Department of Civil Service Project Manager 1/2 exam series. For the Project Manager 1 exam, Mr. Stiegman received a score of 85 out of 100, which resulted in a rank of 18 out of 138 eligible candidates. Mr. Stiegman qualified for the exam based upon his combined education, experience, and training. For the Project Manager 2 exam, Mr. Stiegman received a score of 85 out of 100, which resulted in a rank of 24 out of 113 eligible candidates. In comparison, Ms. Webster sat for the Project Manager 3 exam and received a score of 70 out of 100, the minimum passing score.

58.     The education Mr. Stiegman used to qualify for the exam included a Bachelor of Arts in History and Social-Science, and Psychology (3.77/4.00 GPA), and a Master of Science in Global Leadership (3.87/4.00 GPA). The graduate degree program was a collaboration with the Department of Defense, where graduate students were comprised of military officers and civilians. In this program, Mr. Stiegman also earned a Graduate Certificate in Project Management. The professional experience Mr. Stiegman used to quality for the exam included responsibilities with the Department of Defense on military medicine projects for service members and beneficiaries.

59.     On January 9, 2017, Mr. Stiegman received a verbal offer of employment from Ms. Webster. Mr. Stiegman graciously accepted this offer from Ms. Webster.

60.     On February 9, 2017, Mr. Stiegman started his employment with New York State Office of Information Technology Services.  The title of Mr. Stiegman's position was Project

1  Manager 1 (SG-23). At the time, the hiring rate was $71,847 annually with a job rate of $90,876.

2  This position was part of the Professional, Scientific and Technical Services Unit (PS&T), a group

3  represented by Public Employee Federation AFL-CIO (PEF).

4       61.    On February 9, 2017, after new employee orientation, Mr. Stiegman received a copy

5  of the "Office of Information Technology Services Employee Handbook and Work Rules" and

6  the New York State Information Technology Policy, titled, "Probationary Periods." According to

7  the employee handbook,

8       An ITS employee's supervisor will prepare written probationary reports at designated
   intervals during the employees probationary period. These reports will evaluate performance and
9  progress. The supervisor will give the employee a copy of the report and will discuss it with them.
   This is an opportunity for the supervisor and the employee to speak frankly about job duties and
10 job performance. Exhibit 2.

11      According to the Probationary Periods policy,

12      The performance of all probationary employees will be closely monitored and evaluated by
   their supervisors and only those employees whose performance meets the standards of ITS will be
13 made permanent upon completion of the probationary period. Supervisors are responsible for
   providing training, support and guidance throughout the period. The expectation is that an
14 employee will be given every opportunity to succeed. Supervisors should make a reasonable effort
   to support the employee, monitor performance, and help the employee to successfully complete
15 the probationary period. Docket 19 at 10.

16      Regarding the evaluation process, the probation policy continues, by stating,

17      It is the responsibility of the supervisor to evaluate the performance of a probationer on

18 an ongoing basis during the probationary period. The supervisor should work closely with the

19 probationer to assess that the probationer is aware of the expected performance standards and

20 tasks of his or her position and whether or not he or she is adequately meeting those standards. A

21 performance program should be given to the probationer shortly after he or she is hired. This

22 performance program serves to document the tasks and standards that the employee will be

23 evaluated on, as well as to outcome the supervisor's expectations. Supervisors are strongly

24

1  encouraged to contact HRS regarding a probationer exhibiting poor performance or work habits

2  early in the probation period to discuss the situation.

3       62.     The office location for Mr. Stiegman within New York State Office of Information

4  Technology Services was with the Chief Portfolio Office (CPO) located in the Swan Street Building

5  (Core 4, Floor 3, Room 3406) at Empire State Plaza in Albany, New York. The Chief Portfolio

6  Office was created to provide strategy, governance, and portfolio services to the agency, facilitate

7  the coordination and standardization of project information, and generate source date for New

8  York State Division of the Budget to fulfill reporting requirements.

9       63.     Due to limited parking options in downtown Albany, especially at Empire State

10  Plaza, the daily parking location for Mr. Stiegman was the P3-North Visitor Lot, the closest parking

11  location available to him as a new state employee.  The walking distance from the visitor parking

12  location to Mr. Stiegman's physical office was approximately one-third of a mile each way, which

13  included at least three elevators, and multiple vertical steps without access to an elevator or ramp.

14       64.     For the duration of his employment with New York State Office of Information

15  Technology Services, Mr. Stiegman's first level supervisor was Ms. Veronica Webster. When Mr.

16  Stiegman started his employment in February 2017 as Project Manager 1, Ms. Webster's title was

17  Project Manager 2. In November 2017, when Mr. Stiegman was removed by undue influence from

18  his position, Ms. Webster's title was Project Coordinator, a salary promotion from her previous

19  position. For the duration of his employment with the agency, Mr. Stiegman's second level

20  supervisor was Ms. Beth Bloodgood, Deputy Cluster Chief Information Officer.  For the duration

21  of Mr. Stiegman's employment with the agency, his third level supervisor was Mr. Chris Lloyd,

22  Chief Portfolio Officer. From June 2017 forward, Mr. Lloyd reported to Ms. Karen Geduldig,

23  Executive Deputy Chief Information Officer, and former General Counsel of the agency. Ms.

24  Geduldig reported to Mr. Robert Samson, Chief Information Officer of New York State.

requirements for a graduate program in strategic management. Last, all of Mr. Stiegman's immediate family members were located several thousand miles away in California and Arizona, and therefore, a compressed work schedule would allow for easier opportunities to visit, especially his parents, who, due to their age in mid-70s, would rely on him for support.

67.    On or around the sixth day after the compressed work schedule request, Mr. Stiegman received an informal verbal notification from Ms. Webster that his request could not be approved. At this time, Ms. Webster did not provide a formal acknowledge or denial of the compressed work schedule request. This formal acknowledge was essential for Mr. Stiegman being able to submit an internal appeal for review with Human Resources.

68.    On March 29, 2017, Mr. Stiegman submitted a Reasonable Accommodation for Disability request for a compressed work schedule to Ms. Webster, Ms. Bloodgood, and Mr. Lloyd. His request stressed needs for disabilities under Americans with Disabilities Act. Docket 19 at 25.

69.    On March 31, 2017, Mr. Stiegman received a communication from Dana Blair in Labor Relations on behalf of Mr. David Mahoney, the Designee for Reasonable Accommodations and Director of Labor Relations for the agency, which stated that the request for a compressed work schedule could not be reviewed until supportive medical documentation was provided. Mr. Stiegman could not provide until re-establishing care.

70.    On April 5, 2017, Mr. Stiegman finally received a copy of his first probation evaluation, which was delivered 13 days past the due date. This evaluation was signed by Ms. Webster and Ms. Bloodgood. After a comprehensive review of his evaluation against the evidence, Mr. Stiegman became very concerned, since the content was significantly incongruent with his bi-weekly reports, reviewed and approved by Ms. Webster, as well as the verbal feedback received from Ms. Webster, Ms. Bloodgood, and Mr. Lloyd.

71.    Due to his concerns over supervisory behavior in the office, Mr. Stiegman started documenting all pertinent conversations and meetings on April 6, 2017, which included a meeting with his supervisor, Ms. Webster, to discuss his first probation evaluation. While she praised his work in this meeting, Ms. Webster also communicated a range of threats to Mr. Stiegman, which he understood to be threats of further retaliation.

72.    On April 7, 2017, after reviewing what he understood to be his responsibilities (since none were formally provided), accomplishments, and other evidence, Mr. Stiegman submitted a signed copy of his first probation evaluation to Ms. Webster, which included his official written responses to evaluation feedback to be included in his record. Around a similar time, another older colleague of Mr. Stiegman, also on probation, confided to him in the lack of work and responsibilities that were provided to him.

73.    On April 19, 2017, after receiving an agency-wide email, Mr. Stiegman expressed interest to his supervisor, Ms. Webster, in applying to the ITS Leadership Development Program, a leadership training opportunity with the organization. Ms. Webster objected to supporting Mr. Stiegman's application to the training program, since she stated that he was not qualified to apply to the program.

74.    On April 24, 2017, Mr. Stiegman contacted the Director of Learning and Talent Management for the New York State Office of Information Technology Services, Ms. Nancy Perry, the internal sponsor of the ITS Leadership Development Program, for further clarification on qualification criteria for applying to the program. Based upon Mr. Stiegman's communication with Ms. Perry, she encouraged him to apply. Based upon this demonstration of support, Mr. Stiegman re-approached his supervisor, Ms. Webster, and second level supervisor, Ms. Bloodgood, with this information and requested their support of his application. Ms. Bloodgood promptly denied Mr. Stiegman's request.

75.    After the May 30, 2017, Cluster Project Management Office (CPMO) Leadership meeting, Mr. Stiegman was approached by senior agency staff, including Mr. Eric Huntington, who requested Plaintiff's assistance in executing his responsibilities. Based upon the urgency of the request, and the priorities communicated to him by the supervisory chain of command within his department, Mr. Stiegman stayed well into the night to perform these requests.

76.    Earlier in the week, Mr. Stiegman was also asked by his supervisor, Ms. Webster, to take over Ms. Vicci Cook's responsibilities as the lead CPO analyst for the Health Cluster Project Portfolio. Despite being the lead CPO analyst for the Revenue and Transportation Cluster Project Portfolio, Mr. Stiegman accepted the offer. At this time, Mr. Stiegman was overseeing the day-to-day CPO governance activities for the two of the large Project Management Offices (PMO) in the agency with IT project collaborations with some of the largest agencies in the state, including New York State Department of Taxation and Finance, New York State Department of Health, and New York State Department of Transportation. For Mr. Stiegman, all of this was occurring barely four months into his tenure as a new state employee. On top of these responsibilities, this request made to Mr. Stiegman was occurring in the midst of integrating a new IT system in the agency, which would serve as the official record for all IT projects. All of these transitions were occurring while a different New York State Chief Information Officer was being appointed to the agency.

77.    On June 1, 2017, Mr. Stiegman provided a list of ideas to his supervisor, Ms. Webster, per her request, to document areas that he would like to work on personally within the Chief Portfolio Office. Docket 19 at 55. Among the list of ideas that Mr. Stiegman presented, included: strategy development at the enterprise and portfolio levels; developing a framework to further innovation processes in the organization; enhancement of the risk and uncertainty assessment process at the portfolio and project level; development of a post-implementation review process for projects and portfolios; development of enterprise metrics to calculate social return on

investment and total economic return for taxpayers on highly visible projects; assessing PMO maturity through use of metrics; creation of key performance indicators aligned with strategy. In the months forward, these ideas were passed off through supervisory chain-of-command to younger team members in the CPO.

78.    On June 22, 2017, as some time had passed since the last request, Mr. Stiegman re-expressed interest to his supervisor, Ms. Webster, in applying to the next series of the ITS Leadership Development Program, since she previously indicated, "next time." The next day after this request, Ms. Webster, stated, "We still believe this is not the right time for you to participate in the program."

79.    On June 25, 2017, Mr. Stiegman, in an effort to extricate himself from an increasingly unjust supervisory environment in his department, submitted an application for IT Specialist 4 (SG-25) position located in other areas in the agency. Docket 19 at 58. On June 30, 2017, Mr. Stiegman received a confirmation from Human Resources that the department reviewed his application for the IT Specialist 4 position, and that he met necessary qualifications, and therefore, the department would forward his application to hiring program areas.

80.    From July 5, 2017 to July 11, 2017, Mr. Stiegman took accruals to attend his grandmother's memorial.

81.    On July 13, 2017, Mr. Stiegman's second probation evaluation was due, but not provided. Based upon New York State Office of Information Technology Services policies, including probationary policies, this second evaluation was required at week twenty-two of employment, as a continuation of the evaluation process, for the probationer to understand expectations and the supervisor to monitor performance. As the probation policy emphasized, "The supervisor should work closely with the probationer to assess that the probationer is aware of the expected performance standards and tasks of his or her position and whether or not he or

1 | she is adequately meeting those standards." Instead of providing Mr. Stiegman with a timely second

2 | evaluation, and attending regularly schedule supervisory meetings with Mr. Stiegman, Ms. Webster

3 | was frequently cancelling these meetings and participating in the ITS Leadership Development

4 | Program as an applicant herself.

5 |     82.    During July 13, 2017 CPO staff meeting, Ms. Bloodgood, said to Mr. Stiegman,

6 | "don't take feedback [from Mr. Eric Huntington] personally, consider the source." Another

7 | colleague added, "I've read all of your feedback, and it's all spelled out." This was typical of Mr.

8 | Stiegman, as he regularly provided prompt, specific, and detailed feedback in his reviews of projects

9 | submitted to him for governance reviews. At the time of the transition to the new system which

10 | tracked project information, Mr. Stiegman regularly facilitated one-on-one training with project

11 | managers within each of the Cluster PMOs to help them learn the new system and requirements

12 | being implemented by the CPO.

13 |     83.    On July 14, 2017, as typical with preceding weeks, Mr. Stiegman drafted a concise

14 | weekly portfolio status report, which reported requested information on the two of the largest

15 | PMO groups in the CPO, which he was assigned, and sent to Mr. Lloyd and Ms. Bloodgood for

16 | their review. Docket 19 at 62. This communication also included a more detailed communication

17 | that was separately provided to PMO group leadership, which highlighted specific portfolio status

18 | updates and concerns from a governance and portfolio review perspective. Again, these two PMO

19 | groups that Mr. Stiegman was assigned, were two of the largest PMO groups in the agency. Over

20 | the course of many weeks that Mr. Stiegman sent these reports to Mr. Lloyd and Ms. Bloodgood,

21 | neither expressed any concern to him about the quality or quantity of his work. To the contrary,

22 | on multiple occasions, Mr. Lloyd and Ms. Bloodgood expressed approval and appreciation. In fact,

23 | the dominant issue was that several PMO groups had great difficulty in meeting the requests of

24 | Mr. Lloyd and Ms. Bloodgood. This was common knowledge among the PMO groups, as well as

within Chief Portfolio Office team. What was also common knowledge in the Chief Portfolio Office is that the one of the PMO groups that possessed the greatest difficultly in effectively responding to CPO governance requests was one that Mr. Stiegman was recently assigned.

84.    On July 14, 2017, the Chief Portfolio Office was provided a Project Manager 2 position to fill with an expiration date of August 16, 2017. Exhibit 3. Even though Mr. Stiegman was on a pre-qualified Project Manager 2 list to fill an item with this title, Mr. Stiegman was not offered an interview for this position. Instead, a younger colleague of Mr. Stiegman, Mr. Andrew Soper, who was located in the same office, and not on the pre-qualified list, and whose specialty was in a different area, was selected to interview with Ms. Veronica Webster and Ms. Mary Ann Pelletier, on August 2, 2018. Mr. Soper, an IT Specialist 3, was approved for the Project Manager 2 position by Human Resources on August 18, 2018.

85.    During July 20, 2017 one-on-one meeting with his supervisor, Ms. Webster, Mr. Stiegman noted no discussions regarding poor quality of work or risk of termination. No reference to planning Mr. Stiegman's second probation evaluation was provided.

86.    During August 1, 2017 meeting with his supervisor, Ms. Webster, Mr. Stiegman noted no discussions regarding poor quality of work or risk of termination. No reference to scheduling Mr. Stiegman's second probation evaluation was provided by Ms. Webster, despite the second probation evaluation being overdue by almost three weeks.

87.    During August 8, 2017 meeting with his supervisor, Ms. Webster, Mr. Stiegman noted no discussions regarding poor quality of work or risk of termination. No reference to scheduling Mr. Stiegman's second probation evaluation was provided by Ms. Webster, despite the second probation evaluation being overdue by almost four weeks.

88.    During August 11, 2017 one-on-one meeting with his supervisor, Ms. Webster, Mr. Stiegman noted no discussion regarding poor quality of work or risk of termination. No reference

to scheduling Mr. Stiegman's second probation evaluation was provided, despite the second probation evaluation being overdue by five weeks.

89.    During August 17, 2017 meeting with his supervisor, Ms. Webster, Mr. Stiegman noted that there were no discussions regarding poor quality of work or risk of termination. No reference to scheduling Mr. Stiegman's second probation evaluation was provided, despite the second probation evaluation being overdue by six weeks.

90.    On or around August 17, 2017, Mr. Stiegman requested a reasonable accommodation for disability for a temporary work at home schedule to his supervisor, Ms. Veronica Webster, to attend to significantly deferred out-of-state medical appointments at Mayo Clinic in Rochester, Minnesota for disabilities covered under the Americans with Disabilities Act, which included a personal history of metastatic cancer. Ms. Webster requested that Mr. Stiegman contact his doctor, and receive their approval first. Once received, Ms. Webster would initiate the internal process for the request.

91.    On August 17, 2017, per Ms. Webster's direction, Mr. Stiegman requested approval from one of his established doctors that oversaw his cancer treatment at Mayo Clinic. Upon receipt of approval documentation from Mr. Stiegman's doctor, Ms. Webster handed off the reasonable accommodation for disability request to Ms. Bloodgood, who initiated communication with Mr. Edward Page in Human Resources.

92.    On August 18, 2017, Mr. Stiegman received a communication from Labor Relations on behalf of Mr. David Mahoney, the New York State Office of Information Technology Services Designee for Reasonable Accommodations, which indicated approval of the reasonable accommodation for disability request for a temporary work at home schedule effective August 21, 2017 through September 21, 2017. This documentation indicated that if Mr. Stiegman had a continued need, a renewal for extension would be required.

93.     On or around August 18, 2017, Mr. Stiegman received additional communication from his supervisor, Ms. Webster, of additional stipulations that she was going to require for the temporary work from home schedule. According to Ms. Webster, Mr. Stiegman would be required to document all tasks and time required to complete tasks, and submit daily reports to her containing this information. Additionally, Ms. Webster stated that Mr. Stiegman could only perform work during set hours and days. Based upon the information available to him at the time, Mr. Stiegman was under that impression that these stipulations were not applied similarly to younger colleagues or disabled colleagues.

94.     From August 21, 2017 through August 25, 2017, Mr. Stiegman utilized the reasonable accommodation for disability for a temporary work at home schedule to attend scheduled medical appointments at Mayo Clinic in Rochester, Minnesota. During the five day period in Rochester, Mr. Stiegman worked 24.25 hours, charged 9.25 hours towards accruals, and charged 4.0 hours towards a prostate cancer screening.  During this first week of utilizing the reasonable accommodation for disability for a temporary work at home schedule, his supervisor, Ms. Webster, cancelled her weekly supervisory meeting with Mr. Stiegman, despite their mutual access to phone and video conference capabilities. In addition, Mr. Stiegman was not provided any information for remotely joining via phone or video conference for any staff, team, or cluster PMO leadership meetings. Mr. Stiegman claims that these options were routinely provided to other colleagues for flexibility, including younger colleagues, and non-disabled colleagues. During this period, Mr. Stiegman was required to document all tasks and time required for tasks, and submit daily reports containing this information to his supervisor, Ms. Webster. This request promoted undue inefficiencies in Mr. Stiegman's workday. Also, according to Mr. Stiegman, this requirement did not appear to be applicable for colleagues working at home, including younger workers and non-disable workers.

95.    From August 24, 2017 through September 10, 2017, Mr. Stiegman's supervisor, Ms. Webster, was on vacation. During this period, Ms. Webster did not provide any supervisory direction to Mr. Stiegman for him to follow in her absence.

96.    On September 13, 2017, due to for additional follow-up appointments at Mayo Clinic in Rochester, Minnesota, Mr. Stiegman requested an extension of the approved reasonable accommodation for disability for temporary work at schedule. On September 14, 2017, Mr. Edward Page, from Labor Relations, stated that the request for an extension of the reasonable accommodation for disability could not be approved, and to take accruals, as needed.

97.    During September 14, 2017 meeting with supervisor, Veronica Webster, there were no discussions with Mr. Stiegman regarding poor quality of work or risk of termination. No reference to scheduling Mr. Stiegman's second probation evaluation was provided, despite the second probation evaluation being overdue by nearly ten weeks. Given the increased responsibilities that Mr. Stiegman offered to take on in the preceding months, coupled with an approval of a reasonable accommodation for disability to work at "home" could only mean that he was meeting, even surpassing, supervisory expectations.

98.    On September 14, 2017, Mr. Stiegman received a promotional interview for IT Specialist 4 (SG-25), a position with the Revenue and Transportation Cluster PMO, a New York State Information Technology Services group that he worked with on a daily basis on behalf of the CPO. This interview was with the Cluster PMO Director, Donna Richards, and Assistant Director, Chris Keating. If these individuals wanted to interview Mr. Stiegman for a position in their department, he certainly was performing well for them.

99.    On September 20, 2017, Mr. Stiegman submitted a request to a recently established Mayo Clinic internal medicine doctors, which asked for their support in writing a letter on his behalf affirming their agreement for his previously requested reasonable accommodation for

1   disability for a compressed work schedule. This request was supported by Mr. Stiegman's doctor,

2   and a letter indicating approval was provided, which was passed onto the agency. Docket 19 at 69.

3       100.    On September 21, 2017, Mr. Stiegman re-initiated communication with Mr. Page

4   in Labor Accommodations by requesting re-review of the previous denial, and reconsideration of

5   the request for an extension of the reasonable accommodation for disability for a temporary work

6   at home schedule. This request included a medical note from his treating doctor for planned surgery

7   and probable immobility post-surgery. Based upon this communication, Mr. Stiegman received

8   approval of the previously denied request for an extension of the reasonable accommodation for

9   disability for temporary work at home schedule. This extension was approved through October 19,

10  2017.

11      101.    From September 18, 2017 through September 22, 2017, Mr. Stiegman utilized the

12  reasonable accommodation for disability for a temporary work at home schedule to attend

13  scheduled medical appointments at Mayo Clinic in Rochester, Minnesota. During the five day

14  period in Rochester, Mr. Stiegman worked 20 hours, charged 13.5 hours towards accruals, and

15  charged 4.0 hours towards a breast cancer screening, since this was known to be prevalent in his

16  family. During this period, Mr. Stiegman continued to be required to copiously document all tasks

17  and time required for tasks, and submit daily reports containing this information to his supervisor,

18  Ms. Webster. This request continued to promote undue inefficiencies in Mr. Stiegman's workday.

19  Also, according to Mr. Stiegman, this requirement was not applicable for other colleagues working

20  at home, including younger workers or non-disable workers.

21      102.    From September 25, 2017 through September 29, 2017, Mr. Stiegman utilized the

22  reasonable accommodation for disability for a temporary work at home schedule to attend

23  scheduled medical appointments at Mayo Clinic in Rochester, Minnesota, including foot surgery

24  to remove a tumor. During the five day period in Rochester, Mr. Stiegman worked 25.75 hours

1    and charged 11.75 hours towards accruals. During this period, Mr. Stiegman continued to be

2    required to laboriously document all tasks and time required for tasks, and submit daily reports

3    containing this information to his supervisor, Ms. Webster. This request promoted undue

4    inefficiencies in Mr. Stiegman's workday. As referenced earlier, this requirement did not appear to

5    be applicable for colleagues working at home, including younger workers or non-disable workers.

6        103.    From October 2, 2017 through October 6, 2017, Mr. Stiegman utilized the

7    reasonable accommodation for disability for a temporary work at home schedule to recover from

8    foot surgery, which included doctor ordered mobility restrictions. During the five day period, Mr.

9    Stiegman worked 36.25 hours and charged 2 hours towards accruals. Mr. Stiegman continued to

10   be required to document all tasks and time required for tasks, and submit daily reports containing

11   this information to Ms. Webster. This request continued to promote undue inefficiencies in Mr.

12   Stiegman's workday. Again, this requirement was not applicable for colleagues working at home,

13   including younger or non-disable workers.

14       104.    During October 3, 2017 phone conference with his supervisor, Ms. Webster, there

15   were no discussions with Mr. Stiegman regarding poor quality of work, risk of termination, or

16   discussion of his 12 week overdue probation evaluation. According to Mr. Stiegman, the purpose

17   of this meeting was primarily for Ms. Webster in directing him that he needed to be logged into

18   Skype at all times while utilizing his reasonable accommodation for disability for a temporary work

19   at home schedule, so that other (younger) colleagues would be able to contact him. Mr. Stiegman

20   claims that there was no communication by any of his other colleagues for this request or that any

21   of his colleagues attempted to contact with him through this method. Mr. Stiegman claims this

22   instruction was not made to other colleagues, including younger colleagues, and non-disabled

23   colleagues.  At the time, and throughout the reasonable accommodation for disability for a

24   temporary work at home schedule, Mr. Stiegman was routinely available for communication

through email and mobile phone. In fact, this phone conference with his supervisor, Ms. Webster, was the only supervisory meeting that she initiated in several weeks, and the only supervisory meeting with her while Mr. Stiegman was actively was away from his physical office for the reasonable accommodation for a temporary work at home schedule.

105.    On October 10, 2017, Mr. Stiegman requested a one-week extension of the reasonable accommodation for disability for a temporary work at schedule, to attend to additional follow-up appointments at Mayo Clinic in Minnesota for further medical care for disabilities, which included a surgical follow-up for suture removal and a two day inpatient pain rehabilitation program. At this time, Mr. Stiegman also requested a reasonable accommodation for medical parking to return to his office earlier, since the mobility restriction would prevent him from walking from the parking garage to his office.

106.    On October 12, 2017, Mr. Stiegman submitted an accommodation request to New York State Department of Civil Service for a medical deferral of IT series exams scheduled for October 14, 2017. Based upon medical information provided with the request, including doctor's note indicating recent surgery and limited weight bearing, this request was approved promptly, and rescheduled for November 4, 2018.

107.    On October 13, 2017, Mr. Stiegman returned a Project Manager 2 canvass letter to New York State Office of Information Technology Human Resources, which affirmed that Mr. Stiegman wanted to remain active on this list for future consideration with the agency.

108.    From October 9, 2017 through October 13, 2017, Mr. Stiegman utilized the reasonable accommodation for disability for a temporary work at home schedule to continue to recover from foot surgery, which included doctor ordered mobility restrictions. During the five day period, Mr. Stiegman worked 30 hours and charged 7.5 hours towards a holiday. Mr. Stiegman continued to be required to document all tasks and time required for tasks, and submit daily reports

containing this information to Ms. Webster. As per all the weeks prior, this request promoted significant undue inefficiencies in Mr. Stiegman's workday. As referenced, this requirement was not applicable for other colleagues who were increasingly working at home, including younger or non-disable workers.

109.    On October 18, 2017, after receiving no communication from Labor Accommodations on his October 10, 2017 request, Mr. Stiegman called Mr. Page to inquire on the status of his reasonable accommodation requests. Mr. Page's response was, "We have accommodated you. You are expected to be in the office on Friday."

110.    On October 19, 2017, despite forwarding doctors notes and medical records, Mr. Stiegman received an email denial of his request for an extension of the reasonable accommodation for disability for a temporary work at schedule based upon the operational needs of his office, but no response to his request for medical parking was provided.

111.    On Thursday, October 19, 2017, Mr. Stiegman sent separate follow-up communications to Labor Accommodations and his supervisor, Ms. Webster, stating that he was concerned that the law, policies, and procedures around reasonable accommodations requests for disabilities were not being followed. His supervisor instructed that hours worked from home could not be approved and to take accruals from October 20, 2017 through his prospective return to the office on October 29, 2017. Per this instruction, Mr. Stiegman updated the office calendar as being on sick leave.

112.    On Thursday, October 19, 2017, Mr. Stiegman's third probation evaluation was due, but still, not even the second evaluation had been provided. Based upon New York State Office of Information Technology Services policies, including probationary policies, this third evaluation was required at week thirty-six of employment, and essential for evaluation.

113.    From October 16-19, 2017, Mr. Stiegman utilized the reasonable accommodation for disability for a temporary work at home schedule to continue to recover from foot surgery, which included doctor ordered mobility restrictions. During the four day period remaining on the reasonable accommodation for a temporary work at home schedule, Mr. Stiegman worked 34.5 hours during a 30.0 hour scheduled period.

114.    On Friday, October 20, 2017, Mr. Stiegman was prevented from being able to submit any hours worked remotely or from returning to his physical office without access to medical parking.

115.    On Friday, October 20, 2017, Mr. Stiegman, feeling frustrated with the situation, emailed Ms. Shoshanah Bewlay, Chief General Counsel for New York State Office of Information Technology Services, notifying and seeking resolution to concerns that the law and policies around reasonable accommodations for disabilities were not being followed. Docket 19 at 93.

116.    On Wednesday, October 25, 2017, while Mr. Stiegman was on medical leave waiting to be called for an appointment in the same hospital where his cancer surgery occurred a few years earlier, Mr. Stiegman's electronic credentials with the agency were improperly accessed and terminated, including access to email and timekeeping systems.

117.    From October 25, 2017 through October 27, 2017, Mr. Stiegman attended additional medical appointments at Mayo Clinic in Rochester, Minnesota, which included further surgery, and participation in a two day pain rehabilitation program.

118.    On October 28, 2017, after returning to New York from Minnesota, Mr. Stiegman received a certified termination letter from Mr. Robert Valla stating termination effective "November 1, 2017, beginning of business." Enclosed with the letter was a copy of his second probation evaluation, signed by his supervisor, Ms. Veronica Webster, and second level supervisor, Ms. Beth Bloodgood, with a date of October 23, 2017. This evaluation recommended termination

1  without providing any supportive documentation to sustain evaluation information. This second

2  evaluation was signed by Mr. Stiegman's supervisors 102 days after due date. The signatures on the

3  102 day overdue evaluation recommending termination were dated approximately two business

4  days after Mr. Stiegman's reasonable accommodation for disability complaint to Labor

5  Accommodations and Mr. Webster, and one business day after Mr. Stiegman's complaint to Ms.

6  Bewlay, Chief General Counsel for New York State Office of Information Technology Services.

7        119.    On October 30, 2017, in addition to the trauma of being terminated while on

8  medical leave, Mr. Stiegman continued to be prevented from returning to his Swan Street Building

9  office due to a lack of timely response for medical parking request, and therefore, he submitted a

10  reasonable accommodation for disability request to Mr. David Mahoney, the Designee for

11  Reasonable Accommodation, for a leave of absence due to disabilities.

12        120.    On October 31, 2017, Mr. Stiegman, increasingly concerned about the situation,

13  escalated his concerns to Mr. Robert Valla, Director of Human Resources, and separately, to Mr.

14  Robert Samson, New York State Chief Information Officer, and Mr. Matthew Millea, Chief of

15  Staff, asking for help and intervention. No help arrived.

16        121.    Despite escalating his concerns to five different levels of authority within the

17  agency, Mr. Stiegman's employment with the New York State Office of Information Technology

18  Services was terminated effective beginning of business on November 1, 2017, merely days after

19  expressing his concerns around the agency process for reasonable accommodations for disabilities.

20  Due to termination at this time, Mr. Stiegman was also prevented from retrieving personal records

21  and entering accurate time records in the agency's timekeeping system during this last pay period,

22  which included substantial communication with union representatives on several matters, and as a

23  result, prevented Mr. Stiegman from being accurately paid for time worked and accurately

24

1    reimbursed for leave accruals. To compound the unjust situation, the agency withheld a substantial

2    amount of valuable personal tangible and intangible property from Mr. Stiegman's office space.

3        122.    On November 2, 2017, Mr. Stiegman provided an authorization to request personal

4    history file and timesheets from New York State Office of Information Technology Services to

5    PEF union representatives, Ms. Caitlin Janiszewski, and Ms. Penny Howansky, per their request

6    for legal referral of the matter. Docket 19 at 120. Around the same time, Mr. Stiegman also noticed

7    that the website link to the posted New York State Reasonable Accommodation for Disabilities

8    Guide on the Governor's Office for Employee Relations was terminated.

9        123.    Around November 7, 2017, Mr. Stiegman received a certified letter from Mr.

10   Mahoney, Director of Labor Relations, that his request for reasonable accommodation to

11   temporary work at home was not approved, due to the operational needs of his office.

12       124.    Around November 9, 2017, Mr. Stiegman received a certified letter from Mr.

13   Mahoney, Director of Labor Relations, that his request for reasonable accommodation for a leave

14   of absence was not approved, due to the operational needs of his office.

15       125.    On November 9, 2017, Mr. Stiegman submitted a request to New York State

16   Department of Civil Service for a continuation of medical deferral in taking IT series exams that

17   were re-scheduled for November 18, 2017. This request was based upon the recent termination

18   trauma and newly diagnosed nervous system and sleep disorders, and related new medications.

19   Based upon his request, and medical documentation provided, this request was promptly approved

20   by Civil Service for indefinite deferral.

21       126.    On November 14, 2017, based upon the recommended by his PEF union

22   representatives, Mr. Stiegman submitted a request to the New York State Department of Civil

23   Service to have his name be restored to the Project Manager 1 list that he was hired from by New

24   York State Office of Information Technology Services. On a letter received from the Department

of Civil Service dated November 24, 2017, Mr. Stiegman was notified that his name was restored to the Project Manager 1 list, and that he would be active for hire with all agencies, except the New York State Office of Information Technology Services. Docket 19 at 141.

127.    On November 21, 2017, Mr. Stiegman's position (item 18279) at New York State Office of Information Technology Services was posted as a vacancy for hire by Ms. Gina Scott.

128.    On November 24, 2017, Mr. Stiegman received a follow-up communication from his PEF union representatives, Ms. Janiszewski, stating that she is having an extremely difficult time getting the agency to provide a response to the authorization to request personal history file and timesheets.

129.    In December 2017, Mr. Stiegman submitted an Internal Discrimination Complaint request to the New York State Office of Information Technology Services. Docket 19 at 152.

130.    In a letter dated December 12, 2018, Mr. Matthew Millea, Special Assistant to New York State CIO, Mr. Robert Samson, submitted his resignation from his position. Exhibit 3.

131.    In December 2017, New York State Information Technology Services Human Resources approved discretionary leave for Ms. Shoshanah Bewlay, Chief General Counsel, effective December 29, 2017 through December 28, 2018. Exhibit 3.

132.    On December 20, 2017, Mr. Stiegman applied for the position of Sr. Project Manager with Empire State Development, a position for which he was qualified. Exhibit 10.

133.    On December 19, 2017, PEF union representative, Ms. Janiszewski sent Mr. Stiegman, a copy of his Personal History File that was provided to her by the agency, nearly seven weeks after the request. This information was sent to PEF by the agency without any redaction of personal and sensitive information on multiple pages, including addresses, social security numbers, and remarks. Additionally, despite the request, the agency purposively withheld all timesheet that were requested. Also, located in his file was an unapproved list of tasks and performance standards.

134.    On December 19, 2017, to support an EEOC complaint, Mr. Stiegman submitted a New York State Freedom of Information Law request to New York State Office of Information Technology Services for his employee timesheets. On December 27, 2017, Ms. Marcy Stevens, Records Access Officer, replied with an expected response date of February 26, 2018. On February 26, 2018, Ms. Spratt Stevens extended the date to March 26, 2018. On March 26, 2018, Ms. Spratt Stevens extended the date to April 23, 2018. On April 23, Ms. Stevens extended the date to May 21, 2018. On May 2, 2018, Ms. Lauren Holupko, Acting Records Access Officer, responded to his request by providing Mr. Stiegman a copy of his employee timesheets for his review, 231 days after the New York State Freedom of Information Law request was initiated. According to the timestamp from when records were accessed, these records were processed on December 28, 2017, and withheld for several months. The records also indicated incorrectly and improperly entered information for the last pay period. Exhibit 3.

135.    On December 19, 2017, to support an EEOC complaint, Mr. Stiegman submitted a New York State Freedom of Information Law request to New York State Office of Information Technology Services for the policy providing guidance on maintaining an employee's Personal History Files. On December 27, Ms. Marcy Spratt Stevens, Records Access Officer, replied with an expected response date of February 26, 2018. On February 26, 2018, Ms. Stevens extended the date to March 26, 2018. On March 26, 2018, Ms. Stevens extended the date to April 23, 2018. On April 23, Ms. Stevens extended the date to May 21, 2018. On May 2, 2017, Ms. Lauren Holupko, Acting Records Access Officer, responded to Mr. Stiegman's request initiated on December 19, 2017, by stating that the requested information could not be provided, since the agency possessed no records associated with the request. Exhibit 3.

136.    On December 19, 2017, to support an EEOC complaint, Mr. Stiegman submitted a New York State Freedom of Information Law request to New York State Office of Information

1    Technology Services for the policy on evaluating probationary employees. On December 27, 2017,

2    Ms. Marcy Spratt Stevens, Records Access Officer, replied with an expected response date of

3    February 26, 2018. On February 26, 2018, Ms. Stevens extended the date to March 26, 2018. On

4    March 26, 2018, Ms. Stevens extended the date to April 23, 2018. On April 23, Ms. Stevens

5    extended the date to May 21, 2018. On May 2, 2017, Ms. Lauren Holupko, Acting Records Access

6    Officer, responded to his request by providing a copy of policy to Mr. Stiegman for his review, 231

7    days after the New York State Freedom of Information Law request was initiated. Exhibit 3.

8           137.    On December 19, 2017, to support an EEOC complaint, Mr. Stiegman submitted

9    a New York State Freedom of Information Law request to New York State Office of Information

10   Technology Services for all email communication received or sent by ITS Human Resources

11   concerning him. On December 27, Ms. Marcy Spratt Stevens, Records Access Officer, replied with

12   an expected response date of February 26, 2018. On February 26, 2018, Ms. Stevens extended the

13   date to March 26, 2018. On March 26, 2018, Ms. Stevens extended the date to April 23, 2018. On

14   April 23, Ms. Stevens extended the date to May 21, 2018. On May 2, 2017, Ms. Lauren Holupko,

15   Acting Records Access Officer, responded to his request, 231 days after the New York State

16   Freedom of Information Law request was initiated, by asking Mr. Stiegman for more specific and

17   detailed information to further process the request. On June 1, 2018, due to the request for more

18   specific and detailed information to process the request, Mr. Stiegman responded to their request.

19   On June 15, 2018, an unsigned correspondence from the Records Access Officer, was provided,

20   indicating the Records Access Officer would be out of the office until June 25, 2018, and therefore,

21   a response would not be provided until July 2, 2018. On July 2, 2018, Ms. Shoshanah Bewlay, Chief

22   General Counsel, responded to Mr. Stiegman by stating his recent response to the agency's request

23   for more specific and detailed information would now be considered a new Freedom of

24

1  Information Law Request (170 days after the original request), and therefore, she would direct the

2  Records Access Officer to process the request as a new request. Exhibit 3.

3       138.    On December 19, 2017, to support an EEOC complaint, Mr. Stiegman submitted

4  a New York State Freedom of Information Law request to New York State Office of Information

5  Technology Services for all individuals who applied for the position of "Project Manager 1, Ref

6  #18279" (statejobsny.com vacancy ID 45544), as well as the names of individuals selected to

7  interview, as well as the name of the individual selected. On December 27, Ms. Marcy Stevens,

8  Records Access Officer, replied to the request with an expected response date of February 26,

9  2018. On February 26, 2018, Ms. Stevens extended the date to March 26, 2018. On March 26,

10  2018, Ms. Stevens extended the date to April 23, 2018. On April 23, Ms. Stevens extended the date

11  to May 21, 2018. On May 2, 2017, Ms. Lauren Holupko, Acting Records Access Officer, provided

12  the information, completely redacted, 231 days after New York State Freedom of Information Law

13  request was initiated. On June 1, 2018, Mr. Stiegman submitted an appeal, which requested sharing

14  without redaction. On June 15, 2018, an unsigned correspondence from the Records Access

15  Officer, was provided, indicating the Records Access Officer would be out of the office until June

16  25, 2018, and therefore, a response to the appeal would not be provided until July 2, 2018. On July

17  2, 2018, Ms. Shoshanah Bewlay, Chief General Counsel, and Records Access Appeals Officer for

18  New York State Office of Information Technology Services, denied the appeal. Exhibit 3.

19       139.    On December 20, 2017, to support an EEOC complaint, Mr. Stiegman submitted

20  a New York State Freedom of Information Law request to New York State Office of Information

21  Technology Services for employee submissions of Internal Discrimination Complaints for the years

22  2016 and 2017. On December 27, Ms. Marcy Spratt Stevens, Records Access Officer, replied to

23  the request with an expected response date of February 26, 2018. On February 26, 2018, Ms.

24  Stevens extended the date to March 26, 2018. On March 26, 2018, Ms. Stevens extended the date

1    to April 23, 2018. On April 23, Ms. Stevens extended the date to May 21, 2018. On May 2, 2017,

2    Ms. Lauren Holupko, Acting Records Access Officer, responded to Mr. Stiegman, 231 days after

3    the New York State Freedom of Information Law request was initiated, by withholding all

4    requested information. On June 1, 2018, Mr. Stiegman submitted an appeal of the decision to

5    withhold this information from review. On June 15, 2018, an unsigned correspondence from the

6    Records Access Officer, was provided, indicating the Records Access Officer would be out of the

7    office until June 25, 2018, and therefore, a response to the appeal would not be provided until July

8    2, 2018. On July 2, 2018, Ms. Shoshanah Bewlay, Chief General Counsel, and Records Access

9    Appeals Officer for New York State Office of Information Technology Services, denied the appeal.

10    Exhibit 3.

11        140.    On December 20, 2017, to support an EEOC complaint, Mr. Stiegman submitted

12    a New York State Freedom of Information Law request to New York State Office of Information

13    Technology Services for all training materials for reviewing and processing reasonable

14    accommodation for disability requests. On December 27, Ms. Marcy Spratt Stevens, Records

15    Access Officer, replied to the request with an expected response date of February 26, 2018. On

16    February 26, 2018, Ms. Stevens extended the date to March 26, 2018. On March 26, 2018, Ms.

17    Stevens extended the date to April 23, 2018. On April 23, Ms. Stevens extended the date to May

18    21, 2018. On May 2, 2017, Ms. Lauren Holupko, Acting Records Access Officer, responded to his

19    request by providing a copy of the "Supervisor's Guide to Reasonable Accommodation of

20    Employees with Disabilities and Pregnancy-Related Conditions (December 2017)" from the

21    Governor's Office of Employee Relations to Mr. Stiegman for his review, 231 days after the New

22    York State Freedom of Information Law request was initiated. On June 1, 2018, Mr. Stiegman

23    submitted an appeal of the response to this request, due to incomplete information. On June 15,

24    2018, an unsigned correspondence from the Records Access Officer, was provided, indicating the

Records Access Officer would be out of the office until June 25, 2018, and therefore, a response to the appeal would not be provided until July 2, 2018. On July 2, 2018, Ms. Shoshanah Bewlay, Chief General Counsel, and Records Access Appeals Officer for New York State Office of Information Technology Services, denied the appeal. Exhibit 3.

141.    On December 20, 2017, to support an EEOC complaint, Mr. Stiegman submitted a New York State Freedom of Information Law request to New York State Office of Information Technology Services for a cluster sampling of probationary evaluation forms for state employees. On December 27, Ms. Marcy Spratt Stevens, Records Access Officer, replied to the request with an expected response date of February 26, 2018. On February 26, 2018, Ms. Stevens extended the date to March 26, 2018. On March 26, 2018, Ms. Stevens extended the date to April 23, 2018. On April 23, Ms. Stevens extended the date to May 21, 2018. On May 2, 2017, Ms. Lauren Holupko, Acting Records Access Officer, responded to his request by providing copies from the requested sample groups to Mr. Stiegman for his review, 231 days after the New York State Freedom of Information Law request was initiated. On June 1, 2018, Mr. Stiegman submitted an appeal of the response to this request, due to incomplete information. On June 15, 2018, an unsigned correspondence from the Records Access Officer, was provided, indicating the Records Access Officer would be out of the office until June 25, 2018, and therefore, a response to the appeal would not be provided until July 2, 2018. On July 2, 2018, Ms. Shoshanah Bewlay, Chief General Counsel, and Records Access Appeals Officer for New York State Office of Information Technology Services, denied the appeal. Despite the lack of transparency in response to this request and appeal, statistical assessment of the information received unequivocally demonstrates that the termination of Mr. Stiegman occurred in a discriminatory and retaliatory manner. Additionally, the evaluation information also demonstrates disparate treatment and impact of older individuals with disabilities. Interestingly, the evidence also indicates that the individual which Mr. Stiegman offered

1  to take over responsibilities for only four months into his tenure at the state, not only received a

2  promotion, but her probation was ended early for the permanent position through completion of

3  early evaluation, which was signed off by an individual who was several months delinquent in her

4  supervisory responsibilities to Mr. Stiegman. Exhibit 3.

5      142.   On December 20, 2017, to support an EEOC complaint, Mr. Stiegman submitted

6  a New York State Freedom of Information Law request to New York State Office of Information

7  Technology Services for individuals who applied for and were selected for interviews for the

8  position held by Andrew Soper. On December 27, Ms. Marcy Spratt Stevens, Records Access

9  Officer, replied to the request with an expected response date of February 26, 2018. On February

10 26, 2018, Ms. Stevens extended the date to March 26, 2018. On March 26, 2018, Ms. Spratt Stevens

11 extended the date to April 23, 2018. On April 23, Ms. Stevens extended the date to May 21, 2018.

12 On May 2, 2017, Ms. Lauren Holupko, Acting Records Access Officer, provided Mr. Stiegman the

13 information, completely redacted, 231 days after the New York State Freedom of Information Law

14 request was initiated. On June 1, 2018, Mr. Stiegman submitted an appeal, which requested sharing

15 without redaction. On June 15, 2018, an unsigned correspondence from the Records Access

16 Officer, was provided, indicating the Records Access Officer would be out of the office until June

17 25, 2018, and therefore, a response to the appeal would not be provided until July 2, 2018. On July

18 2, 2018, Ms. Shoshanah Bewlay, Chief General Counsel, and Records Access Appeals Officer for

19 New York State Office of Information Technology Services, denied the appeal. Exhibit 3.

20     143.   On December 20, 2017, to support an EEOC complaint, Mr. Stiegman submitted

21 a New York State Freedom of Information Law request to New York State Office of Information

22 Technology Services for the user account history for the "Government Employee ID" user name

23 of "VSteigman" and "VStiegman". On December 27, Ms. Marcy Spratt Stevens, Records Access

24 Officer, replied to the request with an expected response date of February 26, 2018. On February

26, 2018, Ms. Stevens extended the date to March 26, 2018. On March 26, 2018, Ms. Stevens extended the date to April 23, 2018. On April 23, Ms. Spratt Stevens extended the date to May 21, 2018. On May 2, 2017, Ms. Lauren Holupko, Acting Records Access Officer, responded to his request, 231 days after the New York State Freedom of Information Law request was initiated, by asking Mr. Stiegman for more specific and detailed information to process the request. On June 1, 2018, due to the request for more specific and detailed information to process the request, Mr. Stiegman provided this information. On June 15, 2018, an unsigned correspondence from the Records Access Officer, was provided, indicating the Records Access Officer would be out of the office until June 25, 2018, and therefore, a response would not be provided until July 2, 2018. On July 2, 2018, Ms. Shoshanah Bewlay, Chief General Counsel, responded to Mr. Stiegman by stating his recent response to the agency's request for more specific and detailed information would now be considered a new Freedom of Information Law Request (170 days after the original request), and therefore, she would direct the Records Access Officer to process the request as a new request. Exhibit 3.

144.    On December 20, 2017, to support an EEOC complaint, Mr. Stiegman submitted a New York State Freedom of Information Law request to New York State Office of Information Technology Services for emails originating from all ITS Cluster CIOs that were sent to Chris Lloyd, ITS Chief Portfolio Officer, between March 1, 2017 to December 1, 2017." On December 27, Ms. Marcy Spratt Stevens, Records Access Officer, replied to the request with an expected response date of February 26, 2018. On February 26, 2018, Ms. Stevens extended the date to March 26, 2018. On March 26, 2018, Ms. Stevens extended the date to April 23, 2018. On April 23, Ms. Stevens extended the date to May 21, 2018. On May 2, 2017, Ms. Lauren Holupko, Acting Records Access Officer, responded to his request, 231 days after the New York State Freedom of Information Law request was initiated, by asking Mr. Stiegman for more specific and detailed

1    information to further process the request. On June 1, 2018, due to the request for more specific

2    and detailed information to process the request, Mr. Stiegman provided this information. On June

3    15, 2018, an unsigned correspondence from the Records Access Officer, was provided, indicating

4    the Records Access Officer would be out of the office until June 25, 2018, and therefore, a response

5    would not be provided until July 2, 2018. On July 2, 2018, Ms. Shoshanah Bewlay, Chief General

6    Counsel, responded to Mr. Stiegman by stating his recent response to the agency's request for more

7    specific and detailed information would now be considered a new Freedom of Information Law

8    Request (170 days after the original request), and therefore, she would direct the Records Access

9    Officer to process the request as a new request.  Exhibit 3.

10       145.     On December 20, 2017, to support an EEOC complaint, Mr. Stiegman submitted

11   a New York State Freedom of Information Law request to New York State Office of Information

12   Technology Services for the revision history for the document titled, "How to Maintain a Project

13   Record" maintained by the Chief Portfolio Office. This was a document that he helped created

14   and edit over the course of several months. On December 27, Ms. Marcy Spratt Stevens, Records

15   Access Officer, replied to the request with an expected response date of February 26, 2018. On

16   February 26, 2018, Ms. Stevens extended the date to March 26, 2018. On March 26, 2018, Ms.

17   Stevens extended the date to April 23, 2018. On April 23, Ms. Stevens extended the date to May

18   21, 2018. On May 2, 2017, Ms. Lauren Holupko, Acting Records Access Officer, responded to Mr.

19   Stiegman, 231 days after the New York State Freedom of Information Law request was initiated,

20   by withholding all requested information. On June 1, 2018, Mr. Stiegman submitted an appeal of

21   the decision to withhold this information from review. On June 15, 2018, an unsigned

22   correspondence from the Records Access Officer, was provided, indicating the Records Access

23   Officer would be out of the office until June 25, 2018, and therefore, a response to the appeal

24   would not be provided until July 2, 2018. On July 2, 2018, Ms. Shoshanah Bewlay, Chief General

1  Counsel, and Records Access Appeals Officer for New York State Office of Information
2  Technology Services, denied the appeal. Exhibit 3.

3      146.    On December 20, 2017, to support an EEOC complaint, Mr. Stiegman submitted
4  a New York State Freedom of Information Law request to New York State Office of Information
5  Technology Services for meeting minutes for Cluster PMO Meetings created by the Chief Portfolio
6  Office for 2017, many of which he attended on a weekly basis, and others he was barred from
7  attending remotely while on the reasonable accommodation for disability. On December 27, Ms.
8  Marcy Spratt Stevens, Records Access Officer, replied to the request with an expected response
9  date of February 26, 2018. On February 26, 2018, Ms. Stevens extended the date to March 26,
10 2018. On March 26, 2018, Ms. Stevens extended the date to April 23, 2018. On April 23, Ms.
11 Stevens extended the date to May 21, 2018. On May 2, 2017, Ms. Lauren Holupko, Acting Records
12 Access Officer, responded to Mr. Stiegman, 231 days after the New York State Freedom of
13 Information Law request was initiated, by withholding this information. On June 1, 2018, Mr.
14 Stiegman submitted an appeal of the decision to withhold this information from review. On June
15 15, 2018, an unsigned correspondence from the Records Access Officer, was provided, indicating
16 the Records Access Officer would be out of the office until June 25, 2018, and therefore, a response
17 to the appeal would not be provided until July 2, 2018. On July 2, 2018, Ms. Shoshanah Bewlay,
18 Chief General Counsel, and Records Access Appeals Officer for New York State Office of
19 Information Technology Services, denied the appeal. Exhibit 3.

20     147.    On December 20, 2017, to support an EEOC complaint, Mr. Stiegman submitted
21 a New York State Freedom of Information Law request to New York State Office of Information
22 Technology Services for the policy that allows for contractors to direct the work of state employees
23 (which regularly happened in the agency). On December 27, Ms. Marcy Spratt Stevens, Records
24 Access Officer, replied to the request with an expected response date of February 26, 2018. On

February 26, 2018, Ms. Stevens extended the date to March 26, 2018. On March 26, 2018, Ms. Stevens extended the date to April 23, 2018. On April 23, Ms. Stevens extended the date to May 21, 2018. On May 2, 2017, Ms. Lauren Holupko, Acting Records Access Officer, responded to Mr. Stiegman, 231 days after the New York State Freedom of Information Law request was initiated, by stating that the requested information could not be provided, since the agency possessed no records associated with the request. Exhibit 3.

148.    In December 2017 through January 2018, due to the reckless, unjust, and inhumane actions committed by New York State Office of Information Technology Services weeks earlier, and continuing forward, Mr. Stiegman was prevented, due to a lack of resources, from visiting his elderly parents during Christmas after they were both hospitalized from a serious auto accident.

149.    On January 5, 2018, Mr. Stiegman applied for the position of Deputy Director with the Research and Analytics Department with New York State Office of the Attorney General in New York City. Exhibit 4.

150.    In January 2018, Mr. Stiegman also received and submitted a New York State Department of Civil Service canvass letter to New York State Office of the Attorney General for the position of Project Manager 1, a position for which he was qualified, but did not receive an interview request or any follow-up communication on the status of his submission. Exhibit 4.

151.    In January 2018, Mr. Stiegman received and submitted a New York State Department of Civil Service canvass letter to New York State Insurance Fund for the position of Project Manager 1, a position for which he was qualified, and received a request to interview for the position on February 16, 2018. During this interview, Mr. Stiegman shared information surrounding the separation of his employment with New York State Office of Information Technology Services. Exhibit 5.

152.    On February 8, 2018, Mr. Stiegman contacted the newly hired Director of Affirmative Action Programs, Ms. Shinu Shilesh, regarding her request for a call on the complaint received by her office, and stated his preference for communication. On February 9, 2018, Ms. Shilesh responded to Mr. Stiegman stating, she is "set for now."

153.    On February 9, 2018, Mr. Stiegman also received a PEF legal memo from his union representative concerning his case. Despite the PEF attorney reaching a conclusion that signaled retaliation against Mr. Stiegman by New York State Office of Information Technology Services, there was no attempt by the PEF legal department to talk with Mr. Stiegman throughout the case review process. Further, the memo indicated that PEF field staff should reach out to Mr. Stiegman to assist filing an EEOC complaint, but this assistance never occurred. Upon review, legal counsel provided to Mr. Stiegman for assessment of his case was Ms. Deirdre Maria Salsich, a former New York State Legislature attorney party to budgetary negotiations with New York State Office of Information Technology Services.

154.    In February and March 2018, Mr. Robert Valla, Director of Human Resources, and Mr. Chris Lloyd, Chief Portfolio Office, were separated from their respective positions at New York State Office of Information Technology Services.

155.    On March 21, 2018, with diminutive inquiry or follow-up from Ms. Shilesh concerning the internal discrimination complaint, Mr. Stiegman received a closing memo.

156.    In March 2018, Mr. Stiegman received and submitted a New York State Department of Civil Service canvass letter to New York State Insurance Fund for Project Manager 1, a position for which he was qualified, but did not received a request to interview for the position. Over the couple of the following months, Mr. Stiegman followed-up on the status of his candidacy on multiple occasions, but did not receive any conclusive answers. Regarding his concern, Mr.

1 | Stiegman submitted a FOIL request to the agency, and subsequently, found out that of all
2 | candidates submitting an affirmative canvass reply, he possessed the highest ranking. Exhibit 5.

3 |     157.   In March 2018, Mr. Stiegman received and submitted a New York State
4 | Department of Civil Service canvass letter to New York State Homes and Community Renewal
5 | for Project Manager 1, a position for which he was qualified, but did not received a request to
6 | interview for the position. Over the couple of the following months, Mr. Stiegman followed-up on
7 | the status of his candidacy on multiple occasions, but was not successful. Exhibit 6.

8 |     158.   In April 2018, Mr. Stiegman received an interview for the position of Senior
9 | Manager in Innovation with Harvard University, but due to the information shared surrounding
10 | his separation with New York State Office of Information Technology Services, Mr. Stiegman is
11 | concerned that the prospective employer either sought additional information or used the
12 | information shared to adversely impact his continued candidacy. Mr. Stiegman remains concerned
13 | that information shared with or supplied to prospective employers by New York State Office of
14 | Information Technology Services continues to irreparably impact his professional reputation
15 | employability, and long-term earning potential.

16 |     159.   On May 4, 2018, to support an EEOC complaint, Mr. Stiegman submitted a New
17 | York State Freedom of Information Law request to New York State Office of Information
18 | Technology Services for meeting minutes for leadership meetings held by the Chief Portfolio
19 | Office and/or Governance, Portfolio and Strategy Office. On May 11, 2018, Ms. Lauren Holupko,
20 | Acting Records Access Officer, replied to the request, and indicated a response date of September
21 | 19, 2018. On September 20, 2018, Ms. Marcy Stevens, Records Access Officer, responded to Mr.
22 | Stiegman, 139 days after the New York State Freedom of Information Law request was initiated,
23 | by withholding this information. On October 19, 2018, Mr. Stiegman submitted an appeal of the
24 | decision to withhold this information from review. On November 6, 2018, Ms. Shoshanah Bewlay,

Chief General Counsel, and Records Access Appeals Officer for New York State Office of Information Technology Services, denied the appeal. Exhibit 3.

160.    On May 4, 2018, to support an EEOC complaint, Mr. Stiegman submitted a New York State Freedom of Information Law request to New York State Office of Information Technology Services for Business Service Center Personnel Transaction Request forms for item number 18279. On May 11, 2018, Ms. Lauren Holupko, Acting Records Access Officer, replied to the request, and indicated a response date of September 19, 2018. On September 20, 2018, Ms. Marcy Stevens, Records Access Officer, responded to Mr. Stiegman, 139 days after the New York State Freedom of Information Law request was initiated, by withholding some information. On October 19, 2018, Mr. Stiegman submitted an appeal of the decision to withhold this information from review. On November 6, 2018, Ms. Shoshanah Bewlay, Chief General Counsel, and Records Access Appeals Officer for New York State Office of Information Technology Services, denied the appeal. Exhibit 3.

161.    On May 11, 2018, to support an EEOC complaint, Mr. Stiegman submitted a New York State Freedom of Information Law request to New York State Office of Information Technology Services for an agency organizational chart. On May 18, 2018, Ms. Lauren Holupko, Acting Records Access Officer, replied to the request, and indicated a response date of September 19, 2018. On September 20, 2018, Ms. Marcy Stevens, Records Access Officer, responded to Mr. Stiegman, 139 days after the New York State Freedom of Information Law request was initiated, by stating that the requested information could not be provided, since the agency possessed no records associated with the request. On October 19, 2018, Mr. Stiegman submitted an appeal of the decision to withhold this information from review. On November 6, 2018, Ms. Shoshanah Bewlay, Chief General Counsel, and Records Access Appeals Officer for New York State Office of Information Technology Services, denied the appeal. Exhibit 3.

162.    In May 2018, Mr. Stiegman received an interview for the position of Project Manager with Mayo Clinic, but due to the information shared surrounding his separation with New York State Office of Information Technology Services, Mr. Stiegman continues to be concerned that the prospective employer either sought additional information or used the information shared to adversely impact his continued candidacy. Mr. Stiegman remains concerned that information shared with or supplied to prospective employers by New York State Office of Information Technology Services continues to irreparably impact his professional reputation employability, and long-term earning potential.

163.    In May 2018, upon returning a New York State Department of Civil Service canvass to New York State Department of Motor Vehicles, Mr. Stiegman received an interview for the position of Project Manager 1, but due to the information shared around his separation with New York State Office of Information Technology Services, the agency appears to have sought additional information. Mr. Stiegman remains deeply concerned that information shared or supported among agencies is adversely impacting his professional reputation and employability.

164.    In May 2018, upon returning a New York State Department of Civil Service canvass to New York State Office of the State Comptroller, Mr. Stiegman received an interview for the position of Project Manager 1, but due to the information shared around his separation with New York State Office of Information Technology Services, the agency appears to have sought additional information. Mr. Stiegman remains deeply concerned that information shared or supported among agencies is adversely impacting his professional reputation and employability.

165.    In May 2018, due to the reckless, unjust, and inhumane actions committed by New York State Office of Information Technology Services a months prior, and continuing forward, Mr. Stiegman was forced to enter Albany Medical Center for care due to suffering from the effects of the intentional infliction of emotional distress.

1   166. On July 10, 2018, in response to Ms. Shoshanah Bewlay's July 2, 2018 directive that

2 she considers agency requests for more detailed and specific information from existing Freedom

3 of Information Law requests as new Freedom of Information Law requests, Ms. Lauren Holupko,

4 Acting Records Access Officer, contacted Mr. Stiegman to confirm that updated information

5 provided for all email communication received or sent by ITS Human Resources concerning him

6 would now become available by April 1, 2019 (487 days after the original request). This

7 information is still outstanding. Exhibit 3.

8   167. On July 10, 2018, in response to Ms. Shoshanah Bewlay's July 2, 2018 directive that

9 she considers agency requests for more detailed and specific information from existing Freedom

10 of Information Law requests as new Freedom of Information Law requests, Ms. Lauren Holupko,

11 Acting Records Access Officer, contacted Mr. Stiegman to confirm that updated information

12 provided for the user account history for the "Government Employee ID" user name of

13 "VSteigman" and "VStiegman" request would now become available by April 1, 2019 (486 days

14 after the original request). On April 1, 2019, the agency was unable to provide. Exhibit 3.

15   168. On July 10, 2018, in response to Ms. Shoshanah Bewlay's July 2, 2018 directive that

16 she considers agency requests for more detailed and specific information from existing Freedom

17 of Information Law requests as new Freedom of Information Law requests, Ms. Lauren Holupko,

18 Acting Records Access Officer, contacted Mr. Stiegman to confirm that updated information

19 provided for emails originating from all ITS Cluster CIOs sent to Mr. Chris Lloyd, ITS Chief

20 Portfolio Officer, between March 1, 2017 to December 1, 2017 request would now become

21 available by April 1, 2019 (486 days after the original request). On April 1, 2019, the agency

22 prevented the release by claiming records are exempt from disclosure. Exhibit 3. .

23   169. On July 10, 2018, in response to Ms. Shoshanah Bewlay's July 2, 2018 directive that

24 she considers appeals regarding existing Freedom of Information Law requests, Ms. Lauren

Holupko, Acting Records Access Officer, contacted Mr. Stiegman to confirm that updated information provided for "Staff training materials associated with reviewing and processing reasonable accommodation for disability requests" request would now become available by November 16, 2018 (332 days after the original request). On November 14, 2018, Ms. Marcy S. Stevens, Records Access Officer, responded to Mr. Stiegman, by providing updated information to the request. Exhibit 3.

170.    In July 2018, due to the reckless, unjust, and inhumane actions committed by New York State Office of Information Technology Services eight months prior, and continuing forward, Mr. Stiegman was forced to enter Saratoga Hospital for three days of medical care due to suffering from the effects of the intentional infliction of emotional distress.

171.    On July 13, 2018, to support an EEOC complaint, Mr. Stiegman submitted a New York State Freedom of Information Law request to New York State Office of Information Technology Services for all agency sent "Eligible List Canvass Letter" for list 25987 (Project Manager 1) recipients, and all agency sent "Eligible List Canvass Letter" for list 25988 (Project Manager 2) recipients. On July 23, 2018, Ms. Lauren Holupko, Acting Records Access Officer, replied to the request, and indicated a response date of November 30, 2018. On November 14, 2018, Ms. Marcy Stevens, Records Access Officer, responded to Mr. Stiegman, 124 days after the New York State Freedom of Information Law request was initiated, by stating that the requested information could not be provided, since the agency possessed no records associated with the request.

172.    On July 13, 2018, to support an EEOC complaint, Mr. Stiegman submitted a New York State Freedom of Information Law request to New York State Office of Information Technology Services for all agency received "Eligible List Canvass Letter" for list 25987 (Project Manager 1) recipients, and all agency received "Eligible List Canvass Letter" for list 25988 (Project

Manager 2) recipients. On July 23, 2018, Ms. Lauren Holupko, Acting Records Access Officer, replied to the request, and indicated a response date of November 30, 2018. On November 7, 2018, Ms. Marcy Stevens, Records Access Officer, responded to Mr. Stiegman, 117 days after the New York State Freedom of Information Law request was initiated, by providing the information. The information shared appears to confirm agency violations of civil service rules. Exhibit 3.

173.    For several weeks in August 2018, due to the reckless, unjust, and inhumane actions committed by New York State Office of Information Technology Services nine months prior, and continuing forward, Mr. Stiegman was forced to seek care at Mayo Clinic for several weeks, including an emergency room visit, due to suffering from the effects of the intentional infliction of emotional distress.

174.    In August 2018, Mr. Stiegman received an interview for the position of IT Project Manager with Mayo Clinic, but due to the information shared surrounding his separation with New York State Office of Information Technology Services, Mr. Stiegman continues to be concerned that the prospective employer either sought additional information or used the information shared to adversely impact his continued candidacy. Mr. Stiegman remains concerned that information shared with or supplied to prospective employers by New York State Office of Information Technology Services continues to irreparably impact his professional reputation employability, and long-term earning potential.

175.    In September 2018, Mr. Stiegman received and submitted a New York State Department of Civil Service canvass letter to New York State Office of the Attorney General for the position of Project Manager 1, a position for which he was qualified, and received a request to interview for the position on October 10, 2018. During this interview, Mr. Stiegman shared information surrounding the separation of his employment with New York State Office of Information Technology Services. During the following two months, Mr. Stiegman followed-up

1    on multiple occasions regarding the status of his candidacy for this position for which he was

2    qualified, but he did not receive any follow-up on the outcome of the interview for this position.

3    Exhibit 4.

4    176.    In October 2018, Mr. Stiegman received an interview for the position of Manager

5    of Education with Mayo Clinic, but due to the information shared surrounding his separation with

6    New York State Office of Information Technology Services, Mr. Stiegman continues to be

7    concerned that the prospective employer either sought additional information or used the

8    information shared to adversely impact his continued candidacy. Mr. Stiegman remains concerned

9    that information shared with or supplied to prospective employers by New York State Office of

10   Information Technology Services continues to irreparably impact his professional reputation

11   employability, and long-term earning potential.

12   177.    For several weeks in October 2018 through November 2018, due to the reckless,

13   unjust, and inhumane actions committed by New York State Office of Information Technology

14   Services almost a year prior, and continuing forward, Mr. Stiegman was forced to seek care again

15   at Mayo Clinic for several weeks, due to suffering from the effects of the intentional infliction of

16   emotional distress.

17   178.    Through November 2018, due to the reckless, unjust, and inhumane actions

18   committed by New York State Office of Information Technology Services a year prior, Mr.

19   Stiegman has been forced to pay $10,725 cumulatively towards monthly COBRA premiums to

20   retain access to his medical network of care of physicians and specialists at Mayo Clinic.

21   179.    On December 11, 2018, a vacancy for New York State Office of Information

22   Technology Services item #00150, with the title of Assistant Director of Human Resources 3

23   (Labor Relations) was posted to the StateJobsNY website. This item is the position held by Mr.

24

David Mahoney, Director of Labor Relations and Designee for Reasonable Accommodations for the agency effective November 2016.

180.    In December 2018, Mr. Stiegman received and submitted a New York State Department of Civil Service canvass letter to New York State Division of the Budget for the position of Project Manager 1, a position for which he was well qualified, and received a request to interview for the position on January 18, 2018. During this interview, Mr. Stiegman shared information surrounding the separation of his employment with New York State Office of Information Technology Services. Mr. Stiegman was not selected for the position. Exhibit 7.

181.    On December 20, 2018, Mr. Stiegman applied for multiple positions with New York State Office of the Attorney General, including Internet and Technology Analyst and Legal Support Analyst, positions for which he was qualified. Exhibit 4.

182.    On December 20, 2018, Mr. Stiegman applied for multiple positions with Empire State Development, for which he was qualified, including Assistant Director of Portfolio Management and Director of the Innovation Fund. Exhibit 10.

183.    On January 24, 2019, Mr. Stiegman applied for multiple positions with New York State Division of the Budget, including Budget Fellow, Performance Management Specialist, and Strategic and Performance Planning titles, positions for which he was qualified. Exhibit 7.

184.    On January 24, 2019, Mr. Stiegman applied for Deputy Commissioner with Empire State Development, a position for which he was qualified. Exhibit 10.

185.    In February 2019, Mr. Stiegman interviewed for the position of Program Manager with Stanford University, but due to the information shared surrounding his separation with New York State Office of Information Technology Services, Mr. Stiegman continues to be concerned that the prospective employer either sought additional information or used the information shared

to adversely impact his continued candidacy. Mr. Stiegman remains concerned that information shared with or supplied to prospective employers by New York State Office of Information Technology Services continues to irreparably impact his professional reputation employability, and long-term earning potential.

186.    In February 2019, Mr. Stiegman interviewed for the position of IT Systems Analyst with Mayo Clinic, but due to the information shared surrounding his separation with New York State Office of Information Technology Services, Mr. Stiegman continues to be concerned that the prospective employer either sought additional information or used the information shared to adversely impact his continued candidacy. Mr. Stiegman remains concerned that information shared with or supplied to prospective employers by New York State Office of Information Technology Services continues to irreparably impact his professional reputation employability, and long-term earning potential.

187.    In March 2019, Mr. Stiegman received and submitted multiple New York State Department of Civil Service canvass letter to New York State Office of the Attorney General for Project Manager 1 and Project Manager 2, positions for which he was qualified. Mr. Stiegman did not receive an interview request or any follow-up communication on his submissions. Exhibit 4.

188.    In March 2019, Mr. Stiegman interviewed for a management position with the State of Minnesota, but due to the information shared surrounding his separation with New York State Office of Information Technology Services, Mr. Stiegman continues to be concerned that the prospective employer either sought additional information or used the information shared to adversely impact his continued candidacy. Mr. Stiegman remains concerned that information shared with or supplied to prospective employers by New York State Office of Information Technology Services continues to irreparably impact his professional reputation employability, and long-term earning potential..

189.    In March 2019, Mr. Stiegman interviewed for a project management consultant position with PwC, but due to the information shared surrounding his separation with New York State Office of Information Technology Services, Mr. Stiegman continues to be concerned that the prospective employer either sought additional information or used the information shared to adversely impact his continued candidacy. Mr. Stiegman remains concerned that information shared with or supplied to prospective employers by New York State Office of Information Technology Services continues to irreparably impact his professional reputation employability, and long-term earning potential.

190.    In April 2019, Mr. Stiegman received and submitted a New York State Department of Civil Service canvass letter to New York State Workers' Compensation Board for Project Manager 2, a position for which he was well qualified. Mr. Stiegman did not receive an interview request or any follow-up communication on his submissions. Exhibit 8.

191.    In May 2019, Mr. Stiegman interview for the position of Program Manager with Duke University, but due to the information shared surrounding his separation with New York State Office of Information Technology Services, Mr. Stiegman continues to be concerned that the prospective employer either sought additional information or used the information shared to adversely impact his continued candidacy. Mr. Stiegman remains concerned that information shared with or supplied to prospective employers by New York State Office of Information Technology Services continues to irreparably impact his professional reputation employability, and long-term earning potential..

192.    In June 2019, Mr. Stiegman received and submitted a New York State Department of Civil Service canvass letter to New York State Insurance Fund for the position of Project Manager 1, a position for which he was qualified, but did not received a request to interview for the position or any follow-up communication on submission. Exhibit 5.

193.    In June 2019, Mr. Stiegman received and submitted a New York State Department of Civil Service canvass letter to New York State Division of the Budget for the position of Project Manager 1, a position for which he was well qualified, but did not received a request to interview for the position or any follow-up communication on submission. Exhibit 7.

194.    In August 2019, Mr. Stiegman received and submitted a New York State Department of Civil Service canvass letter to New York State Workers' Compensation Board for Project Manager 2, a position for which he was well qualified. Mr. Stiegman did not receive an interview request or any follow-up communication on submissions. Exhibit 8.

195.    In August 2019, Mr. Stiegman received and submitted a New York State Department of Civil Service canvass letter to New York State Thruway Authority for Project Manager 1, a position for which he was well qualified. Mr. Stiegman did not receive an interview request. Exhibit 9.

196.    In September 2019, Mr. Stiegman interviewed for the position of Program Manager with Harvard Medical School, but due to the information shared surrounding his separation with New York State Office of Information Technology Services, Mr. Stiegman continues to be concerned that the prospective employer either sought additional information or used the information shared to adversely impact his continued candidacy. Mr. Stiegman remains concerned that information shared with or supplied to prospective employers by New York State Office of Information Technology Services continues to irreparably impact his professional reputation employability, and long-term earning potential.

197.    In October 2019, Mr. Stiegman interview for the position of Strategy Analyst with Harvard University, but due to the information shared surrounding his separation with New York State Office of Information Technology Services, Mr. Stiegman continues to be concerned that the prospective employer either sought additional information or used the information shared to

1  adversely impact his continued candidacy. Mr. Stiegman remains concerned that information

2  shared with or supplied to prospective employers by New York State Office of Information

3  Technology Services continues to irreparably impact his professional reputation employability, and

4  long-term earning potential.

5          198.    In December 2019, Mr. Stiegman interviewed for the position of Strategy

6  Consultant, but due to the information shared surrounding his separation with New York State

7  Office of Information Technology Services, Mr. Stiegman continues to be concerned that the

8  prospective employer either sought additional information or used the information shared to

9  adversely impact his continued candidacy. Mr. Stiegman remains concerned that information

10 shared with or supplied to prospective employers by New York State Office of Information

11 Technology Services continues to irreparably impact his professional reputation employability, and

12 long-term earning potential.

13

14                    **PROCEDURAL REQUIREMENTS**

15          199.    Mr. Stiegman has satisfied all procedural requirements prior to commencing this

16 action, including filing class charges with Equal Employment Opportunity Commission on

17 August 28, 2018 regarding alleged conduct by defendants

18          200.    The Equal Employment Opportunity Commission issued Notice of Right to Sue,

19 which Mr. Stiegman received on October 11, 2018, and filed with the Court. Docket 1, Exhibit 2.

20          201.    Since filing charges of age discrimination with Equal Employment Opportunity

21 Commission regarding defendant's alleged conduct, 60 days or have elapsed.

22          202.    Pursuant to FCRP 20(a)(2), parties may be joined in one action as defendants if

23 "any right to relief is asserted against them jointly, severally, or in the alternative with respect to

24 or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

1  any question of law or fact common to all defendants will arise in the action." The Plaintiff, Mr.

2  Stiegman, affirms that allegations within amended complaint satisfies this rule.

3

4                              **THE PLAINTIFF CLASS**

5       203.    On November 25, 2019, the Plaintiff, proposed class representative, Mr. Stiegman,

6  filed a Motion for Class Certification, pursuant to Federal Rules of Civil Procedure 23(a) and

7  23(b)(2) requirements, which requested certification of a class that included "any individual aged

8  40 years or older with a disability, as defined by the American with Disabilities Act, and who is/was

9  employed, or pursuing employment, in a State of New York Department of Civil Service classified

10 position" (NYS Class); and, under FRCP 23(c)(5), a Subclass, which consisted of "any individual

11 aged 40 years or older with a disability, as defined by the American with Disabilities Act, and who

12 is/was employed, or pursuing employment, in a State of New York Department of Civil Service

13 classified position represented by the Public Employee Federation" (PEF Class). Docket 19.

14      204.    The primary purposes of the class action are injunctive and declaratory relief, and

15 secondarily, monetary relief for damages incidental to the injunctive or declaratory relief. Plaintiff

16 may also seek sequential certification under FRCP 23(b)(3) after 23(b)(2) liability determination. If

17 the Court determines that declaratory relief and damages are inseparable, the Plaintiff demands that

18 damage claims be tried first before a jury.

19

20

21

22

23

24

## CAUSES OF ACTION

## VIOLATIONS OF THE FIRST AMENDMENT
## OF THE UNITED STATES CONSTITUTION (COUNTS 1 - 22)

## COUNT 1

### (Violation of the First Amendment, Public Employees – Speech)

205.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

206.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff, as a private citizen, requested a reasonable accommodation for disability for a compressed work schedule around March 29, 2017.

207.    In response to a reasonable accommodation for disability request, a matter of public concern, especially for a discrete and insular minority, New York State Office of Information Technology Services, the Defendant, took multiple adverse employment actions against the Plaintiff, including, but not limited to: withholding approval of the reasonable accommodation for disability, documenting inaccurate and false information in multiple probationary evaluations, engaging in threats, harassment, and intimation, which included forcing personal work product to be reviewed or supervised by contractors and/or lower grade employees, inserting inaccurate and false information into the personal history file, affirming inaccurate information into the personal history file, withholding requested training and development opportunities, forcing unrequested training, withholding supervisory meetings, withholding supervisory opportunities, withholding

1 timely evaluations, withholding promotional opportunities, and providing unequal conditions and

2 terms of employment, especially in the interpretation of policy and procedures.

3     208.   The Plaintiff, Mr. Stiegman, alleges that the speech in question, a request for a

4 reasonable accommodation for disability, was a substantial or motivating factor for the adverse

5 employment actions.

6 <div align="center">**COUNT 2**</div>

7 <div align="center">**(Violation of the First Amendment, Public Employees – Speech)**</div>

8     209.   Plaintiff re-allege and incorporate by reference each and every allegation contained

9 in the previous paragraphs of this Complaint as if fully set forth herein.

10     210.   The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

11 others similarly situated, alleges New York State Office of Information Technology Services

12 deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff, as

13 a private citizen, requested a reasonable accommodation for disability for a temporary work at

14 home schedule around August 17, 2017.

15     211.   In response to a reasonable accommodation request, a matter of public concern,

16 especially for a discrete and insular minority, New York State Office of Information Technology

17 Services, the Defendant, took multiple adverse employment actions against the Plaintiff, including,

18 but not limited to: requiring a different standard for timekeeping, preventing remote attendance of

19 meetings, documenting inaccurate and false information in multiple probationary evaluations,

20 engaging in threats, harassment, and intimation, which included forcing personal work product to

21 be reviewed or supervised by contractors and/or lower grade employees, inserting inaccurate and

22 false information into the personal history file, affirming inaccurate information into the personal

23 history file, withholding requested training and development opportunities, withholding

24 supervisory meetings, withholding supervisory opportunities, withholding timely evaluations,

withholding promotional opportunities, and providing unequal conditions and terms of employment, especially in the interpretation of policy and procedures, and termination in bad faith.

212.    The Plaintiff, Mr. Stiegman, alleges that the speech in question, a request for a reasonable accommodation for disability, was a substantial or motivating factor for the adverse employment actions.

## COUNT 3

### (Violation of the First Amendment, Public Employees – Speech)

213.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

214.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff, as a private citizen, requested a one-week extension of the reasonable accommodation for disability for a temporary work at home schedule around October 10, 2019.

215.    In response to a reasonable accommodation request, a matter of public concern, especially for a discrete and insular minority, New York State Office of Information Technology Services, the Defendant, took multiple adverse employment actions against the Plaintiff, including, but not limited to: withholding approval of the reasonable accommodation for disability, ignoring a request for medical parking, documenting inaccurate and false information in multiple probationary evaluations, affirming inaccurate and false information into the personal history file, engaging in threats, harassment, and intimation, which included forcing personal work product to be reviewed or supervised by contractors and/or lower grade employees, terminating access to electronic credentials, which included withdrawal of access to timekeeping systems, email, computer files, and personal files, inserting inaccurate and false information into the personal

1  history file, providing unequal conditions and terms of employment, especially in the interpretation
2  of policy and procedures, and termination in bad faith.

3  216.    The Plaintiff, Mr. Stiegman, alleges that the speech in question, a request for a
4  reasonable accommodation for disability, was a substantial or motivating factor for the adverse
5  employment actions.

6  ## COUNT 4

7  ### (Violation of the First Amendment, Public Employees – Speech)

8  217.    Plaintiff re-allege and incorporate by reference each and every allegation contained
9  in the previous paragraphs of this Complaint as if fully set forth herein.

10  218.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all
11  others similarly situated, alleges New York State Office of Information Technology Services
12  deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff, as
13  a private citizen, requested a reasonable accommodation for disability to access medical parking
14  around October 10, 2019.

15  219.    In response to a reasonable accommodation request, a matter of public concern,
16  especially for a discrete and insular minority, New York State Office of Information Technology
17  Services, the Defendant, took multiple adverse employment actions against the Plaintiff, including,
18  but not limited to: withholding approval of the reasonable accommodation for disability, ignoring
19  a request for medical parking, being prevented from returning to work, being prevented from
20  accessing tangible and intangible personal property, documenting inaccurate and false information
21  in multiple probationary evaluations, affirming inaccurate and false information into the personal
22  history file, engaging in threats, harassment, and intimation, which included forcing personal work
23  product to be reviewed or supervised by contractors and/or lower grade employees, as well as the
24  intentional infliction of emotional distress, terminating access to electronic credentials, which

1    included withdrawal of access to timekeeping systems, email, computer files, and personal files,

2    inserting inaccurate and false information into the personal history file, providing unequal

3    conditions and terms of employment, especially in the interpretation of policy and procedures, and

4    termination in bad faith.

5        220.    The Plaintiff, Mr. Stiegman, alleges that the speech in question, a request for a

6    reasonable accommodation for disability, was a substantial or motivating factor for the adverse

7    employment actions.

8                                    **COUNT 5**

9            **(Violation of the First Amendment, Public Employees – Speech)**

10       221.    Plaintiff re-allege and incorporate by reference each and every allegation contained

11    in the previous paragraphs of this Complaint as if fully set forth herein.

12       222.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

13    others similarly situated, alleges New York State Office of Information Technology Services

14    deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff

15    expressed his concerns on October 19, 2017, October 20, 2017, and October 31, 2017 to multiple

16    individuals and offices within the agency that the law, policies, and procedures around reasonable

17    accommodations for disabilities was not being followed.

18       223.    In response to expressing these concerns, a matter of public concern, especially for

19    a discrete and insular minority, New York State Office of Information Technology Services, the

20    Defendant, took multiple adverse employment actions against the Plaintiff, including, but not

21    limited to: withholding approval of an additional reasonable accommodation for disability, being

22    prevented from returning to work, being prevented from accessing tangible and intangible personal

23    property, documenting inaccurate and false information in a probationary evaluation, affirming

24    inaccurate and false information into the personal history file, engaging in threats, harassment, and

1    intimation, which included forcing personal work product to be reviewed or supervised by

2    contractors and/or lower grade employees, as well as the intentional infliction of emotional

3    distress, terminating access to electronic credentials, which included withdrawal of access to

4    timekeeping systems, email, computer files, and personal files, being prevented from accurately

5    capturing time worked, intentional infliction of emotional distress, inserting inaccurate and false

6    information into the personal history file, providing unequal conditions and terms of employment,

7    especially in the interpretation of policy and procedures, and termination in bad faith.

8        224.    The Plaintiff, Mr. Stiegman, alleges that the speech in question, a request for

9    clarification on the law, policies, and procedures around reasonable accommodations for disability,

10   was a substantial or motivating factor for the adverse employment actions.

11

12                                    **COUNT 6**

13      **(Violation of the First Amendment, Public Employees - Speaking as Private Citizen)**

14       225.    Plaintiff re-allege and incorporate by reference each and every allegation contained

15   in the previous paragraphs of this Complaint as if fully set forth herein.

16       226.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

17   others similarly situated, alleges New York State Office of Information Technology Services

18   deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff

19   expressed his concerns, as a private citizen, on October 19, 2017, October 20, 2017, and October

20   31, 2017 to multiple individuals outside his chain of command that the law, policies, and procedures

21   around reasonable accommodations for disabilities was not being followed by the agency.

22       227.    In response to expressing these concerns, especially for a discrete and insular

23   minority, New York State Office of Information Technology Services, the Defendant, took

24   multiple adverse employment actions against the Plaintiff, including, but not limited to: withholding

1 approval of an additional reasonable accommodation for disability, being prevented from returning
2 to work, being prevented from accessing tangible and intangible personal property, documenting
3 inaccurate and false information in a probationary evaluation, affirming inaccurate and false
4 information into the personal history file, engaging in threats, harassment, and intimation, which
5 included forcing personal work product to be reviewed or supervised by contractors and/or lower
6 grade employees, as well as the intentional infliction of emotional distress, terminating access to
7 electronic credentials, which included withdrawal of access to timekeeping systems, email,
8 computer files, and personal files, being prevented from accurately capturing time worked,
9 intentional infliction of emotional distress, inserting inaccurate and false information into the
10 personal history file, providing unequal conditions and terms of employment, especially in the
11 interpretation of policy and procedures, and termination in bad faith.

12    228.    The Plaintiff, Mr. Stiegman, alleges that the speech in question, a request for
13 clarification on the law, policies, and procedures around reasonable accommodations for disability,
14 was a substantial or motivating factor for the adverse employment actions.

### COUNT 7

### (Particular Rights – First Amendment – "Citizen" Plaintiff)

17    229.    Plaintiff re-allege and incorporate by reference each and every allegation contained
18 in the previous paragraphs of this Complaint as if fully set forth herein.

19    230.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all
20 others similarly situated, alleges New York State Office of Information Technology Services
21 deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff
22 engaged in Free Expression by requesting a reasonable accommodation for disability for a
23 compressed work schedule around March 29, 2017.

24

231.    The subsequent adverse, unequal, and retaliatory actions taken by New York State Office of Information Technology Services, the Defendant, prevented the Plaintiff from engaging in the protected activity of requesting a reasonable accommodation for disability for several months.

232.    The Plaintiff, Mr. Stiegman, alleges that engaging in free expression, by requesting a reasonable accommodation for disability, was a substantial or motivating factor for the subsequent adverse, unequal, and retaliatory actions, including, but not limited to: withholding approval of the reasonable accommodation for disability, documenting inaccurate and false information in multiple probationary evaluations, engaging in threats, harassment, and intimation, inserting inaccurate and false information into the personal history file, affirming inaccurate information into the personal history file, withholding requested training and development opportunities, forcing unrequested training, withholding supervisory meetings, withholding supervisory opportunities, withholding timely evaluations, and providing unequal conditions and terms of employment, especially in the interpretation of policy and procedures.

## COUNT 8

### (Particular Rights – First Amendment – "Citizen" Plaintiff)

233.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

234.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff exercised his right to petition the Government through redirecting his request for a compressed work schedule in the form of a request for a reasonable accommodation for disability around March 29, 2017.

235.    The subsequent adverse, unequal, and retaliatory actions taken by New York State Office of Information Technology Services, the Defendant, prevented the Plaintiff from engaging in the protected activity of requesting a reasonable accommodation for disability for several months.

236.    The Plaintiff, Mr. Stiegman, alleges that exercising his right to petition the government for a reasonable accommodation for disability, was a substantial or motivating factor for the subsequent adverse, unequal, and retaliatory actions, including, but not limited to: withholding approval of the reasonable accommodation for disability, documenting inaccurate and false information in multiple probationary evaluations, engaging in threats, harassment, and intimation, inserting inaccurate and false information into the personal history file, affirming inaccurate information into the personal history file, withholding requested training and development opportunities, forcing unrequested training, withholding supervisory meetings, withholding supervisory opportunities, withholding timely evaluations, and providing unequal conditions and terms of employment, especially in the interpretation of policy and procedures.

## COUNT 9

### (Particular Rights – First Amendment – "Citizen" Plaintiff)

237.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

238.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff engaged in Free Expression by requesting an extension of the reasonable accommodation for disability for a temporary work at home schedule around October 10, 2017.

239.    The subsequent adverse, unequal, and retaliatory actions taken by New York State agencies, would chill a person of ordinary firmness from continuing to engage in the protected activity.

240.    The Plaintiff, Mr. Stiegman, alleges that engaging in free expression, by requesting an extension of the reasonable accommodation for disability, was a substantial or motivating factor for the subsequent adverse, unequal, and retaliatory actions, including, but not limited to: withholding approval of the reasonable accommodation for disability, ignoring a request for medical parking, documenting inaccurate and false information in multiple probationary evaluations, affirming inaccurate and false information into the personal history file, engaging in threats, harassment, and intimation, terminating access to electronic credentials, which included withdrawal of access to timekeeping systems, email, computer files, and personal files, inserting inaccurate and false information into the personal history file, providing unequal conditions and terms of employment, especially in the interpretation of policy and procedures, termination in bad faith, and ultimately, being prevented from being rehired off of the Civil Service Project Manager list.

### COUNT 10

### (Particular Rights – First Amendment – "Citizen" Plaintiff)

241.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

242.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff engaged in Free Expression by requesting a reasonable accommodation for disability for medical parking around October 10, 2017.

243.    The subsequent adverse, unequal, and retaliatory actions taken by New York State agencies, would chill a person of ordinary firmness from continuing to engage in the protected activity.

244.    The Plaintiff, Mr. Stiegman, alleges that engaging in free expression, by requesting a reasonable accommodation for disability, was a substantial or motivating factor for the subsequent adverse, unequal, and retaliatory actions, including, but not limited to: withholding approval of the reasonable accommodation for disability, ignoring a request for medical parking, being prevented from returning to work, being prevented from accessing tangible and intangible personal property, documenting inaccurate and false information in multiple probationary evaluations, affirming inaccurate and false information into the personal history file, engaging in threats, harassment, and intimation, intentional infliction of emotional distress, terminating access to electronic credentials, which included withdrawal of access to timekeeping systems, email, computer files, and personal files, inserting inaccurate and false information into the personal history file, providing unequal conditions and terms of employment, especially in the interpretation of policy and procedures, termination in bad faith, and ultimately, being prevented from being rehired off of the Civil Service Project Manager list.

## COUNT 11

### (Particular Rights – First Amendment – "Citizen" Plaintiff)

245.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

246.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff exercised his right to petition the Government by requesting a review of the status of his request

1 for an extension of the reasonable accommodation for disability for a temporary work at home
2 schedule around October 18, 2017.

3     247.    The subsequent adverse, unequal, and retaliatory actions taken by New York State
4 agencies, would chill a person of ordinary firmness from continuing to engage in the protected
5 activity.

6     248.    The Plaintiff, Mr. Stiegman, alleges that by exercising his right to petition the
7 Government, by requesting the status of the request for extension of the reasonable
8 accommodation for disability, was a substantial or motivating factor for the subsequent adverse,
9 unequal, and retaliatory actions, including, but not limited to: withholding approval of the
10 reasonable accommodation for disability, ignoring a request for medical parking, documenting
11 inaccurate and false information in multiple probationary evaluations, affirming inaccurate and
12 false information into the personal history file, engaging in threats, harassment, and intimation,
13 terminating access to electronic credentials, which included withdrawal of access to timekeeping
14 systems, email, computer files, and personal files, inserting inaccurate and false information into
15 the personal history file, providing unequal conditions and terms of employment, especially in the
16 interpretation of policy and procedures, termination in bad faith, and ultimately, being prevented
17 from being rehired off of the Civil Service Project Manager list.

18 <center>**COUNT 12**</center>

19 <center>**(Particular Rights – First Amendment – "Citizen" Plaintiff)**</center>

20     249.    Plaintiff re-allege and incorporate by reference each and every allegation contained
21 in the previous paragraphs of this Complaint as if fully set forth herein.

22     250.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all
23 others similarly situated, alleges New York State Office of Information Technology Services
24 deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff

1    exercised his right to petition the Government by requesting a review of the status of his request

2    for a reasonable accommodation for disability for medical parking around October 18, 2017.

3        251.    The subsequent adverse, unequal, and retaliatory actions taken by New York State

4    agencies, would chill a person of ordinary firmness from continuing to engage in the protected

5    activity.

6        252.    The Plaintiff, Mr. Stiegman, alleges that by exercising his right to petition the

7    Government, by requesting the status of the request for a reasonable accommodation for disability

8    for medical parking, was a substantial or motivating factor for the subsequent adverse, unequal,

9    and retaliatory actions, including, but not limited to: withholding approval of the reasonable

10   accommodation for disability, ignoring a request for medical parking, being prevented from

11   returning to work, being prevented from accessing tangible and intangible personal property,

12   documenting inaccurate and false information in multiple probationary evaluations, affirming

13   inaccurate and false information into the personal history file, engaging in threats, harassment, and

14   intimation, intentional infliction of emotional distress, terminating access to electronic credentials,

15   which included withdrawal of access to timekeeping systems, email, computer files, and personal

16   files, inserting inaccurate and false information into the personal history file, providing unequal

17   conditions and terms of employment, especially in the interpretation of policy and procedures,

18   termination in bad faith, and ultimately, being prevented from being rehired off of the Civil Service

19   Project Manager list.

20   **COUNT 13**

21   **(Particular Rights – First Amendment – "Citizen" Plaintiff)**

22       253.    Plaintiff re-allege and incorporate by reference each and every allegation contained

23   in the previous paragraphs of this Complaint as if fully set forth herein.

24

254.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff engaged in Free Expression on October 19, 2017, October 20, 2017, and October 31, 2017 by stating that the law, policies, and procedures around reasonable accommodations for disabilities was not being followed by the agency.

255.    The subsequent adverse, unequal, and retaliatory actions taken by New York State agencies, would chill a person of ordinary firmness from continuing to engage in the protected activity.

256.    The Plaintiff, Mr. Stiegman, alleges that engaging in free expression was a substantial or motivating factor for the subsequent adverse, unequal, and retaliatory actions, including, but not limited to, being prevented from returning to work, being prevented from accessing tangible and intangible personal property, documenting inaccurate and false information in multiple probationary evaluations, affirming inaccurate and false information into the personal history file, engaging in threats, harassment, and intimation, intentional infliction of emotional distress, terminating access to electronic credentials, which included withdrawal of access to timekeeping systems, email, computer files, and personal files, inserting inaccurate and false information into the personal history file, providing unequal conditions and terms of employment, especially in the interpretation of policy and procedures, termination in bad faith, and ultimately, being prevented from being rehired off of the Civil Service Project Manager list.

## COUNT 14

### (Particular Rights – First Amendment – "Citizen" Plaintiff)

257.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

258.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff exercised his right to petition the Government on October 19, 2017, October 20, 2017, and October 31, 2017 by stating that the law, policies, and procedures around reasonable accommodations for disabilities was not being followed by the agency.

259.    The subsequent adverse, unequal, and retaliatory actions taken by New York State agencies, would chill a person of ordinary firmness from continuing to engage in the protected activity.

260.    The Plaintiff, Mr. Stiegman, alleges that by exercising his right to petition the Government, by stating that the law, policies, and procedures around reasonable accommodations for disabilities was not being followed, was a substantial or motivating factor for the subsequent adverse, unequal, and retaliatory actions, including, but not limited to, being prevented from returning to work, being prevented from accessing tangible and intangible personal property, documenting inaccurate and false information in multiple probationary evaluations, affirming inaccurate and false information into the personal history file, engaging in threats, harassment, and intimation, intentional infliction of emotional distress, terminating access to electronic credentials, which included withdrawal of access to timekeeping systems, email, computer files, and personal files, inserting inaccurate and false information into the personal history file, providing unequal conditions and terms of employment, especially in the interpretation of policy and procedures, termination in bad faith, and ultimately, being prevented from being rehired off of the Civil Service Project Manager list.

1

**COUNT 15**

2

**(Particular Rights – First Amendment – "Citizen" Plaintiff)**

3      261.    Plaintiff re-allege and incorporate by reference each and every allegation contained

4  in the previous paragraphs of this Complaint as if fully set forth herein.

5      262.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

6  others similarly situated, alleges New York State Office of Information Technology Services

7  deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff

8  engaged in Free Expression on December 19, 2017, December 20, 2017, May 4, 2018, May 11,

9  2018, June 1, 2018, July 13, 2018, October 19, 2018, December 4, 2018, December 14, 2018, April

10  4, 2019, June 24, 2019, and July 5, 2019, by requesting access to government information, including

11  information associated with his tenure with the agency, and subsequent retaliatory termination in

12  bad faith.

13      263.    The subsequent adverse, unequal, and retaliatory actions taken by New York State

14  agencies, would chill a person of ordinary firmness from continuing to engage in the protected

15  activity.

16      264.    The Plaintiff, Mr. Stiegman, alleges that engaging in free expression, by requesting

17  access to government information, was a substantial or motivating factor for the subsequent

18  adverse, unequal, and retaliatory actions, including, but not limited to, delaying, thwarting,

19  preventing, or withholding access to government information, or other employment opportunities.

20

**COUNT 16**

21

**(Particular Rights – First Amendment – "Citizen" Plaintiff)**

22      265.    Plaintiff re-allege and incorporate by reference each and every allegation contained

23  in the previous paragraphs of this Complaint as if fully set forth herein.

24

266.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff exercised his right to petition the Government on October 19, 2018, April 4, 2019, and July 5, 2019, by appealing decisions limiting access to government information, including information associated with his tenure with the agency, and subsequent retaliatory termination in bad faith.

267.    The subsequent adverse, unequal, and retaliatory actions taken by New York State agencies, would chill a person of ordinary firmness from continuing to engage in the protected activity.

268.    The Plaintiff, Mr. Stiegman, alleges that by exercising his right to petition the Government, by appealing decisions limiting access to government information, was a substantial or motivating factor for the subsequent adverse, unequal, and retaliatory actions, including, but not limited to, delaying, thwarting, preventing, or withholding access to government information, or other employment opportunities.

## COUNT 17

### (Particular Rights – First Amendment – "Citizen" Plaintiff)

269.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

270.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges Public Employees Federation, a Union, deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff engaged in Free Expression on February 23, 2018, by informing the Union that the Memo dated February 9, 2018 by their Office of General Counsel, was in error of the facts.

271.    The subsequent adverse, unequal, and retaliatory actions taken by Public Employees Federation, would chill a person of ordinary firmness from continuing to engage in the protected activity.

272.    The Plaintiff, Mr. Stiegman, alleges that engaging in free expression, was a substantial or motivating factor for the subsequent adverse, unequal, and retaliatory actions, including the denial of due process and equal treatment under the law, which resulted in delaying, thwarting, preventing, or withholding access or assistance with subsequent related legal concerns.

## COUNT 18

### (Particular Rights – First Amendment – "Citizen" Plaintiff)

273.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

274.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff engaged in Free Expression on December 25, 2017, by filing an Internal Discrimination Complaint with the agency.

275.    The subsequent adverse, unequal, and retaliatory actions taken by New York State agencies, would chill a person of ordinary firmness from continuing to engage in the protected activity.

276.    The Plaintiff, Mr. Stiegman, alleges that engaging in free expression, by filing an Internal Discrimination Complaint with the agency, was a substantial or motivating factor for the subsequent adverse, unequal, and retaliatory actions, including the denial of due process and equal treatment under the law, which resulted in delaying, thwarting, preventing, or withholding access to government information or other employment opportunities.

1

## COUNT 19

2

### (Particular Rights – First Amendment – "Citizen" Plaintiff)

3       277.    Plaintiff re-allege and incorporate by reference each and every allegation contained
4    in the previous paragraphs of this Complaint as if fully set forth herein.

5       278.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all
6    others similarly situated, alleges New York State Office of Information Technology Services
7    deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff
8    exercised his right to petition the Government on December 25, 2017, by filing an Internal
9    Discrimination Complaint with the agency.

10      279.    The subsequent adverse, unequal, and retaliatory actions taken by New York State
11   agencies, would chill a person of ordinary firmness from continuing to engage in the protected
12   activity.

13      280.    The Plaintiff, Mr. Stiegman, alleges that by exercising his right to petition the
14   Government, by filing an Internal Discrimination Complaint with the agency, was a substantial or
15   motivating factor for the subsequent adverse, unequal, and retaliatory actions, including the denial
16   of due process and equal treatment under the law, which resulted in delaying, thwarting, preventing,
17   or withholding access to government information or other employment opportunities.

18

## COUNT 20

19

### (Particular Rights – First Amendment – "Citizen" Plaintiff)

20      281.    Plaintiff re-allege and incorporate by reference each and every allegation contained
21   in the previous paragraphs of this Complaint as if fully set forth herein.

22      282.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all
23   others similarly situated, alleges New York State Insurance Fund deprived him of his Rights under
24   the First Amendment to the Constitution when the Plaintiff engaged in Free Expression on

February 16, 2018 during an interview for the position of Project Manager 1, by sharing details of the situation surrounding the termination of his Project Manager 1 position by his former employer, a New York State agency.

283.    The subsequent adverse, unequal, and retaliatory actions taken by New York State Insurance Fund, and other New York State agencies, would chill a person of ordinary firmness from continuing to engage in the protected activity.

284.    The Plaintiff, Mr. Stiegman, alleges that engaging in free expression with the agency, was a substantial or motivating factor for the subsequent adverse, unequal, and retaliatory actions, including the denial of due process and equal treatment under the law, which resulted in withholding interviews and employment.

## COUNT 21

### (Particular Rights – First Amendment – "Citizen" Plaintiff)

285.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

286.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of the Attorney General deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff engaged in Free Expression on October 10, 2018 during an interview for the position of Project Manager 1, by sharing details of the situation surrounding the termination of his Project Manager 1 position by his former employer, a New York State agency.

287.    The subsequent adverse, unequal, and retaliatory actions taken by New York State Office of the Attorney General, and other New York State agencies, would chill a person of ordinary firmness from continuing to engage in the protected activity.

288.    The Plaintiff, Mr. Stiegman, alleges that engaging in free expression with the agency, was a substantial or motivating factor for the subsequent adverse, unequal, and retaliatory actions, including, the denial of due process and equal treatment under the law, which resulted in withholding interviews and employment.

## COUNT 22

### (Particular Rights – First Amendment – "Citizen" Plaintiff)

289.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

290.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Division of the Budget deprived him of his Rights under the First Amendment to the Constitution when the Plaintiff engaged in Free Expression on January 14, 2019 during an interview for the position of Project Manager 1, by sharing details of the situation surrounding the termination of his Project Manager 1 position by his former employer, a New York State agency.

291.    The subsequent adverse, unequal, and retaliatory actions taken by New York State Division of the Budget, and other New York State agencies, would chill a person of ordinary firmness from continuing to engage in the protected activity.

292.    The Plaintiff, Mr. Stiegman, alleges that engaging in free expression with the agency, was a substantial or motivating factor for the subsequent adverse, unequal, and retaliatory actions, including the denial of due process and equal treatment under the law, which resulted in withholding interviews and employment.

## VIOLATIONS OF THE FOURTH AMENDMENT
## OF THE UNITED STATES CONSTITUTION (COUNTS 23 - 26)

### COUNT 23

**(Particular Rights – Fourth Amendment – Unreasonable Search)**

293.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

294.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the Fourth Amendment to the Constitution when the New York State Office of Information Technology Services, the Defendant, intentionally accessed and searched the Plaintiff's assigned computer directory, emails, and files, on and after October 25, 2017, and the search was unreasonable.

### COUNT 24

**(Particular Rights – Fourth Amendment – Unreasonable Search)**

295.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

296.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the Fourth Amendment to the Constitution when the New York State Office of Information Technology Services, the Defendant, intentionally accessed and searched the Plaintiff's assigned workspace, a space with a reasonable expectation of privacy, which included tangible and intangible personal property, on and after, November 1, 2017, and the search was unreasonable.

1

## COUNT 25

2

**(Particular Rights – Fourth Amendment – Unreasonable Seizure of Property)**

3      297.    Plaintiff re-allege and incorporate by reference each and every allegation contained

4   in the previous paragraphs of this Complaint as if fully set forth herein.

5      298.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

6   others similarly situated, alleges New York State Office of Information Technology Services

7   deprived him of his Rights under the Fourth Amendment to the Constitution when the New York

8   State Office of Information Technology Services, the Defendant, intentionally seized the Plaintiff's

9   property, including intellectual property and notes, located on his assigned computer directory on

10  and after October 25, 2017, and the seizure was unreasonable.

11

## COUNT 26

12

**(Particular Rights – Fourth Amendment – Unreasonable Seizure of Property)**

13     299.    Plaintiff re-allege and incorporate by reference each and every allegation contained

14  in the previous paragraphs of this Complaint as if fully set forth herein.

15     300.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

16  others similarly situated, alleges New York State Office of Information Technology Services

17  deprived him of his Rights under the Fourth Amendment to the Constitution when the New York

18  State Office of Information Technology Services, the Defendant, intentionally seized the Plaintiff's

19  property in his assigned workspace, a space with a reasonable expectation of privacy, which

20  included tangible and intangible personal property, on and after, November 1, 2017, and the seizure

21  was unreasonable.

22

23

24

## VIOLATIONS OF THE FIFTH AMENDMENT

## OF THE UNITED STATES CONSTITUTION (COUNTS 27 - 30)

### COUNT 27

#### (Particular Rights – Fifth Amendment – Takings)

301.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

302.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the Fifth Amendment to the Constitution when the New York State Office of Information Technology Services, the Defendant, participated in the taking of the Plaintiff's property, the economic value and all associated interests of any of his paid educational training and degrees, including, coursework at Calvin Christian High School, Trinity Christian College, Christian Heritage College, University of San Diego, Indiana University – Bloomington, and the Project Management Institute, on and after, October 23, 2017, and without just compensation.

### COUNT 28

#### (Particular Rights – Fifth Amendment – Takings)

303.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

304.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the Fifth Amendment to the Constitution when the New York State Office of Information Technology Services, the Defendant, participated in the taking of the

1    Plaintiff's property, the economic value and all associated interests of his earning potential

2    associated with his successful completion of the New York State Department of Civil Service

3    Project Manager 1 and Project Manager 2 exams, as well as, all related, past, present, and future

4    promotional opportunities, on and after, October 23, 2017, and without just compensation.

5

<div align="center">

**COUNT 29**

</div>

6

<div align="center">

**(Particular Rights – Fifth Amendment – Takings)**

</div>

7        305.   Plaintiff re-allege and incorporate by reference each and every allegation contained

8    in the previous paragraphs of this Complaint as if fully set forth herein.

9        306.   The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

10    others similarly situated, alleges New York State Office of Information Technology Services

11    deprived him of his Rights under the Fifth Amendment to the Constitution when the New York

12    State Office of Information Technology Services, the Defendant, participated in the taking of the

13    Plaintiff's property, including intellectual property and notes, located on his assigned computer

14    directory on and after October 25, 2017, and without just compensation.

15

<div align="center">

**COUNT 30**

</div>

16

<div align="center">

**(Particular Rights – Fifth Amendment – Takings)**

</div>

17        307.   Plaintiff re-allege and incorporate by reference each and every allegation contained

18    in the previous paragraphs of this Complaint as if fully set forth herein.

19        308.   The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

20    others similarly situated, alleges New York State Office of Information Technology Services

21    deprived him of his Rights under the Fifth Amendment to the Constitution when the New York

22    State Office of Information Technology Services, the Defendant, participated in the taking of the

23    Plaintiff's property in his assigned workspace, which included tangible and intangible personal

24    property, on and after, November 1, 2017, and without just compensation.

## VIOLATIONS OF THE EIGHT AMENDMENT

## OF THE UNITED STATES CONSTITUTION (COUNTS 31 - 33)

### COUNT 31

### (Particular Rights – Eight Amendment)

309.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

310.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the Eight Amendment to the Constitution when the Plaintiff faced a serious medical need after recovering from surgery, a need for a reasonable accommodation for medical parking, and New York State Office of Information Technology Services, the Defendant, was deliberately indifferent to that medical need, since the agency knew of the request on October 10, 2017, subsequently ignored that request, and failed to take reasonable measures to address that request.

311.    The failure to respond to the request for a reasonable accommodation for medical parking by New York State Office of Information Technology Services, the Defendant, caused harm to the Plaintiff.

### COUNT 32

### (Particular Rights – Eight Amendment)

312.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

313.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services

deprived him of his Rights under the Eight Amendment to the Constitution when the Plaintiff faced a serious medical need after recovering from surgery, a need for a reasonable accommodation for an extension of a temporary work at home schedule, and New York State Office of Information Technology Services, the Defendant, was deliberately indifferent to that medical need, since the agency knew of the request on October 10, 2017, subsequently ignored that request, and failed to take reasonable measures to address that request.

314.    The failure to respond to the request for a reasonable accommodation for an extension of a work at home schedule, by New York State Office of Information Technology Services, the Defendant, caused harm to the Plaintiff.

## COUNT 33

### (Particular Rights – Eight Amendment)

315.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

316.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights under the Eight Amendment to the Constitution when the Plaintiff faced a serious medical need after recovering from surgery, and was instructed by his supervisor to take sick leave accruals on October 19, 2017 for the following week for travel to Minnesota for surgical follow-up appointments. New York State Office of Information Technology Services, the Defendant, was deliberately indifferent to that medical need, since the agency knew of the planned travel on or before October 19, 2017, and subsequently, intentionally chose to serve termination papers to the Plaintiff's personal email address on October 25, 2017, while the Plaintiff was being treated in the hospital where his cancer surgery occurred.

317.    Through the referenced actions, the Defendant, New York State Office of Information Technology Services, intentionally caused harm to the Plaintiff.

## VIOLATIONS OF THE NINTH AMENDMENT
## OF THE UNITED STATES CONSTITUTION (COUNTS 34-43)

### COUNT 34

#### (Particular Rights – Ninth Amendment)

318.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

319.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of an Unenumerated Right, the Right to Privacy, retained by the People under the Ninth Amendment to the Constitution, including, but not limited to, when New York State Office of Information Technology Services, the Defendant, forced sharing of private medical information, exposed federally protected information, and/or accessed Plaintiff's papers, effects, property with a reasonable expectation of privacy.

### COUNT 35

#### (Particular Rights – Ninth Amendment)

320.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

321.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of an Unenumerated Right, the Right to Bodily Integrity, retained by the People

1  under the Ninth Amendment to the Constitution, including, but not limited to, when New York

2  State Office of Information Technology Services, the Defendant, prevented the Plaintiff from

3  accessing, or directing, their medical care.

**COUNT 36**

**(Particular Rights – Ninth Amendment)**

6  322.    Plaintiff re-allege and incorporate by reference each and every allegation contained

7  in the previous paragraphs of this Complaint as if fully set forth herein.

8  323.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

9  others similarly situated, alleges New York State Office of Information Technology Services

10  deprived him of an Unenumerated Right, the Right to be Free from Undue Government

11  Interference, retained by the People under the Ninth Amendment to the Constitution, including,

12  but not limited to, when New York State Office of Information Technology Services, the

13  Defendant, conspired to interfere in the Plaintiff's assertion of Enumerated Rights outlined in the

14  Bill of Rights.

15

**COUNT 37**

**(Particular Rights – Ninth Amendment)**

18  324.    Plaintiff re-allege and incorporate by reference each and every allegation contained

19  in the previous paragraphs of this Complaint as if fully set forth herein.

20  325.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

21  others similarly situated, alleges New York State Office of Information Technology Services

22  deprived him of an Unenumerated Right, the Right to Travel, retained by the People under the

23  Ninth Amendment to the Constitution, including, but not limited to, when New York State Office

24

of Information Technology Services, the Defendant, prevented the Plaintiff from intrastate and interstate travel.

## COUNT 38

### (Particular Rights – Ninth Amendment)

326.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

327.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of an Unenumerated Right, the Right to Dignity, retained by the People under the Ninth Amendment to the Constitution, including, but not limited to, when New York State Office of Information Technology Services, the Defendant, used false information to implement employment termination, and serve that information to the Plaintiff's private email address while he was in a hospital seeking medical care, after instructing the Plaintiff to go on leave, as well as preventing the Plaintiff from accessing employment opportunities for which he was qualified.

## COUNT 39

### (Particular Rights – Ninth Amendment)

328.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

329.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Insurance Fund deprived him of an Unenumerated Right, the Right to Dignity, retained by the People under the Ninth Amendment to the Constitution, including, but not limited to, when New York State Insurance Fund, the Defendant, preventing the Plaintiff from accessing employment opportunities for which he was qualified.

## COUNT 40

### (Particular Rights – Ninth Amendment)

330.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

331.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of the Attorney General deprived him of an Unenumerated Right, the Right to Dignity, retained by the People under the Ninth Amendment to the Constitution, including, but not limited to, when New York State Office of the Attorney General, the Defendant, preventing the Plaintiff from accessing employment opportunities for which he was qualified.

## COUNT 41

### (Particular Rights – Ninth Amendment)

332.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

333.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Division of the Budget deprived him of an Unenumerated Right, the Right to Dignity, retained by the People under the Ninth Amendment to the Constitution, including, but not limited to, when New York State Division of the Budget, the Defendant, preventing the Plaintiff from accessing employment opportunities for which he was qualified.

## COUNT 42

### (Particular Rights – Ninth Amendment)

334.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

335.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of an Unenumerated Right, the Right to Access Government Information, retained by the People under the Ninth Amendment to the Constitution, including, but not limited to, when New York State Office of Information Technology Services, the Defendant, preventing the Plaintiff from accessing government information.

## COUNT 43

### (Particular Rights – Ninth Amendment)

336.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

337.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Department of State deprived him of an Unenumerated Right, the Right to Access Government Information, retained by the People under the Ninth Amendment to the Constitution, including, but not limited to, when New York State Department of State, the Defendant, preventing the Plaintiff from accessing government information.

## VIOLATIONS OF THE FOURTEENTH AMENDMENT
## OF THE UNITED STATES CONSTITUTION (COUNTS 44-84)

## COUNT 44

### (Particular Rights – Fourteenth Amendment – Procedural Due Process)

338.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

339.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, failed to provide procedural due process in the review of his request for a reasonable accommodation on or around March 2017, August 2017, and October 2017.

## COUNT 45

### (Particular Rights – Fourteenth Amendment – Procedural Due Process)

340.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

341.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, failed to provide procedural due process in the implementation of probationary evaluations throughout his tenure with the agency from February 2017 to November 2017.

## COUNT 46

### (Particular Rights – Fourteenth Amendment – Procedural Due Process)

342.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

343.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant,

1  failed to provide procedural due process in the review of his requests for information under the

2  Freedom of Information Law from December 2017 to the present.

3                                    **COUNT 47**

4            **(Particular Rights – Fourteenth Amendment – Procedural Due Process)**

5            344.    Plaintiff re-allege and incorporate by reference each and every allegation contained

6  in the previous paragraphs of this Complaint as if fully set forth herein.

7            345.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

8  others similarly situated, alleges New York State Office of Information Technology Services

9  deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the

10  Constitution, when New York State Office of Information Technology Services, the Defendant,

11  failed to provide procedural due process in the review of his Internal Discrimination Complaint

12  submitted on December 25, 2017.

13                                    **COUNT 48**

14            **(Particular Rights – Fourteenth Amendment – Procedural Due Process)**

15            346.    Plaintiff re-allege and incorporate by reference each and every allegation contained

16  in the previous paragraphs of this Complaint as if fully set forth herein.

17            347.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

18  others similarly situated, alleges New York State Office of the Attorney General deprived him of

19  his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when

20  New York State Office of the Attorney General, the Defendant, failed to provide procedural due

21  process in either the review of his employment related activities with the agency, including, but not

22  limited to, canvass submissions, online applications, and interviews, or subsequent hiring decisions,

23  including inaction or failure to follow the rules.

24

1

## COUNT 49

2

**(Particular Rights – Fourteenth Amendment – Procedural Due Process)**

3      348.    Plaintiff re-allege and incorporate by reference each and every allegation contained

4  in the previous paragraphs of this Complaint as if fully set forth herein.

5      349.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

6  others similarly situated, alleges New York State Insurance Fund deprived him of his Rights to

7  Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York

8  State Insurance Fund, the Defendant, failed to provide procedural due process in either the review

9  of his employment related activities with the agency, including, but not limited to, canvass

10  submissions, interviews, and written correspondence, or subsequent hiring decisions, including

11  inaction or failure to follow the rules.

12

## COUNT 50

13

**(Particular Rights – Fourteenth Amendment – Procedural Due Process)**

14      350.    Plaintiff re-allege and incorporate by reference each and every allegation contained

15  in the previous paragraphs of this Complaint as if fully set forth herein.

16      351.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

17  others similarly situated, alleges New York State Homes and Community Renewal deprived him of

18  his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when

19  New York State Homes and Community Renewal, the Defendant, failed to provide procedural due

20  process in either the review of his employment related activities with the agency, including, but not

21  limited to, canvass submissions and written correspondence, or subsequent hiring decisions,

22  including inaction or failure to follow the rules.

23

24

## COUNT 51

### (Particular Rights – Fourteenth Amendment – Procedural Due Process)

352.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

353.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Division of the Budget deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Division of the Budget, the Defendant, failed to provide procedural due process in either the review of his employment related activities with the agency, including, but not limited to, canvass submissions, online applications, interviews, and written correspondence, or subsequent hiring decisions, including inaction or failure to follow the rules.

## COUNT 52

### (Particular Rights – Fourteenth Amendment – Procedural Due Process)

354.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

355.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Workers Compensation Board deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Workers Compensation Board, the Defendant, failed to provide procedural due process in either the review of his employment related activities with the agency, including, but not limited to, canvass submissions, and written correspondence, or subsequent hiring decisions, including inaction or failure to follow the rules.

# COUNT 53

## (Particular Rights – Fourteenth Amendment – Procedural Due Process)

356.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

357.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Thruway Authority deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Thruway Authority, the Defendant, failed to provide procedural due process in either the review of his employment related activities with the agency, including, but not limited to, canvass submissions, and written correspondence, or subsequent hiring decisions, including inaction or failure to follow the rules.

# COUNT 54

## (Particular Rights – Fourteenth Amendment – Procedural Due Process)

358.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

359.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges Empire State Development Corporation deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when Empire State Development Corporation, the Defendant, failed to provide procedural due process in either the review of his employment related activities with the agency, including, but not limited to, online applications, and written correspondence, or subsequent hiring decisions, including inaction or failure to follow the rules.

## COUNT 55

### (Particular Rights – Fourteenth Amendment – Substantive Due Process)

360.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

361.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and insular minority, by withholding reasonable accommodations for disabilities.

## COUNT 56

### (Particular Rights – Fourteenth Amendment – Substantive Due Process)

362.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

363.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and insular minority, by preventing interstate travel.

## COUNT 57

### (Particular Rights – Fourteenth Amendment – Substantive Due Process)

364.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

365.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and insular minority, by preventing the opportunity to access and/or engage in intrastate and/or interstate commerce.

## COUNT 58

### (Particular Rights – Fourteenth Amendment – Substantive Due Process)

366.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

367.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Life, Liberty, or Property under the Fourteenth Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and insular minority, by preventing access to government sponsored medical care.

## COUNT 59

### (Particular Rights – Fourteenth Amendment – Substantive Due Process)

368.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

369.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services

deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and insular minority, by entering into the public record false evaluation information.

## COUNT 60

### (Particular Rights – Fourteenth Amendment – Substantive Due Process)

370.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

371.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and insular minority, by withholding access to government information.

## COUNT 61

### (Particular Rights – Fourteenth Amendment – Substantive Due Process)

372.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

373.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and

1  insular minority, by preventing Freedom of Expression, in violation of the First Amendment of
2  the Constitution.

3                                    **COUNT 62**

4      **(Particular Rights – Fourteenth Amendment – Substantive Due Process)**

5      374.    Plaintiff re-allege and incorporate by reference each and every allegation contained
6  in the previous paragraphs of this Complaint as if fully set forth herein.

7      375.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all
8  others similarly situated, alleges New York State Office of Information Technology Services
9  deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the
10 Constitution, when New York State Office of Information Technology Services, the Defendant,
11 discriminated against him and other individuals over 40 years of age with a disability, a discrete and
12 insular minority, by thwarting the right to petition the government, in violation of the First
13 Amendment of the Constitution.

14                                   **COUNT 63**

15     **(Particular Rights – Fourteenth Amendment – Substantive Due Process)**

16     376.    Plaintiff re-allege and incorporate by reference each and every allegation contained
17 in the previous paragraphs of this Complaint as if fully set forth herein.

18     377.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all
19 others similarly situated, alleges New York State Office of Information Technology Services
20 deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the
21 Constitution, when New York State Office of Information Technology Services, the Defendant,
22 discriminated against him and other individuals over 40 years of age with a disability, a discrete and
23 insular minority, by conducting illegal searches of property, in violation of the Fourth Amendment
24 of the Constitution.

## COUNT 64

### (Particular Rights – Fourteenth Amendment – Substantive Due Process)

378.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

379.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and insular minority, by conducting illegal seizures of property, in violation of the Fourth Amendment of the Constitution.

## COUNT 65

### (Particular Rights – Fourteenth Amendment – Substantive Due Process)

380.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

381.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and insular minority, by taking property without just compensation, in violation of the Fifth Amendment of the Constitution.

1

**COUNT 66**

2

**(Particular Rights – Fourteenth Amendment – Substantive Due Process)**

3      382.    Plaintiff re-allege and incorporate by reference each and every allegation contained

4   in the previous paragraphs of this Complaint as if fully set forth herein.

5      383.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

6   others similarly situated, alleges New York State Office of Information Technology Services

7   deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the

8   Constitution, when New York State Office of Information Technology Services, the Defendant,

9   discriminated against him and other individuals over 40 years of age with a disability, a discrete and

10  insular minority, by inflicting cruel and unusual punishment, in violation of the Eight Amendment

11  of the Constitution.

12

**COUNT 67**

13

**(Particular Rights – Fourteenth Amendment – Substantive Due Process)**

14     384.    Plaintiff re-allege and incorporate by reference each and every allegation contained

15  in the previous paragraphs of this Complaint as if fully set forth herein.

16     385.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all

17  others similarly situated, alleges New York State Office of Information Technology Services

18  deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the

19  Constitution, when New York State Office of Information Technology Services, the Defendant,

20  discriminated against him and other individuals over 40 years of age with a disability, a discrete and

21  insular minority, by withholding access to job opportunities and promotions to which they were

22  qualified.

23

24

**COUNT 68**

**(Particular Rights – Fourteenth Amendment – Substantive Due Process)**

386.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

387.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of the Attorney General deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Office of the Attorney General, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and insular minority, by preventing Freedom of Expression, in violation of the First Amendment of the Constitution.

**COUNT 69**

**(Particular Rights – Fourteenth Amendment – Substantive Due Process)**

388.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

389.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of the Attorney General deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Office of the Attorney General, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and insular minority, by withholding access to job opportunities to which they were qualified.

## COUNT 70

### (Particular Rights – Fourteenth Amendment – Substantive Due Process)

390.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

391.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Insurance Fund deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Insurance Fund, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and insular minority, by preventing Freedom of Expression, in violation of the First Amendment of the Constitution.

## COUNT 71

### (Particular Rights – Fourteenth Amendment – Substantive Due Process)

392.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

393.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Insurance Fund deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Insurance Fund, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and insular minority, by withholding access to job opportunities to which they were qualified.

## COUNT 72

### (Particular Rights – Fourteenth Amendment – Substantive Due Process)

394.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

395.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Division of the Budget deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Division of the Budget, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and insular minority, by preventing Freedom of Expression, in violation of the First Amendment of the Constitution.

## COUNT 73

### (Particular Rights – Fourteenth Amendment – Substantive Due Process)

396.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

397.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Division of the Budget deprived him of his Rights to Life, Liberty, or Property under the Fourteen Amendment to the Constitution, when New York State Division of the Budget, the Defendant, discriminated against him and other individuals over 40 years of age with a disability, a discrete and insular minority, by withholding access to job opportunities to which they were qualified.

## COUNT 74

### (Particular Rights – Fourteenth Amendment – Equal Protection)

398.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

399.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Equal Protection under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, intentionally discriminated against him and other individuals who were 40 years of age or older with a disability, a discrete and insular minority, by preventing the opportunity to access and/or engage in intrastate and/or interstate commerce

## COUNT 75

### (Particular Rights – Fourteenth Amendment – Equal Protection)

400.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

401.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Equal Protection under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, intentionally discriminated against him and other individuals who were 40 years of age or older with a disability, a discrete and insular minority, by withholding access to job opportunities to which they were qualified.

## COUNT 76

### (Particular Rights – Fourteenth Amendment – Equal Protection)

402.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

403.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Equal Protection under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, intentionally discriminated against him and other individuals who were 40 years of age or older with a disability, a discrete and insular minority, by withholding, or unequally implementing, reasonable accommodations for disabilities.

## COUNT 77

### (Particular Rights – Fourteenth Amendment – Equal Protection)

404.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

405.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Equal Protection under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, intentionally discriminated against him and other individuals who were 40 years of age or older with a disability, a discrete and insular minority, by preventing interstate and/or intrastate travel to the workplace.

## COUNT 78

### (Particular Rights – Fourteenth Amendment – Equal Protection)

406.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

407.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Equal Protection under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, intentionally discriminated against him and other individuals who were 40 years of age or older with a disability, a discrete and insular minority, by preventing access to government sponsored medical care.

## COUNT 79

### (Particular Rights – Fourteenth Amendment – Equal Protection)

408.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

409.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Equal Protection under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, intentionally discriminated against him and other individuals who were 40 years of age or older with a disability, a discrete and insular minority, by entering into the public record false evaluation information.

## COUNT 80

### (Particular Rights – Fourteenth Amendment – Equal Protection)

410.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

411.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of Information Technology Services deprived him of his Rights to Equal Protection under the Fourteen Amendment to the Constitution, when New York State Office of Information Technology Services, the Defendant, intentionally discriminated against him and other individuals who were 40 years of age or older with a disability, a discrete and insular minority, by withholding access to government information.

## COUNT 81

### (Particular Rights – Fourteenth Amendment – Equal Protection)

412.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

413.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Office of the Attorney General deprived him of his Rights to Equal Protection under the Fourteen Amendment to the Constitution, when New York State Office of the Attorney General, the Defendant, intentionally discriminated against him and other individuals who were 40 years of age or older with a disability, a discrete and insular minority, by withholding access to job opportunities to which they were qualified.

## COUNT 82

### (Particular Rights – Fourteenth Amendment – Equal Protection)

414.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

415.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Insurance Fund deprived him of his Rights to Equal Protection under the Fourteen Amendment to the Constitution, when New York State Insurance Fund, the Defendant, intentionally discriminated against him and other individuals who were 40 years of age or older with a disability, a discrete and insular minority, by withholding access to job opportunities to which they were qualified.

## COUNT 83

### (Particular Rights – Fourteenth Amendment – Equal Protection)

416.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

417.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Division of the Budget deprived him of his Rights to Equal Protection under the Fourteen Amendment to the Constitution, when New York Division of the Budget, the Defendant, intentionally discriminated against him and other individuals who were 40 years of age or older with a disability, a discrete and insular minority, by withholding access to job opportunities to which they were qualified.

## COUNT 84

### (Particular Rights – Fourteenth Amendment – Equal Protection)

418.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

419.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges New York State Department of State deprived him of his Rights to Equal Protection under the Fourteen Amendment to the Constitution, when New York State Department of State, the Defendant, intentionally discriminated against him and other individuals who were 40 years of age or older with a disability, a discrete and insular minority, by withholding access to government information.

## VIOLATIONS OF SECTION 2 OF CIVIL RIGHTS ACT OF 1871,

## AS CODIFIED 42 U.S.C. 1985(3) (COUNTS 85 – 90)

## COUNT 85

### (Conspiracy to Interfere with Civil Rights)

420.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

421.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that numerous officials acting in their official capacity, including, but not limited to, Ms. Veronica Webster (NYS ITS), Ms. Beth Bloodgood (NYS ITS), Mr. Chris Lloyd (NYS ITS), Mr. David Mahoney (NYS ITS), Mr. Edward Page (NYS ITS), Mr. Matthew Millea (NYS ITS), Ms. Shinu Shilesh (NYS ITS), Mr. Eric Huntington (NYS ITS), Mr. Jon Haverly (NYS ITS), Ms. Mary Ann Pelltier (NYS ITS), Ms. Shoshana Bewlay (NYS ITS), Ms. Marcy Stevens (NYS ITS), Mr. Robert Valla (NYS ITS), Mr. Wayne Spence (PEF), Mr. Edward Aluck (PEF), Ms. Rita Strauss (PEF), Ms. Deidre Maria Salsich (PEF), Ms. Denise Dreany (NYS OAG), Mr. Mark Jackson (NYS OAG), Mr. William Harrison (NYS OAG), Mr. Laurence Moats (NYS DOB), and

Mr. Robert Freeman (NYS DOS), conspired to deprive the Plaintiff of his Rights under the First Amendment to the Constitution in violation of Section 2 of the Civil Rights Act of 1871.

422.    The Defendants took overt action against the Plaintiff (see Counts 1 - 22), which caused injury in person or property. These actions were bred with discriminatory animus

## COUNT 86

### (Conspiracy to Interfere with Civil Rights)

423.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

424.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that numerous officials acting in their official capacity, including, but not limited to, Ms. Veronica Webster (NYS ITS), Ms. Beth Bloodgood (NYS ITS), Chris Lloyd (NYS ITS), Mr. David Mahoney (NYS ITS), Mr. Edward Page (NYS ITS), Mr. Jon Haverly (NYS ITS), Ms. Shoshana Bewlay (NYS ITS), Ms. Marcy Stevens (NYS ITS), Ms. Shinu Shilesh (NYS ITS), Mr. Matthew Millea (NYS ITS), Mr. Robert Valla (NYS ITS), Ms. Mary Ann Pelltier (NYS ITS), Mr. Eric Huntington (NYS ITS), and Mr. Robert Freeman (NYS DOS), conspired to deprive the Plaintiff of his Rights under the Fourth Amendment to the Constitution in violation of Section 2 of the Civil Rights Act of 1871.

425.    The Defendants took overt action against the Plaintiff (see Counts 23 - 26), which caused injury in person or property. These actions were bred with discriminatory animus.

## COUNT 87

### (Conspiracy to Interfere with Civil Rights)

426.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

427.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that numerous officials acting in their official capacity, including, but not limited to, Ms. Veronica Webster (NYS ITS), Ms. Beth Bloodgood (NYS ITS), Mr. Chris Lloyd (NYS ITS), Mr. David Mahoney (NYS ITS), Mr. Edward Page (NYS ITS), Mr. Jon Haverly (NYS ITS), Ms. Shoshana Bewlay (NYS ITS), Ms. Marcy Stevens (NYS ITS), Mr. Robert Valla (NYS ITS), Mr. Matthew Millea (NYS ITS), Ms. Shinu Shilesh (NYS ITS), Mr. Eric Huntington (NYS ITS), and Ms. Mary Ann Pelltier (NYS ITS), conspired to deprive the Plaintiff of his Rights under the Fifth Amendment to the Constitution in violation of Section 2 of the Civil Rights Act of 1871.

428.    The Defendants took overt action against the Plaintiff (see Counts 27 - 30), which caused injury in person or property. These actions were bred with discriminatory animus.

## COUNT 88

### (Conspiracy to Interfere with Civil Rights)

429.    Plaintiff re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

430.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that numerous officials acting in their official capacity, including, but not limited to, Ms. Veronica Webster (NYS ITS), Ms. Beth Bloodgood (NYS ITS), Mr. David Mahoney (NYS ITS), Mr. Edward Page (NYS ITS), and Mr. Robert Valla (NYS ITS), conspired to deprive the Plaintiff of his Rights under the Eighth Amendment to the Constitution in violation of Section 2 of the Civil Rights Act of 1871.

431.    The Defendants took overt action against the Plaintiff (see Counts 31 - 33), which caused injury in person or property. These actions were bred with discriminatory animus.

## COUNT 89

### (Conspiracy to Interfere with Civil Rights)

432.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that numerous officials acting in their official capacity, including, but not limited to, Ms. Veronica Webster (NYS ITS), Ms. Beth Bloodgood (NYS ITS), Mr. Chris Lloyd (NYS ITS), Mr. David Mahoney (NYS ITS), Mr. Edward Page (NYS ITS), Mr. Matthew Millea (NYS ITS), Ms. Shinu Shilesh (NYS ITS), Mr. Eric Huntington (NYS ITS), Mr. Jon Haverly (NYS ITS), Ms. Mary Ann Pelltier (NYS ITS), Ms. Shoshana Bewlay (NYS ITS), Ms. Marcy Stevens (NYS ITS), Mr. Robert Valla (NYS ITS), Mr. Wayne Spence (PEF), Mr. Edward Aluck (PEF), Ms. Rita Strauss (PEF), Ms. Deidre Maria Salsich (PEF), Ms. Denise Dreany (NYS OAG), Mr. Mark Jackson (NYS OAG), Mr. William Harrison (NYS OAG), Mr. Laurence Moats (NYS DOB), and Mr. Robert Freeman (NYS DOS), conspired to deprive the Plaintiff of his Rights under the Ninth Amendment to the Constitution in violation of Section 2 of the Civil Rights Act of 1871.

433.    The Defendants took overt action against the Plaintiff (see Counts 34 – 43), which caused injury in person or property. These actions were bred with discriminatory animus

## COUNT 90

### (Conspiracy to Interfere with Civil Rights)

434.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

435.    The Plaintiff, Mr. Victor Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that numerous officials acting in their official capacity, including, but not limited to, Ms. Veronica Webster (NYS ITS), Ms. Beth Bloodgood (NYS ITS), Mr. Chris Lloyd (NYS ITS), Mr. David Mahoney (NYS ITS), Mr. Edward Page (NYS ITS), Mr. Matthew Millea (NYS ITS), Ms. Shinu Shilesh (NYS ITS), Mr. Eric Huntington (NYS ITS), Mr. Jon Haverly

1  (NYS ITS), Ms. Mary Ann Pelltier (NYS ITS), Ms. Shoshana Bewlay (NYS ITS), Ms. Marcy Stevens

2  (NYS ITS), and Mr. Robert Valla (NYS ITS), Mr. Wayne Spence (PEF), Mr. Edward Aluck (PEF),

3  Ms. Rita Strauss (PEF), Ms. Deidre Maria Salsich (PEF), Ms. Denise Dreany (NYS OAG), Mr.

4  Mark Jackson (NYS OAG), Mr. William Harrison (NYS OAG), Mr. Ilan Halfi (NYS HCR), Mr.

5  Laurence Moats (NYS DOB), Ms. Tashana Hanif (NYS WCB), Mr. Dan Cantwell (NYS TA), Ms.

6  Ruth Parris (ESD), Mr. Shawn Bryant (ESD), and Mr. Robert Freeman (NYS DOS), conspired to

7  deprive the Plaintiff of his Rights under the Fourteenth Amendment to the Constitution in

8  violation of Section 2 of the Civil Rights Act of 1871.

9      436.    The Defendants took overt action against the Plaintiff (see Counts 44 - 84), which

10  caused injury in person or property. These actions were bred with discriminatory animus.

11

12  **VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT**

13  **OF 1967, AS CODIFIED, 29 U.S.C. §§ 621 TO 634 (COUNTS 91 - 110)**

14

15  **COUNT 91**

16  **(Discrimination – Disparate Treatment)**

17      437.    Plaintiff re-alleges and incorporates by reference each and every allegation

18  contained in the previous paragraphs of this Complaint as if fully set forth herein.

19      438.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others

20  similarly situated, alleges that Defendant, Mr. Chris Lloyd in his official capacity as Chief Portfolio

21  Officer and Director for New York State Office of Information Technology Services,

22  discriminated against him as an individual age 40 and older with a disability, by preventing the

23  Plaintiff from accessing permanent or qualified promotional opportunities, in violation of the Age

24  Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

439.    The Defendant, Mr. Lloyd, prevented from the Plaintiff from accessing permanent or qualified promotional opportunities due to his age, that is, the Defendant would not have prevented the Plaintiff from accessing permanent or qualified promotional opportunities, but being age 40 and older with a disability.

### COUNT 92

### (Discrimination – Disparate Treatment)

440.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

441.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Beth Bloodgood in her official capacity as Director and Deputy Cluster Chief Information Officer for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, by preventing the Plaintiff from accessing permanent or qualified promotional opportunities, in violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

442.    The Defendant, Ms. Bloodgood, prevented from the Plaintiff from accessing permanent or qualified promotional opportunities due to his age, that is, the Defendant would not have prevented the Plaintiff from accessing permanent or qualified promotional opportunities, but being age 40 and older with a disability.

### COUNT 93

### (Discrimination – Disparate Treatment)

443.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

444.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Veronica Webster in her official capacity as Project Manager and Project Assistant for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, by preventing the Plaintiff from accessing permanent or qualified promotional opportunities, in violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

445.    The Defendant, Ms. Webster, prevented from the Plaintiff from accessing permanent or qualified promotional opportunities due to his age, that is, the Defendant would not have prevented the Plaintiff from accessing permanent or qualified promotional opportunities, but being age 40 and older with a disability.

## COUNT 94

### (Discrimination – Disparate Treatment)

446.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

447.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Mr. Chris Lloyd in his official capacity as Chief Portfolio Officer and Director for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, by preventing the Plaintiff from accessing opportunities for job experience, including, but not limited to withholding development opportunities, withholding supervision opportunities, decreasing job responsibilities, unequal documentation responsibilities, in violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

448.    The Defendant, Mr. Lloyd, prevented from the Plaintiff from accessing permanent or qualified promotional opportunities due to his age, that is, the Defendant would not have

1  prevented the Plaintiff from accessing opportunities for job experience, but being age 40 and older
2  with a disability.

### COUNT 95

#### (Discrimination – Disparate Treatment)

5   449.    Plaintiff re-alleges and incorporates by reference each and every allegation
6  contained in the previous paragraphs of this Complaint as if fully set forth herein.

7   450.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others
8  similarly situated, alleges that Defendant, Ms. Beth Bloodgood in her official capacity as Director
9  and Deputy Cluster Chief Information Officer for New York State Office of Information
10  Technology Services, discriminated against him as an individual age 40 and older with a disability,
11  by preventing the Plaintiff from accessing opportunities for job experience, including, but not
12  limited to withholding   development opportunities, withholding supervision opportunities,
13  decreasing job responsibilities, unequal documentation responsibilities, in violation of the Age
14  Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

15   451.    The Defendant, Ms. Bloodgood, prevented from the Plaintiff from accessing
16  permanent or qualified promotional opportunities due to his age, that is, the Defendant would not
17  have prevented the Plaintiff from accessing opportunities for job experience, but being age 40 and
18  older with a disability.

### COUNT 96

#### (Discrimination – Disparate Treatment)

21   452.    Plaintiff re-alleges and incorporates by reference each and every allegation
22  contained in the previous paragraphs of this Complaint as if fully set forth herein.

23   453.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others
24  similarly situated, alleges that Defendant, Ms. Veronica Webster in her official capacity as Project

1  Manager and Project Assistant for New York State Office of Information Technology Services,
2  discriminated against him as an individual age 40 and older with a disability, by preventing the
3  Plaintiff from accessing opportunities for job experience, including, but not limited to withholding
4  development opportunities, withholding supervision opportunities, decreasing job responsibilities,
5  unequal documentation responsibilities, in violation of the Age Discrimination in Employment Act
6  of 1967, as codified, 29 U.S.C. §§ 621 to 634.

7      454.    The Defendant, Ms. Webster, prevented from the Plaintiff from accessing
8  permanent or qualified promotional opportunities due to his age, that is, the Defendant would not
9  have prevented the Plaintiff from accessing opportunities for job experience, but being age 40 and
10 older with a disability.

11                              **COUNT 97**

12                  **(Discrimination – Disparate Treatment)**

13     455.    Plaintiff re-alleges and incorporates by reference each and every allegation
14 contained in the previous paragraphs of this Complaint as if fully set forth herein.

15     456.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others
16 similarly situated, alleges that Defendant, Mr. Chris Lloyd in his official capacity as Chief Portfolio
17 Officer and Director for New York State Office of Information Technology Services,
18 discriminated against him as an individual age 40 and older with a disability, through constructive
19 discharge of the Plaintiff, which included, not limited to, preventing remote attendance of
20 meetings, transferring job responsibilities, withholding job responsibilities, and falsifying
21 information on probationary evaluation, in violation of the Age Discrimination in Employment
22 Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

23

24

457.    The Defendant, Mr. Lloyd, prevented from the Plaintiff from accessing permanent or qualified promotional opportunities due to his age, that is, the Defendant would not have constructively discharged the Plaintiff, but being age 40 and older with a disability.

### COUNT 98

### (Discrimination – Disparate Treatment)

458.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

459.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Beth Bloodgood in her official capacity as Director and Deputy Cluster Chief Information Officer for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, through constructive discharge of the Plaintiff, which included, not limited to, preventing remote attendance of meetings, transferring job responsibilities, withholding job responsibilities, and falsifying information on probationary evaluation, in violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

460.    The Defendant, Ms. Bloodgood, prevented from the Plaintiff from accessing permanent or qualified promotional opportunities due to his age, that is, the Defendant would not have constructively discharged the Plaintiff, but being age 40 and older with a disability.

### COUNT 99

### (Discrimination – Disparate Treatment)

461.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

462.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Veronica Webster in her official capacity as Project

Manager and Project Assistant for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, through constructive discharge of the Plaintiff, which included, not limited to, preventing remote attendance of meetings, transferring job responsibilities, withholding job responsibilities, and falsifying information on probationary evaluation, in violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

463.    The Defendant, Ms. Webster, prevented from the Plaintiff from accessing permanent or qualified promotional opportunities due to his age, that is, the Defendant would not have constructively discharged the Plaintiff, but being age 40 and older with a disability.

## COUNT 100

### (Discrimination – Disparate Treatment)

464.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

465.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Mr. Chris Lloyd in his official capacity as Chief Portfolio Officer and Director for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, through firing the Plaintiff in bad faith, based upon false pretenses, in violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

466.    The Defendant, Mr. Lloyd, prevented from the Plaintiff from accessing permanent or qualified promotional opportunities due to his age, that is, the Defendant would not have fired the Plaintiff, but being age 40 and older with a disability.

1

## COUNT 101

2

### (Discrimination – Disparate Treatment)

3      467.    Plaintiff re-alleges and incorporates by reference each and every allegation

4  contained in the previous paragraphs of this Complaint as if fully set forth herein.

5      468.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others

6  similarly situated, alleges that Defendant, Ms. Beth Bloodgood in her official capacity as Director

7  and Deputy Cluster Chief Information Officer for New York State Office of Information

8  Technology Services, discriminated against him as an individual age 40 and older with a disability,

9  through firing the Plaintiff in bad faith, based upon false pretenses, in violation of the Age

10 Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

11      469.    The Defendant, Ms. Bloodgood, prevented from the Plaintiff from accessing

12 permanent or qualified promotional opportunities due to his age, that is, the Defendant would not

13 have fired the Plaintiff, but being age 40 and older with a disability.

14

## COUNT 102

15

### (Discrimination – Disparate Treatment)

16      470.    Plaintiff re-alleges and incorporates by reference each and every allegation

17 contained in the previous paragraphs of this Complaint as if fully set forth herein.

18      471.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others

19 similarly situated, alleges that Defendant, Ms. Veronica Webster in her official capacity as Project

20 Manager and Project Assistant for New York State Office of Information Technology Services,

21 discriminated against him as an individual age 40 and older with a disability, through firing the

22 Plaintiff in bad faith, based upon false pretenses, in violation of the Age Discrimination in

23 Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

24

472.    The Defendant, Ms. Webster, prevented from the Plaintiff from accessing permanent or qualified promotional opportunities due to his age, that is, the Defendant would not have fired the Plaintiff, but being age 40 and older with a disability.

## COUNT 103

### (Discrimination – Disparate Treatment)

473.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

474.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, New York State Insurance Fund, discriminated against him as an individual age 40 and older with a disability, through failing to hire the Plaintiff in a position for which he was qualified, in violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

475.    The Defendant, New York State Insurance Fund, prevented from the Plaintiff from being hired in a position with New York State Insurance Fund for which was qualified, due to his age, that is, being age 40 and older with a disability.

## COUNT 104

### (Discrimination – Disparate Treatment)

476.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

477.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Mr. Laurence Moats in his official capacity as Project Assistant for New York State Division of the Budget, discriminated against him as an individual age 40 and older with a disability, through failing to hire the Plaintiff in a position for which he was

qualified, in violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

478.    The Defendant, Mr. Moats, prevented from the Plaintiff from being hired in a position with New York State Division of the Budget for which was qualified, due to his age, that is, being age 40 and older with a disability.

## COUNT 105

### (Discrimination – Retaliation)

479.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

480.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Beth Bloodgood in her official capacity as Director and Deputy Cluster Chief Information Officer for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, through retaliating against the Plaintiff for participating in an activity protected under federal law, requesting a reasonable accommodation for disability, and/or opposing an unlawful employment practice around the process of implementing a reasonable accommodation for disability, in violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

481.    The Defendant, Ms. Bloodgood, in her official capacity as Director and Deputy Cluster Chief Information Officer for New York State Office of Information Technology Services, subjected the Plaintiff to an adverse employment action, that is, facilitating the termination of employment for the Plaintiff.

482.    The Plaintiff, Mr. Stiegman, an individual age 40 and older with a disability, was subjected to the adverse employment action, termination of employment, because of his

participation in an activity protected under federal law, requesting a reasonable accommodation for disability, and/or opposing an unlawful employment practice around the process of implementing a reasonable accommodation for disability.

## COUNT 106

### (Discrimination – Retaliation)

483.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

484.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Mr. David Mahoney in his official capacity as Director of Labor Relations and Associate Director of Human Resources Labor Relations for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, through retaliating against the Plaintiff for participating in an activity protected under federal law, requesting a reasonable accommodation for disability, and/or opposing an unlawful employment practice around the process of implementing a reasonable accommodation for disability, in violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

485.    The Defendant, Mr. Mahoney, in in his official capacity as Director of Labor Relations and Associate Director of Human Resources Labor Relations for New York State Office of Information Technology Services, subjected the Plaintiff to an adverse employment action, that is, facilitating the termination of employment for the Plaintiff.

486.    The Plaintiff, Mr. Stiegman, an individual age 40 and older with a disability, was subjected to the adverse employment action, termination of employment, because of his participation in an activity protected under federal law, requesting a reasonable accommodation for

disability, and/or opposing an unlawful employment practice around the process of implementing a reasonable accommodation for disability.

### COUNT 107

### (Discrimination – Hostile Work Environment by Supervisor)

487.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

488.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Beth Bloodgood, empowered to take tangible employment actions against the Plaintiff, in her official capacity as Director and Deputy Cluster Chief Information Officer for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, by creating a hostile work environment, in violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

### COUNT 108

### (Discrimination – Hostile Work Environment by "Supervisor")

489.    The Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

490.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Mr. David Mahoney, empowered to take tangible employment actions against the Plaintiff, in his official capacity as Director of Labor Relations and Associate Director of Human Resources Labor Relations for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, by creating a hostile work environment, in violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

### COUNT 109

### (Discrimination – Disparate Impact)

491.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

492.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Beth Bloodgood, in her official capacity as Director and Deputy Cluster Chief Information Officer for New York State Office of Information Technology Services for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, by implementing probationary evaluations in a manner that had a significantly adverse or disproportionate impact on employees age 40 and older with a disability, in violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

493.    The Defendant, Ms. Beth Bloodgood, in her official capacity as Director and Deputy Cluster Chief Information Officer for New York State Office of Information Technology Services practice of implementing probationary evaluations on employees age 40 and older with a disability resulted in the Plaintiff being constructively terminated and/or fired.

### COUNT 110

### (Discrimination – Disparate Impact)

494.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

495.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Mr. David Mahoney in his official capacity as Director of Labor Relations and Associate Director of Human Resources Labor Relations for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and

older with a disability, by implementing reasonable accommodations for disabilities in a manner that had a significantly adverse or disproportionate impact on employees age 40 and older with a disability, in violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

496.    The Defendant, Mr. Mahoney in his official capacity as Director of Labor Relations and Associate Director of Human Resources Labor Relations for New York State Office of Information Technology Services practice of implementing reasonable accommodation for disabilities on employees age 40 and older with a disability resulted in the Plaintiff being constructively terminated and/or fired.

## VIOLATIONS OF AMERICANS WITH DISABILITIES ACT OF 1990, AS CODIFIED, 42 U.S.C. §§ 12112 TO 12117 (COUNTS 111 – 128)

### COUNT 111

#### (ADA Employment Actions – Regarded as Disability)

497.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

498.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Mr. Chris Lloyd in his official capacity as Chief Portfolio Officer and Director for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, by preventing the Plaintiff from accessing permanent or qualified promotional opportunities, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

499.    While Mr. Stiegman was regarded as having an impairment, Mr. Stiegman, was a qualified individual, who was discriminated against by the Defendant, Mr. Lloyd, by being preventing from accessing permanent or qualified promotional opportunities, because of his impairment.

## COUNT 112

### (ADA Employment Actions – Regarded as Disability)

500.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

501.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Beth Bloodgood in her official capacity as Director and Deputy Cluster Chief Information Officer for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, by preventing the Plaintiff from accessing permanent or qualified promotional opportunities, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

502.    While Mr. Stiegman was regarded as having an impairment, Mr. Stiegman, was a qualified individual, who was discriminated against by the Defendant, Ms. Bloodgood, by being preventing from accessing permanent or qualified promotional opportunities, because of his impairment.

## COUNT 113

### (ADA Employment Actions – Regarded as Disability)

503.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

504.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Veronica Webster in her official capacity as Project

Manager and Project Assistant for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, by preventing the Plaintiff from accessing permanent or qualified promotional opportunities, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

505.    While Mr. Stiegman was regarded as having an impairment, Mr. Stiegman, was a qualified individual, who was discriminated against by the Defendant, Ms. Webster, by being preventing from accessing permanent or qualified promotional opportunities, because of his impairment.

## COUNT 114

### (ADA Employment Actions – Regarded as Disability)

506.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

507.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Mr. Chris Lloyd in his official capacity as Chief Portfolio Officer and Director for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, by preventing the Plaintiff from accessing opportunities for job experience, including, but not limited to withholding development opportunities, withholding supervision opportunities, decreasing job responsibilities, unequal documentation responsibilities, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

508.    While Mr. Stiegman was regarded as having an impairment, Mr. Stiegman, was a qualified individual, who was discriminated against by the Defendant, Mr. Lloyd, by preventing the Plaintiff from accessing opportunities for job experience, including, but not limited to withholding

development opportunities, withholding supervision opportunities, decreasing job responsibilities, unequal documentation responsibilities.

### COUNT 115

#### (ADA Employment Actions – Regarded as Disability)

509.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

510.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Beth Bloodgood in her official capacity as Director and Deputy Cluster Chief Information Officer for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, by preventing the Plaintiff from accessing opportunities for job experience, including, but not limited to withholding  development opportunities, withholding supervision opportunities, decreasing job responsibilities, unequal documentation responsibilities, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

511.    While Mr. Stiegman was regarded as having an impairment, Ms. Bloodgood, by preventing the Plaintiff from accessing opportunities for job experience, including, but not limited to withholding  development opportunities, withholding supervision opportunities, decreasing job responsibilities, unequal documentation responsibilities.

### COUNT 116

#### (ADA Employment Actions – Regarded as Disability)

512.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

513.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Veronica Webster in her official capacity as Project

Manager and Project Assistant for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, by preventing the Plaintiff from accessing opportunities for job experience, including, but not limited to withholding development opportunities, withholding supervision opportunities, decreasing job responsibilities, unequal documentation responsibilities, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

514.    While Mr. Stiegman was regarded as having an impairment, Mr. Stiegman, was a qualified individual, who was discriminated against by the Defendant, Ms. Webster, by preventing the Plaintiff from accessing opportunities for job experience, including, but not limited to withholding development opportunities, withholding supervision opportunities, decreasing job responsibilities, unequal documentation responsibilities.

## COUNT 117

### (ADA Employment Actions – Regarded as Disability)

515.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

516.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Mr. Chris Lloyd in his official capacity as Chief Portfolio Officer and Director for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, through constructive discharge of the Plaintiff, which included, not limited to, preventing remote attendance of meetings, transferring job responsibilities, withholding job responsibilities, and falsifying information on probationary evaluation, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

517.    While Mr. Stiegman was regarded as having an impairment, Mr. Stiegman, was a qualified individual, who was discriminated against, through constructive discharge, by the Defendant, Mr. Lloyd, by preventing remote attendance of meetings, transferring job responsibilities, withholding job responsibilities, and falsifying information on probationary evaluation.

## COUNT 118

### (ADA Employment Actions – Regarded as Disability)

518.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

519.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Beth Bloodgood in her official capacity as Director and Deputy Cluster Chief Information Officer for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, through constructive discharge of the Plaintiff, which included, not limited to, preventing remote attendance of meetings, transferring job responsibilities, withholding job responsibilities, and falsifying information on probationary evaluation, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

520.    While Mr. Stiegman was regarded as having an impairment, Mr. Stiegman, was a qualified individual, who was discriminated against, through constructive discharge, by the Defendant, Ms. Bloodgood, by preventing remote attendance of meetings, transferring job responsibilities, withholding job responsibilities, and falsifying information on probationary evaluation.

**COUNT 119**

**(ADA Employment Actions – Regarded as Disability)**

521.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

522.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Veronica Webster in her official capacity as Project Manager and Project Assistant for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, through constructive discharge of the Plaintiff, which included, not limited to, preventing remote attendance of meetings, transferring job responsibilities, withholding job responsibilities, and falsifying information on probationary evaluation, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

523.    While Mr. Stiegman was regarded as having an impairment, Mr. Stiegman, was a qualified individual, who was discriminated against, through constructive discharge, by the Defendant, Ms. Webster, by preventing remote attendance of meetings, transferring job responsibilities, withholding job responsibilities, and falsifying information on probationary evaluation.

**COUNT 120**

**(ADA Employment Actions – Regarded as Disability)**

524.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

525.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Mr. Chris Lloyd in his official capacity as Chief Portfolio Officer and Director for New York State Office of Information Technology Services,

1  discriminated against him as an individual age 40 and older with a disability, through firing the

2  Plaintiff in bad faith, based upon false pretenses, in violation of Americans with Disabilities Act of

3  1990, as codified, 42 U.S.C. §§ 12112 to 12117.

4      526.    While Mr. Stiegman was regarded as having an impairment, Mr. Stiegman, was a

5  qualified individual, who was discriminated against by the Defendant, Mr. Lloyd, through firing the

6  Plaintiff in bad faith, based upon false pretenses.

7                          **COUNT 121**

8              **(ADA Employment Actions – Regarded as Disability)**

9      527.    Plaintiff re-alleges and incorporates by reference each and every allegation

10  contained in the previous paragraphs of this Complaint as if fully set forth herein.

11      528.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others

12  similarly situated, alleges that Defendant, Ms. Beth Bloodgood in her official capacity as Director

13  and Deputy Cluster Chief Information Officer for New York State Office of Information

14  Technology Services, discriminated against him as an individual age 40 and older with a disability,

15  through firing the Plaintiff in bad faith, based upon false pretenses, in violation of Americans with

16  Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

17      529.    While Mr. Stiegman was regarded as having an impairment, Mr. Stiegman, was a

18  qualified individual, who was discriminated against by the Defendant, Ms. Bloodgood, through

19  firing the Plaintiff in bad faith, based upon false pretenses.

20                          **COUNT 122**

21              **(ADA Employment Actions – Regarded as Disability)**

22      530.    Plaintiff re-alleges and incorporates by reference each and every allegation

23  contained in the previous paragraphs of this Complaint as if fully set forth herein.

24

531.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Veronica Webster in her official capacity as Project Manager and Project Assistant for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, through firing the Plaintiff in bad faith, based upon false pretenses, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

532.    While Mr. Stiegman was regarded as having an impairment, Mr. Stiegman, was a qualified individual, who was discriminated against by the Defendant, Ms. Webster, through firing the Plaintiff in bad faith, based upon false pretenses.

## COUNT 123

### (ADA Employment Actions – Regarded as Disability)

533.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

534.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, New York State Insurance Fund, discriminated against him as an individual age 40 and older with a disability, through failing to hire the Plaintiff in a position for which he was qualified, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

535.    While Mr. Stiegman was regarded as having an impairment, Mr. Stiegman, was a qualified individual, who was discriminated against by the Defendant, New York State Insurance Fund, through failing to hire the Plaintiff in a position for which he was qualified.

## COUNT 124

### (ADA Employment Actions – Regarded as Disability)

536.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

537.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Mr. Laurence Moats in his official capacity as Project Assistant for New York State Division of the Budget, discriminated against him as an individual age 40 and older with a disability, through failing to hire the Plaintiff in a position for which he was qualified, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

538.    While Mr. Stiegman was regarded as having an impairment, Mr. Stiegman, was a qualified individual, who was discriminated against by the Defendant, Mr. Moats, through failing to hire the Plaintiff in a position for which he was qualified.

## COUNT 125

### (ADA – Reasonable Accommodation)

539.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

540.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Mr. David Mahoney in his official capacity as Director of Labor Relations and Associate Director of Human Resources Labor Relations for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, through failing to provide access to and/or properly implement a reasonable accommodation for disability, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

541.    The Defendant, Mr. Mahoney, received adequate notice of the desire for a reasonable accommodation from the Plaintiff, Mr. Stiegman, a qualified individual, which would have enabled the Plaintiff to perform the essential functions of the job.

## COUNT 126

### (ADA – Reasonable Accommodation)

542.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

543.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Mr. Edward Page in his official capacity as Human Resources Specialist Labor Relations for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, through failing to provide access to and/or properly implement a reasonable accommodation for disability, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

544.    The Defendant, Mr. Page, received adequate notice of the desire for a reasonable accommodation from the Plaintiff, Mr. Stiegman, a qualified individual, which would have enabled the Plaintiff to perform the essential functions of the job.

## COUNT 127

### (ADA – Retaliation)

545.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

546.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Ms. Beth Bloodgood in her official capacity as Director and Deputy Cluster Chief Information Officer for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability,

through retaliating against the Plaintiff for participating in an activity protected under federal law, requesting a reasonable accommodation for disability, and/or opposing an unlawful employment practice around the process of implementing a reasonable accommodation for disability, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

547.    The Defendant, Ms. Bloodgood, in her official capacity as Director and Deputy Cluster Chief Information Officer for New York State Office of Information Technology Services, subjected the Plaintiff to a materially adverse employment action, that is, facilitating the termination of employment of the Plaintiff.

548.    The Plaintiff, Mr. Stiegman, an individual age 40 and older with a disability, was subjected to the adverse employment action, termination of employment, because of his participation in an activity protected under federal law, requesting a reasonable accommodation for disability, and/or opposing an unlawful employment practice around the process of implementing a reasonable accommodation for disability.

## COUNT 128

### (ADA – Retaliation)

549.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

550.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Mr. David Mahoney in his official capacity as Director of Labor Relations and Associate Director of Human Resources Labor Relations for New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, through retaliating against the Plaintiff for participating in an activity protected under federal law, requesting a reasonable accommodation for disability, and/or opposing an unlawful employment practice around the process of implementing a reasonable

accommodation for disability, in violation of Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

551.    The Defendant, Mr. Mahoney, in in his official capacity as Director of Labor Relations and Associate Director of Human Resources Labor Relations for New York State Office of Information Technology Services, subjected the Plaintiff to a materially adverse employment action, that is, facilitating the termination of employment of the Plaintiff.

552.    The Plaintiff, Mr. Stiegman, an individual age 40 and older with a disability, was subjected to the adverse employment action, termination of employment, because of his participation in an activity protected under federal law, requesting a reasonable accommodation for disability, and/or opposing an unlawful employment practice around the process of implementing a reasonable accommodation for disability.

## VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT OF 1973, AS CODIFIED, 29 U.S.C. § 794 (COUNTS 129 – 141)

### COUNT 129

### (Discrimination – Retaliation)

553.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

554.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, including a personal history of cancer, by retaliating against him, in violation of Section 504 of the Rehabilitation Act of 1973, as codified, 29 U.S.C. § 794.

1

## COUNT 130

2

### (Discrimination – Failure to Accommodate)

3   555.   Plaintiff re-alleges and incorporates by reference each and every allegation

4   contained in the previous paragraphs of this Complaint as if fully set forth herein.

5   556.   The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others

6   similarly situated, alleges that Defendant, New York State Office of Information Technology

7   Services, discriminated against him as an individual age 40 and older with a disability, including a

8   personal history of cancer, by failing to accommodate, in violation of Section 504 of the

9   Rehabilitation Act of 1973, as codified, 29 U.S.C. § 794.

10

## COUNT 131

11

### (Discrimination – Constructive Discharge)

12   557.   Plaintiff re-alleges and incorporates by reference each and every allegation

13   contained in the previous paragraphs of this Complaint as if fully set forth herein.

14   558.   The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others

15   similarly situated, alleges that Defendant, New York State Office of Information Technology

16   Services, discriminated against him as an individual age 40 and older with a disability, including a

17   personal history of cancer, by constructively discharging him while in an approved reasonable

18   accommodation for disability for a temporary work at home schedule, in violation of Section 504

19   of the Rehabilitation Act of 1973, as codified, 29 U.S.C. § 794.

20

## COUNT 132

21

### (Discrimination – Failure to Hire)

22   559.   Plaintiff re-alleges and incorporates by reference each and every allegation

23   contained in the previous paragraphs of this Complaint as if fully set forth herein.

24

560.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, New York State Office of Information Technology Services, discriminated against him as an individual age 40 and older with a disability, including a personal history of cancer, by failing to hire him, in violation of Section 504 of the Rehabilitation Act of 1973, as codified, 29 U.S.C. § 794.

## COUNT 133

### (Discrimination – Retaliation)

561.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

562.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, New York State Office of the Attorney General, discriminated against him as an individual age 40 and older with a disability, by retaliating against him, in violation of Section 504 of the Rehabilitation Act of 1973, as codified, 29 U.S.C. § 794.

## COUNT 134

### (Discrimination – Failure to Hire)

563.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

564.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, New York State Office of the Attorney General, discriminated against him as an individual age 40 and older with a disability, by failing to hire him, in violation of Section 504 of the Rehabilitation Act of 1973, as codified, 29 U.S.C. § 794.

## COUNT 135

### (Discrimination – Retaliation)

565.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

566.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, New York State Insurance Fund, discriminated against him as an individual age 40 and older with a disability, by retaliating against him, in violation of Section 504 of the Rehabilitation Act of 1973, as codified, 29 U.S.C. § 794.

## COUNT 136

### (Discrimination – Failure to Hire)

567.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

568.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, New York State Insurance Fund, discriminated against him as an individual age 40 and older with a disability, by failing to hire him, in violation of Section 504 of the Rehabilitation Act of 1973, as codified, 29 U.S.C. § 794.

## COUNT 137

### (Discrimination – Retaliation)

569.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

570.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, New York State Division of the Budget, discriminated against him as an individual age 40 and older with a disability, by retaliating against him, in violation of Section 504 of the Rehabilitation Act of 1973, as codified, 29 U.S.C. § 794.

## COUNT 138

### (Discrimination – Failure to Hire)

571.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

572.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, New York State Division of the Budget, discriminated against him as an individual age 40 and older with a disability, by failing to hire him, in violation of Section 504 of the Rehabilitation Act of 1973, as codified, 29 U.S.C. § 794.

## COUNT 139

### (Discrimination – Retaliation)

573.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

574.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, New York State Department of State, discriminated against him as an individual age 40 and older with a disability, by retaliating against him, in violation of Section 504 of the Rehabilitation Act of 1973, as codified, 29 U.S.C. § 794.

## COUNT 140

### (Discrimination – Retaliation)

575.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

576.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, Garnet River, LLC, a New York State contractor, discriminated against him as an individual age 40 and older with a disability, by retaliating against him, in violation of Section 504 of the Rehabilitation Act of 1973, as codified, 29 U.S.C. § 794.

## COUNT 141

### (Discrimination – Retaliation)

577.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

578.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that Defendant, RTE Consulting LLC, a contractor with Garnet River, LLC, discriminated against him as an individual age 40 and older with a disability, by retaliating against him, in violation of Section 504 of the Rehabilitation Act of 1973, as codified, 29 U.S.C. § 794.

## VIOLATIONS OF SECTION 301 OF LABOR MANAGEMENT RELATIONS ACT, AS CODFIED 29 U.S.C § 185 (COUNTS 142 - 143)

## COUNT 142

### (Employee LMRC Claim against Employer)

579.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

580.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that on November 1, 2017, Defendant, New York State Office of Information Technology Services, discharged the Plaintiff, Mr. Victor Stiegman, from his Project Manager position with the agency, a position represented by Public Employees Federation, a public employee union in the State of New York, without just cause, and in violation of Section 301 of Labor Management Relations Act, as codified 29 U.S.C § 185.

581.    The discharge of the Plaintiff from the agency was retaliatory, conducted in bad faith, and based upon false information entered into the final probationary evaluation, which was served to the Plaintiff's private email address soon after the Plaintiff was instructed to go on leave for out-of-state medical appointments. This final probationary evaluation recommending termination was not only several months overdue, but signed and served to the Plaintiff merely days after the Plaintiff alleged unequal terms and conditions of employment, especially with reasonable accommodations for disabilities.

582.    Based upon the subsequent post-termination actions by the employer, New York State Office of Information Technology Services, and union, Public Employees Federation, the union breached their duty to fairly and honestly represent the Plaintiff's interest under the collective bargaining agreement.

583.    This breach of duty is particularly troubling, since the alleged actions by the employer and the union indicate discrimination and retaliation against a discrete and insular minority, an individual 40 years of age and older with a disability, a history of cancer.

**COUNT 143**

**(Employee LMRC Claim against Union)**

584.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

585.    The Plaintiff, Mr. Stiegman, individually, and on behalf of a Class of all others similarly situated, alleges that on November 1, 2017, Defendant, New York State Office of Information Technology Services, discharged the Plaintiff, Mr. Victor Stiegman, from his Project Manager position with the agency, a position represented by Public Employees Federation, a public employee union in the State of New York, without just cause, and in violation of Section 301 of Labor Management Relations Act, as codified 29 U.S.C § 185.

586.    The discharge of the Plaintiff from the agency was retaliatory, conducted in bad faith, and based upon false information entered into the final probationary evaluation, which was served to the Plaintiff's private email address soon after the Plaintiff was instructed to go on leave for out-of-state medical appointments. This final probationary evaluation recommending termination was not only several months overdue, but signed and served to the Plaintiff merely days after the Plaintiff alleged unequal terms and conditions of employment, especially with reasonable accommodations for disabilities.

587.    Based upon the subsequent post-termination actions by the employer, New York State Office of Information Technology Services, and union, Public Employees Federation, the union breached their duty to fairly and honestly represent the Plaintiff's interest under the collective bargaining agreement.

588.    This breach of duty is particularly troubling, since the alleged actions by the employer and the union indicate discrimination and retaliation against a discrete and insular minority, an individual 40 years of age and older with a disability, a history of cancer.

## **PRAYER FOR RELIEF**

WHEREFORE, Victor Karl Daniel Stiegman, Individually, and on Behalf of a Class of All Others Similarly Situated, prays that this Court enter judgment against Defendants as follows:

a.  Certification of the case as a class action on behalf of the proposed classes, designate Plaintiff, Mr. Stiegman, as representative of the proposed classes;

b.  A declaratory judgment that the practices complained of are unlawful and violate the laws and statutes at issue;

c.  A preliminary and permanent injunction against defendants, directors, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

d.  An order enjoining defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for all persons in the protected classes, and that defendants eradicate the effects of past and present unlawful employment practices;

e.  An order restoring the plaintiff and class members to their rightful positions at the defendant, or in lieu of reinstatements, an order for front pay benefits;

f.  Back pay, including interest and benefits, for the plaintiff and class members;

g.  Exemplary and punitive damages in an amount commensurate with the defendant's ability to pay and to deter future conduct;

h.  Compensatory damages, including emotional pain and distress, embarrassment, degradation, mental anguish, and other non-pecuniary losses;

i.  Costs incurred, including reasonable attorneys' fees to extent allowable by law;

j.  Pre-judgment and post-judgment interest, as provided by law;

k.  Such other and further legal and equitable relief as the Court deems necessary, just, and proper;

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of FRCP 11.

Dated: December 31, 2019
~~Albany~~, New York

**CLIFTON PARK**
**USPS**

Viktor Stiegman
Plaintiff for Proposed Classes
Proposed Class Representative

**4:45 PM**




1

## DEMAND FOR JURY TRIAL

2     Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury on all

3   issues so triable.

4

5   Dated: December 31, 2019
6   ~~Albany~~, New York

**CLIFTON PARK**
7   **USPS**



Victor Stiegman
Plaintiff for Proposed Classes
Proposed Class Representative

**4:45 pm**

8

9

10

11

12        .

13

14

15

16

17

18

19

20

21

22

23

24

